## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| (1) BIG CAT RESCUE CORP., a Florida not-for-profit corporation, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. CIV-2016-0155-SLP |
| (1) SHIRLEY M. SCHREIBVOGEL, an individual, and (2) GREATER WYNNEWOOD DEVELOPMENT GROUP, LLC, | ) ) ) ) ) | |
| Defendants. | ) ) | |

## DEFENDANT GREATER WYNNEWOOD DEVELOPMENT GROUP, LLC'S MOTION FOR SUMMARY JUDGMENT

Respectfully submitted,

s/Melanie K. Christians
Justin D. Meek, OBA #21294
Melanie K. Christians, OBA #30846
Andre V. Farinha, OBA #32910
DeWITT PARUOLO MEEK, PLLC
P.O. Box 138800
Oklahoma City, OK  73113
Telephone: (405) 705-3600
Facsimile:  (405) 705-2573
jmeek@ntmdlaw.com
mchristians@ntmdlaw.com
afarinha@ntmdlaw.com
*Attorneys for Defendants*

June 1, 2018

# TABLE OF CONTENTS

SUMMARY OF THE CASE ............................................................................................. 1

STATEMENT OF UNDISPUTED FACTS ................................................................... 3

    General Procedural Background ............................................................................... 3

    The Zoo Land and Bankruptcy Proceedings ......................................................... 7

    2016 Zoo Land Lease .............................................................................................. 10

ARGUMENT AND AUTHORITY ............................................................................. 11

    PROPOSITION I:    THE DOCTRINE OF RES JUDICATA BARS PLAINTIFF'S
    COLLATERAL ATTACK ON THE BANKRUPTCY COURT JUDGMENT
    RELATING TO THE ZOO LAND ......................................................................... 12

        a. Judgment on the Merits ..................................................................................... 18

        b. Identity or Privity of Parties ............................................................................. 19

        c. Same Cause of Action ....................................................................................... 20

        d. Full and Fair Opportunity to Litigate ............................................................... 21

    PROPOSITION II:   PLAINTIFF HAS NO STANDING TO BRING FRAUDULENT
    TRANSFER CLAIMS AGAINST DEFENDANTS RELATED TO THE 2016 LEASE
    ............................................................................................................................... 23

CONCLUSION ........................................................................................................... 24

## TABLE OF AUTHORITIES

**Cases**

*Alvear–Velez v. Mukasey*, 540 F.3d 672 (7th Cir. 2008).................................................. 18

*Anderson v. Liberty Lobby, Inc*., 477 U.S. 242 (1986) ............................................... 11, 12

*Arizona v. California*, 530 U.S. 392 (2000) ..................................................................... 18

*Banks v. Int'l Union Elec., Elec., Technical, Salaried & Mach. Workers*, 390 F.3d 1049 (8th Cir. 2004). ................................................................................................................. 19

*Bd. of Trs. of Trucking Emps. of N.J. Welfare Fund, Inc.-Pension Fund v. Centra*, 983 F.2d 495 (3d Cir.1992)..................................................................................................... 18

*Brown v. Felsen*, 442 U.S. 127 (1979) .............................................................................. 12

*Burrows v. Burrows*, 886 P.2d 984 (Okla. 1994) ............................................................. 23

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)................................................................. 11

*Celotex Corp. v. Edwards*, 514 U.S. 300 (1995)............................... 13, 14, 15, 17, 21, 23

*Crop–Maker Soil Serv. v. Fairmount State Bank*, 881 F.2d 436 (7th Cir.1989).............. 23

*In re Arrow Trucking Co. EIN No. xx-xxx4028*, 2011 WL 2173680 (Bankr. N.D. Okla. May 27, 2011). ................................................................................................................. 19

*In re Fordu*, 201 F.3d 693 (6th Cir.1999) ........................................................................ 19

*In re Neal*, 478 B.R. 261 (6th Cir. BAP 2012)................................................................. 19

*Jenks v. Hill*, 504 F. Supp. 1130 (W.D. Okla. 1981)........................................................ 11

*Knight v. Mooring Capital Fund, LLC*, 749 F.3d 1180 (10th Cir. 2014)......................... 21

*Lindsey v. Ipock*, 732 F.2d 619 (8th Cir. 1984).......................................................... 15, 17

*Mallory v. Eyrich*, 922 F.2d 1273 (6th Cir. 1991)........................................................... 18

*Mesa Petroleum Co. v. Cities Serv. Co*., 1982 WL 1377 (W.D. Okla. 1982).................. 11

*Nwosun v. General Mills Restaurants, Inc.,* 124 F.3d 1255 (10th Cir.1997)................... 12

*Oreck Direct, LLC v. Dyson, Inc.*, 560 F.3d 398 (5th Cir. 2009).................................... 19

*Pacor, Inc. v. Higgins*, 743 F.2d 984 (4th Cir. 1984)...................................................... 14

*Palermo v. First Nat'l Bank & Trust Co*., 894 F.2d 363 (10th Cir. 1990)....................... 11

*Parklane Hosiery Co. v. Shore*, 439 U.S. 322 (1979) ...................................................... 12

*Plotner v. AT & T Corp*., 224 F.3d 1161 (10th Cir. 2000) .............................. 12, 13, 20, 21

*Royal v. Sharkey Well Serv*., 05-2042, 2006 WL 2034582 (Bankr. D. Wyo. June 12, 2006)................................................................................................................................ 19

*Sec. Nat'l Bank v. Belleville Livestock Comm'n Co., Inc.*, 619 F.2d 840 (10th Cir. 1979) ......................................................................................................................................... 11

*Spartan Mills v. Bank of Am. Illinois*, 112 F.3d 1251 (4th Cir. 1997) ...... 13, 15, 16, 17, 23

*Superior Indus., LLC v. Thor Global Enters. Ltd*., 700 F.3d 1287 (Fed. Cir. 2012) ........ 18

*U.S. v. Munsingwear, Inc*., 340 U.S. 36 (1950)................................................................ 23

*Wilkes v. Wyoming Dep't of Employment Div. of Labor Standards*, 314 F.3d 501 (10th Cir. 2002) ......................................................................................................................... 18

ii

*Williams v. Atl. Law Grp., LLC*, 174 F. Supp. 3d 874 (D. Del. 2016) ............................. 18

**Statutes**

11 U.S.C.A. §§ 544 ........................................................................................ 19
11 U.S.C.A. §§ 550 ........................................................................................ 19
24 O.S. § 112 et seq ....................................................................................... 23
24 O.S. § 113 .................................................................................................. 24
28 U.S.C. § 1334 ............................................................................................ 13
28 U.S.C. § 158 .............................................................................................. 21

**Other Authorities**

Restatement (Second) of Judgments § 24 ....................................................... 20

**Rules**

Fed. R. Civ. P. 56 ...................................................................................... 11, 12
Fed. R. Civ. P. 60 ...................................................................................... 21, 22
Fed. R. Civ. P. 68 ................................................................................ 18, 19, 22
Fed. R. Bankr. P. 8002 ................................................................................... 22
Fed. R. Bankr. P. 8002(a) .............................................................................. 21
Fed. R. Bankr. P. 9024 ................................................................................... 21

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**

(1) BIG CAT RESCUE CORP., a Florida    )
not-for-profit corporation,    )
    )
        Plaintiff,    )
    )
v.    )    Case No. CIV-2016-0155-SLP
    )
(1) SHIRLEY M. SCHREIBVOGEL,    )
an individual, and    )
(2) GREATER WYNNEWOOD    )
DEVELOPMENT GROUP, LLC,    )
    )
        Defendants.    )

## DEFENDANT GREATER WYNNEWOOD DEVELOPMENT GROUP, LLC'S MOTION FOR SUMMARY JUDGMENT

Defendant Greater Wynnewood Development Group, LLC ("GWDG"), pursuant to Federal Rule of Civil Procedure 56, respectfully requests the Court grant judgment in favor of GWDG as there is no genuine dispute as to any material fact and GWDG is entitled to judgment as a matter of law.  In support of its Motion, GWDG provides the following Brief.

## SUMMARY OF THE CASE

This case stems from a long history of litigation which has plagued the prior owners of a zoo in Wynnewood, Oklahoma for years.  The zoo was originally opened in 1999 and was operated on approximately 16 acres of land purchased by Defendant Shirley Schreibvogel ("Shirley") and her husband, and is currently home to approximately 400 exotic wild animals, including tigers, lions, bears, and monkeys.  Although ownership has changed over the years, Defendant GWDG currently owns the Zoo Land and non-party

Greater Wynnewood Exotic Animal Park, LLC ("GWEAP") operates the zoo.

The litigation against the prior owners began with lawsuits (wholly unrelated to Defendants herein) filed by Plaintiff in the United States District Court for the Middle District of Florida, Tampa Division against Big Cat Rescue Entertainment Corp, Inc., G.W. Exotic Animal Memorial Foundation ("GW Zoo", the original owner of the zoo) and Joseph Maldonado-Passage f/k/a Joseph Maldonado f/k/a Joseph Schreibvogel a/k/a Joe Exotic ("Maldonado"), which resulted in civil consent judgments entered against these parties in in the amount of $1,028,000.00.  Thereafter, Maldonado and GW Zoo filed for bankruptcy in the United States Bankruptcy Court for the Western District of Oklahoma.  Plaintiff, as a creditor, entered an appearance and filed pleadings in both bankruptcy proceedings.

In 2014, Plaintiff filed a fraudulent transfer action against GW Zoo, The Garold Wayne Interactive Zoological Foundation ("Garold Wayne Zoo", the new owner of the zoo), and other defendants in the United States District Court for the Western District of Oklahoma.  In February 2016, Plaintiff obtained an agreed judgment against Garold Wayne Zoo, found to be successor to GW Zoo, in the amount of $1,028,000.00.

Meanwhile, an Adversary Proceeding was filed by the Bankruptcy Trustee against Shirley for fraudulent transfer of the Zoo Land.  On January 15, 2015, a Rule 68 Judgment was entered against Shirley for $63,300.00, the appraised value of the Zoo Land, allowing her to retain title to the property.  Following the Rule 68 Judgment, but before the year for review under Rule 60 had expired, Plaintiff discovered evidence relating to the Zoo Land which it believed challenged the validity of this judgment.  Plaintiff raised the issues

with the Bankruptcy Trustee, however Plaintiff chose not to seek reconsideration in the Bankruptcy Court, instead filing the instant action against Shirley (and ultimately GWDG as subsequent transferee of the Zoo Land) in the United States District Court for the Western District of Oklahoma.  This, the law forbids.  Because Plaintiff failed to challenge the Rule 68 Judgment in the Bankruptcy Court or on appeal, Plaintiff is prohibited from collaterally attacking the Bankruptcy Court's Judgment in this forum.

Plaintiff's claims against GWDG relate solely to fraudulent transfer of the Zoo Land and the 2016 Lease.  Because Plaintiff's claims related to the Zoo Land are barred by res judicata, and Plaintiff has no standing to bring a fraudulent transfer claim against GWDG premised on the 2016 Lease, Plaintiff's claims against GWDG must be summarily rejected.

## STATEMENT OF UNDISPUTED FACTS

### General Procedural Background

1.      In February 2013, Plaintiff obtained civil consent judgments totaling $1,028,000.00 against Big Cat Rescue Entertainment Group, Inc., G.W. Exotic Animal Memorial Foundation (hereinafter "GW Zoo"), Joseph Maldonado-Passage f/k/a Joseph Maldonado f/k/a Joseph Schreibvogel a/k/a "Joe Exotic" (hereinafter "Maldonado") in three separate actions in the United States District Court for the Middle District of Florida based on trademark infringement, false designation of origin, unfair competition, misrepresentation, and copyright infringement (the "Florida Judgments"). (Consent Final Judgment and Permanent Injunction, Case No. CIV-11-00209-MSS-MAP, Ex. 1) (Consent Final Judgment and Permanent Injunction, Case No. CIV-12-02381-JSM-MAP, Ex. 2) (Consent Final Judgment and Permanent Injunction, CIV-11-02014-JDW-TBM, Ex. 3).

3

2.     On February 25, 2013, after entry of the Florida Judgments, GW Zoo dissolved and Garold Wayne Interactive Zoological Foundation ("Garold Wayne Zoo"), an entity purportedly formed by one of the members of GW Zoo's Board of Directors, took over operations of the zoo. (Board of Directors' Resolution Advising Dissolution and Calling Shareholders' Meeting, Ex. 4) (Certificate of Dissolution, Ex. 5) (Memorandum Opinion and Order, Ex. 6).

3.     On March 29, 2013, GW Zoo and Maldonado filed Chapter 7 Bankruptcy in the United States Bankruptcy Court for the Western District of Oklahoma. (Joseph Allen Schreibvogel Voluntary Petition, Ex. 7) (G.W. Exotic Animal Foundation Voluntary Petition, Ex. 8).   Plaintiff moved to dismiss the bankruptcy of GW Zoo, which the Bankruptcy Court deemed confessed due to GW Zoo's failure to respond, and the Bankruptcy Court dismissed the bankruptcy proceedings of GW Zoo on December 11, 2013. (Order Granting Big Cat Rescue Corp.'s Motion to Dismiss, Ex. 9). However, the individual bankruptcy of Maldonado continued to final distribution. (Chapter 7 Trustee's Final Account and Distribution Report, Ex. 10).

4.     In February and March 2013, Plaintiff domesticated the Florida Judgments in Oklahoma (See Case Nos. FJ-13-00001-F, FJ-13-00002-F, FJ-13-00003-F).

5.     On April 15, 2014, Plaintiff filed a successor-liability and fraudulent transfer action in the United States District Court for the Western District of Oklahoma against GW Zoo, Garold Wayne Zoo and the members of GW Zoo's Board of Directors, John Reinke, John Finlay, Bobbi Lynn Corona, Satrina Gayle McNally and Benjamin McNally, asserting GW Zoo fraudulently transferred its assets to Garold Wayne Zoo to avoid the Florida

4

Judgments (hereinafter "*Big Cat I*") (*Big Cat I* Complaint, Ex. 11).

6.    On July 28, 2015, Plaintiff amended its Complaint in *Big Cat I* to add Shirley

Schreibvogel ("Shirley"), Maldonado's mother, as a party Defendant. (*Big Cat I* First

Amended Complaint, Ex. 12).

7.    On January 25, 2016, Plaintiff dismissed its claims against Shirley in *Big Cat*

*I* without prejudice. (Stipulation for Dismissal without Prejudice, Ex. 13).

8.    On February 1, 2016, the Court entered an Agreed Judgment and Permanent

Injunction against Defendants GW Zoo and Garold Wayne Zoo in *Big Cat I*. (Agreed

Judgment and Injunction, Ex. 14).  Therein, Garold Wayne Zoo was held to be successively

liable to Plaintiff for the Florida Judgments entered against GW Zoo, and judgment was

entered against Garold Wayne Zoo for $1,028,000.00 (Memorandum Opinion and Order,

Ex. 6) (Judgment, Ex. 15).  In addition, the injunction prohibited GW Zoo and Garold

Wayne Zoo from transferring, liquidating, encumbering or otherwise disposing of any and

all tangible and/or intangible assets, but it did not prevent a cessation of operations (Agreed

Judgment and Injunction, Ex. 14).

9.    After the entry of this Agreed Judgment and Permanent Injunction in

February 2016, Garold Wayne Zoo became unable to carry out its day-to-day operations

of running its zoo and caring for its animals due to the financial strain of litigation and the

resulting judgment in *Big Cat I*. (Affidavit of Joseph Schreibvogel "Maldonado", Ex. 16,

¶¶ 3-5) (Deposition of Garold Wayne Corporate Rep, Ex. 17, pp. 48:16-49:13).  As such,

Garold Wayne Zoo began the dissolution process on or about February 5, 2016, ceased

operations on or about February 11, 2016, and filed a certificate of dissolution on February

18, 2016. *Id*. at ¶ 8 (Affidavit of Joseph Maldonado, Ex. 18, ¶ 5) (Certificate of Dissolution, Ex. 19).

10.    On or about February 15, 2016, Jeff Lowe (hereinafter "Lowe") opened his own zoo in Wynnewood, Oklahoma, called Greater Wynnewood Exotic Animal Park, LLC (hereinafter "GWEAP"). (Affidavit of Lowe, Ex. 20, ¶¶ 1, 8).  Lowe formed GWEAP on February 8, 2016 and holds 100% membership interest in this entity. (GWEAP Certificate of Limited Liability Company, Ex. 21) (GWEAP Limited Liability Company Agreement, Ex. 22, ¶ III(A)).

11.    Lowe is not related to Maldonado and was never an owner, officer, director, manager, member or employee of GW Zoo or Garold Wayne Zoo.  (Affidavit of Lowe, Ex. 20, ¶ 2).  Lowe first became acquainted with Maldonado and the Garold Wayne Zoo in the summer of 2015.  (Deposition of Lowe, Ex. 23, pp. 62:1-64:8) (Deposition of Garold Wayne Corporate Rep, Ex. 17, p. 112:1-14).

12.    On February 18, 2016, Plaintiff filed the instant fraudulent transfer action against Shirley (hereinafter "*Big Cat II*") (*Big Cat II* Complaint, Ex. 24).  Therein, Plaintiff alleged the following transfers to Shirley constitute fraudulent transfers under the Oklahoma Uniform Fraudulent Transfer Act ("UFTA"), 24 O.S. §§ 112 *et seq*.: (1) title to the Zoo Land; (2) vehicles and portable buildings titled and/or held in Shirley's name; (3) the 2013 and 2015 Land Leases and payments made thereunder; (3) cash and/or third-party checks of Garold Wayne Zoo; (4) tangible assets of Garold Wayne Zoo. *See id.* at ¶¶ 21(a)-(f), 42, 47-50.

13.    On August 22, 2016, Plaintiff amended its Complaint in *Big Cat II* to add

Greater Wynnewood Development Group, LLC (hereinafter "GWDG"), the current owner of the land on which GWEAP operates, as a party Defendant. (*Big Cat II* First Amended Complaint, Ex. 25). Shirley and Lowe formed GWDG on February 8, 2016 and each hold a 50% membership interest in this entity. (GWDG Certificate of Limited Liability Company, Ex. 26) (GWDG Limited Liability Company Agreement, Ex. 27).

14.    In addition to the individual claims against Shirley, Plaintiff alleges the following transfers to GWDG constitute fraudulent transfers under the UFTA: (1) title to the Zoo Land obtained from Shirley and Lowe; and (2) the 2016 Lease between GWDG and GWEAP. (*Big Cat II* First Amended Complaint, Ex. 25, ¶¶ 20, 24(c), 46).

### The Zoo Land and Bankruptcy Proceedings

15.    In 1998 or 1999, Francis and Shirley Schreibvogel, husband and wife, purchase approximately 16.49 acres of land in Wynnewood, Oklahoma (hereinafter the "Zoo Land") and opened GW Zoo. (Deposition of Shirley Schreibvogel, Ex. 28, pp. 14:24-15:2; 18:12-17) (*Big Cat II* First Amended Complaint, Ex. 25, ¶ 8).

16.    On February 12, 2010, Francis and Shirley Schreibvogel deeded the Zoo Land to Maldonado via Quitclaim Deed. (2010 Quitclaim Deed, Ex. 29).

17.    On February 1, 2011, Maldonado deeded the Zoo Land to Shirley via Quitclaim Deed. (2011 Quitclaim Deed, Ex. 30).

18.    On December 10, 2013, after Maldonado filed Chapter 7 bankruptcy, the Bankruptcy Trustee filed an Adversary Proceeding against Shirley to avoid the February 1, 2011 transfer of the Zoo Land from Maldonado to Shirley as fraudulent under 11 U.S.C. §§ 544(b)(1), 500 and 24 O.S. §§ 112, et seq., the Oklahoma Uniform Fraudulent Transfer

7

Act ("UFTA"). (Complaint to Avoid Fraudulent Transfer, Ex. 31).   Therein, the

Bankruptcy Trustee alleged *inter alia*: (1) Maldonado made the February 1, 2011 transfer

of the Zoo Land to Shirley with the actual intent to hinder, delay or defraud an entity to

which Maldonado was or became indebted; (2) Maldonado received less than reasonably

equivalent value in exchange for the transfer at a time he was insolvent and/or believed he

would incur debts beyond his ability to pay; and (3) at the time the Quitclaim Deed was

signed, Maldonado had been sued by Plaintiff herein in Florida which subsequently

resulted in judgment against the Florida defendants, including Maldonado. *Id.*  By way of

the Adversary Proceeding, the Bankruptcy Trustee sought the return the Zoo Land to the

bankruptcy estate as an asset that could be liquidated for the benefit of Maldonado's

creditors, including Plaintiff, or, payment to the bankruptcy estate in the amount of the fair

market value of the Zoo Land. *Id.* (*Big Cat II* First Amended Complaint, Ex. 25, ¶ 52).

19.    Plaintiff was the largest creditor of Maldonado's personal Chapter 7

bankruptcy (*Big Cat II* First Amended Complaint, Ex. 25).

20.    On December 15, 2014, David R. Payne of Business Valuators & Appraisers,

LLC (hereinafter "Appraiser"), at the request of the Bankruptcy Trustee, prepared an

Appraisal Report which appraised the Zoo Land "as is" at a value of $63,300.00.

(Appraisal Report, Ex. 32).

21.    On January 15, 2015, Shirley made a Rule 68 Offer of Judgment offering to

pay the Bankruptcy Trustee the sum of $63,300.00, which the Bankruptcy Trustee

accepted, and judgment pursuant to Rule 68 was rendered against Shirley in the Adversary

Proceeding. (Notice of Acceptance of Offer of Judgment, Ex. 33) (Judgment Pursuant to

Rule 68, Ex. 34).

22.    On January 18, 2015, Plaintiff received Notice of the Rule 68 Judgment against Shirley. (Certificate of Notice, Ex. 35).

23.    On September 9, 2015, after Shirley purchased the Zoo Land from the bankruptcy estate for $63,300.00, Shirley deeded the Zoo Land to herself and Lowe as joint tenants with the right of survivorship. (2015 Joint Tenancy Quit Claim Deed, Ex. 36).

24.    On December 30, 2015, counsel for Plaintiff sent correspondence to the Bankruptcy Trustee contesting the propriety of the Rule 68 Judgment in the Adversary Proceeding due to recently discovered evidence, and Plaintiff's counsel requested the Bankruptcy Trustee reopen the bankruptcy case. (Letter from Phillips Murrah to Trustee, Ex. 37).  Specifically, Plaintiff's counsel advised the Bankruptcy Trustee (1) the Appraisal Report undervalued the Zoo Land because it was based upon inaccurate information regarding the yearly lease payments ($5,000.00 vs. $60,000.00); and (2) Shirley paid for the Zoo Land with a $30,000.00 donation check made payable to Garold Wayne Zoo but negotiated directly to her in violation of a preliminary injunction in *Big Cat I. Id.*  Plaintiff's counsel suggested the Bankruptcy Trustee "evaluate the possibility of moving to vacate the Judgment under Rule 60, Fed. R. Civ. P." and acknowledged that "time is of the essence in this regard, as any challenge with respect to the Judgment would likely have to be undertaken prior to January 15, 2016." *Id.*

25.    Plaintiff never filed a Rule 60(b) motion or appealed the Rule 68 Judgment entered by the Bankruptcy Court. (Adversary Proceeding Docket, Ex. 38).

26.    When Plaintiff filed the instant action against Shirley on February 18, 2016

in the United States District for the Western District of Oklahoma, Plaintiff made the *exact same factual assertions* previously raised in correspondence to the Bankruptcy Trustee challenging the legitimacy of the Zoo Land Rule 68 Judgment against Shirley in the Adversary Proceeding. (Letter from Phillips Murrah to Trustee, Ex. 37) (*Big Cat II* Complaint, Ex. 24, ¶¶ 47-50) (*Big Cat II* First Amended Complaint, Ex. 25, ¶¶ 52-55).

27.    On February 12, 2016, Shirley and Lowe deeded the Zoo Land to GWDG. (2016 Quitclaim Deed, Ex. 39).  The Zoo Land was a capital contribution to GWDG by Shirley and Lowe, members of GWDG, which gave them an equity interest in GWDG. (GWDG's Amended Answers to Plaintiff's Interrogatories, Ex. 40, No. 8).

28.    On February 29, 2016, Maldonado's bankruptcy was fully administered and all assets of the bankruptcy estate were fully distributed, including the $63,300.00 proceeds of the Rule 68 Judgment against Shirley for the Zoo Land. (Chapter 7 Trustee's Final Account and Distribution Report, Ex. 10).

### 2016 Zoo Land Lease

29.    On February 15, 2016, after Shirley and Lowe transferred the Zoo Land to GWDG and Garold Wayne Zoo dissolved, GWDG as owner of the Zoo Land entered into a lease with GWEAP, the new owner of the zoo. (Land Lease Contract (hereinafter the "2016 Lease"), Ex. 41).

30.    GW Zoo, Garold Wayne Zoo and Maldonado are not parties to the 2016 Lease, and GW Zoo, Garold Wayne Zoo and Maldonado have no interest in GWEAP or GWDG. (2016 Lease, Ex. 41) (Affidavit of Lowe, Ex. 20) (GWDG Limited Liability Company Agreement, Ex. 27) (GWEAP Limited Liability Company Agreement, Ex. 22).

31.     Plaintiff has no judgment against GWDG, its members Lowe or Shirley, or GWEAP, and at the time GWDG and GWEAP entered the 2016 Lease, there were no claims or lawsuits against GWDG, its members Lowe or Shirley, or GWEAP. (*See generally* Docket of *Big Cat I and II*).

## ARGUMENT AND AUTHORITY

Summary judgment is appropriate if the pleadings, affidavits, depositions, and other evidence on file "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment 'as a matter of law.'" Fed. R. Civ. P. 56; *Jenks v. Hill*, 504 F. Supp. 1130, 1131 (W.D. Okla. 1981). A party opposing a motion for summary judgment must demonstrate clearly and with specificity that controverted facts exist. *Sec. Nat'l Bank v. Belleville Livestock Comm'n Co., Inc.*, 619 F.2d 840, 848-49 (10th Cir. 1979). When considering a motion for summary judgment, a court must view all facts and inferences in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *See also Mesa Petroleum Co. v. Cities Serv. Co.,* 1982 WL 1377 (W.D. Okla. 1982). However, only genuine disputes over facts that might affect the outcome of the case under the governing substantive law preclude the entry of summary judgment. *Id*. at 248. "[A] trial judge must bear in mind the actual quantum and quality of proof necessary to support liability" and must determine whether the proffered evidence is sufficient to allow a reasonable jury to find liability. *Id*. at 254. If the evidence leads to only one reasonable conclusion, summary judgment is proper. *Id*. at 250.

A party's failure to make a sufficient showing on an essential element of his case renders all other facts immaterial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986);

*Palermo v. First Nat'l Bank & Trust Co.*, 894 F.2d 363, 367 (10th Cir. 1990). "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. A movant need only point out that there is an absence of evidence to support an essential element of the non-moving party's case. *Id*. at 325. Then the non-moving party must set forth specific facts demonstrating there is a triable issue. *Id*. at 324; *Anderson*, 477 U.S. at 248; Fed. R. Civ. P. 56(e). As no triable issue regarding the Zoo Land or the 2016 Lease exist here, Defendants submit summary judgment is proper.

**PROPOSITION I: THE DOCTRINE OF RES JUDICATA BARS PLAINTIFF'S COLLATERAL ATTACK ON THE BANKRUPTCY COURT JUDGMENT RELATING TO THE ZOO LAND**

"[T]he question of the application of res judicata to the facts … is a pure question of law subject to de novo review." *Plotner v. AT & T Corp.,* 224 F.3d 1161, 1168 (10th Cir. 2000). "The fundamental policies underlying the doctrine of res judicata (or claim preclusion) are finality, judicial economy, preventing repetitive litigation and forum-shopping, and the interest in bringing litigation to an end." *Id.* (citing *Nwosun v. General Mills Restaurants, Inc.,* 124 F.3d 1255, 1258 (10th Cir.1997)) (quotations and footnotes omitted); *See also Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 326 (1979). "Res judicata ensures the finality of decisions" and "prevents litigation of all grounds for, or defenses to, recovery that were previously available to the parties, regardless of whether they were asserted or determined in the prior proceeding." *Brown v. Felsen,* 442 U.S. 127, 131 (1979).

> The judicial system's need for order and finality requires that orders of courts having jurisdiction to enter them be obeyed until reversed, even if proper grounds exist to challenge them. A challenge for error may be directed to the ordering court or a higher court, as rules provide, but it may not be made collaterally unless it is based on the original court's lack of jurisdiction. These principles are firm and long standing.

*Spartan Mills v. Bank of Am. Illinois*, 112 F.3d 1251, 1255 (4th Cir. 1997) (citing *Celotex Corp. v. Edwards*, 514 U.S. 300, 313 (1995) ("It is for the court of first instance to determine the question of the validity of the law, and until its decision is reversed for error by orderly review, either by itself or by a higher court, its orders based on its decision are to be respected." (citation omitted)).

The Tenth Circuit has characterized the elements of a res judicata defense as follows:

> (1) The prior suit must have ended with a judgment on the merits;
> (2) The parties must be identical or in privity;
> (3) The suit must be based on the same cause of action; and
> (4) The plaintiff must have had a full and fair opportunity to litigate the claim in the prior suit.

*Plotner v. AT & T Corp.,* 224 F.3d 1161, 1168 (10th Cir. 2000).

There is no question that the doctrine of res judicata applies to decisions rendered in federal bankruptcy courts. *Caperton v. A.T. Massey Coal Co.*, 690 S.E.2d 322, 354 (W. Va. 2009). "Congress intended to grant comprehensive jurisdiction to the bankruptcy courts so that they might deal efficiently and expeditiously with all matters connected with the bankruptcy estate." *Celotex*, 514 U.S. at 308 (citations omitted). Under 28 U.S.C. § 1334(b), the bankruptcy court has jurisdiction over all matters "related to" the bankruptcy, including suits between third parties which have an effect on the bankruptcy estate. *Id.* at

13

308, n. 5 (citations omitted).  To determine the existence of "related to" jurisdiction, the

Third Circuit has crafted the following test:

> The usual articulation of the test for determining whether a civil proceeding
> is related to bankruptcy is whether *the outcome of that proceeding could
> conceivably have any effect on the estate being administered in bankruptcy*....
> Thus, the proceeding need not necessarily be against the debtor or against the
> debtor's property. An action is related to bankruptcy if the outcome could
> alter the debtor's rights, liabilities, options, or freedom of action (either
> positively or negatively) and which in any way impacts upon the handling
> and administration of the bankrupt estate.

*Id.* at n. 6 (emphasis in original) (quoting *Pacor, Inc. v. Higgins,* 743 F.2d 984 (4th Cir.

1984) (overruled in part on other grounds)).  Nearly every other U.S. Court of Appeals,

including the Tenth Circuit, has adopted the *Pacor* test with little or no variation. *Id.*

The United States Supreme Court case of *Celotex Corp. v. Edwards*, 514 U.S. 300

(1995) is the cornerstone decision on collateral attacks of bankruptcy court judgments.

There, Celotex appealed a judgment rendered against it in asbestos litigation, posting a

supersedeas bond to stay execution of the judgment pending appeal. *Id*. at 302.  When the

appellate court affirmed the judgment, Celotex filed for bankruptcy which automatically

stayed both the continuation of "proceedings against" Celotex and the commencement of

"any act to obtain possession of property" of Celetox. *Id*. (citations omitted).  The

bankruptcy court also issued an injunction to augment the protection afforded to Celotex

by the automatic stay and precluded the asbestos litigation judgment creditors from

proceeding against any supersedeas bond posted by Celotex without the bankruptcy court's

permission. *Id*. at 303, 304.  The plaintiffs in the asbestos litigation then filed a motion in

federal district court seeking permission to execute against the bond, which the district

court granted. *Id*. at 303.  Celotex appealed, and the Fifth Circuit affirmed.  After granting certiorari, the United States Supreme Court reversed. *Id*. at 304-306.

The Supreme Court held the judgment creditors' attempts to immediately execute on the bonds was "related to" the bankruptcy because it would have a "direct and substantial adverse effect on Celotex's ability to undergo a successful reorganization." *Id.* at 309-310.  The Court held the "judgment creditors were required to obey [the] bankruptcy court injunction until it was modified or reversed, even if they had proper grounds to object to [the] injunction…." *Id*. at 300.  Because the judgment creditors chose not to challenge or appeal the injunction in bankruptcy court, the Supreme Court held they could not collaterally attack it in federal court "without seriously undercutting the orderly process of the law." *Id.* at 313.  Accordingly, judgment of the lower court was reversed.  *Id*.; *See also Lindsey v. Ipock,* 732 F.2d 619, 622 (8th Cir. 1984) (forbidding collateral attack on an erroneous but unappealed bankruptcy order).

The case of *Spartan Mills v. Bank of Am. Illinois*, 112 F.3d 1251 (4th Cir. 1997), is particularly instructive in its application of these established principles.  In *Spartan Mills*, Dash Industries, Inc. ("Dash"), a Florida apparel manufacturer and distributor, retained Spartan Mills to make sheet metal "screens" for transferring Dash's designs onto fabric and to manufacture the fabric itself. *Id*. at 1253.   Dash owed Spartan Mills over $600,000.00 for these services, and to secure payment of the debt Spartan Mills asserted a first priority, possessory textile processor's lien in the inventory and equipment in its custody. *Id*. Thereafter, Dash filed Chapter 11 bankruptcy. *Id*. As part of its reorganization plan, Dash sought to finance its ongoing operations through Bank of America Illinois

15

("BOA"), its bank, to whom it was already indebted over $1.5 million. *Id.* To provide BOA sufficient security to continue financing Dash, the bankruptcy court issued an order provisionally finding that BOA had a first priority lien on all of Dash's assets, including its equipment and inventory. *Id.* In two subsequent orders, the bankruptcy court ordered the sale of those assets free and clear of all liens, with liens to attach to the sale proceeds. *Id.* at 1253-54. Following a period which the court allowed for creditors to object, the bankruptcy court ratified the sale and ordered that the net proceeds be paid to BOA as lien holder enjoying a first priority position. *Id.* at 1254. Spartan Mills, as a creditor in Dash's bankruptcy, had notice of these orders but failed to object to or appeal them, and while it did file an adversary proceeding, it never prosecuted it. *Id.* at 1253-54, 1255. Thereafter, Spartan Mills negotiated and entered into an agreement with BOA, under which it agreed to relinquish possession of Dash's equipment and inventory to the buyer to permit completion of the court-ordered sale, with the condition that Spartan Mills would not be deemed to have relinquished the property for purposes of determining lien priority in any litigation over the sale proceeds. *Id.* at 1254. The bankruptcy court then paid the sale proceeds to BOA, and Spartan Mills dismissed its adversary proceeding. *Id.*

A year and a half later, Spartan Mills filed an action in federal district court seeking a declaration that its lien was superior to BOA's lien, BOA converted its property, and judgment should be entered against BOA for the amount Dash owed to Spartan Mills plus interest. *Id.* BOA filed a counterclaim for declaratory judgment that the bankruptcy court had previously decided the priority of liens and Spartan Mills was bound by the bankruptcy order. *Id.* On cross-motions for summary judgment, the district court granted BOA's

16

motion, holding Spartan Mills' action constituted an improper collateral attack on the bankruptcy court order. *Id.*  In affirming the grant of summary judgment, the United States District Court for the Fourth Circuit found: (1) the bankruptcy court had subject matter jurisdiction over all of Dash's assets and any lien contests in respect to them; (2) Spartan Mills, as a creditor, was a party to the bankruptcy proceedings; and (3) Spartan Mills received notice of all bankruptcy orders. *Id. at* 1255-1257.  Therefore, "under *Celotex* we must consider [the orders] binding on Spartan Mills, even if they were in error, and therefore must reject this collateral attack." *Id*. at 1255 (citing *Lindsey v. Ipock,* 732 F.2d 619, 622 (8th Cir. 1984) ("once [the creditor] was apprised of the bankruptcy court's sale order and failed to timely appeal, he was obligated to obey these orders even if they were in error")). The court noted:

> [A]part from its own action in filing an adversary proceeding, we believe that if Spartan Mills knew that proper bankruptcy procedure had not been followed, its remedy was to seek reconsideration from the bankruptcy court itself or to appeal to the district court in Florida and ultimately to the Eleventh Circuit. *See* Fed. R. Bankr.P. 8002, 9023, 9024. Under the holding of *Celotex,* Spartan Mills cannot allow a final order that deprives it of a lien position to stand and then hope to attack it collaterally at another time and in another forum. Both our circuit and other federal courts have barred bankruptcy parties from collateral assertions of legal claims after they fail, without reason, to object and appeal as required.

*Spartan Mills*, 112 F.3d at 1256-57 (citing cases).  The Fourth Circuit found that, rather than object in the bankruptcy or appeal the bankruptcy court's orders, "the record provide[d] ample support for the conclusion that Spartan Mills made a considered decision to try to litigate its lien claim … at another time." *Id*. at 1257.  "But in doing so, it left standing final orders that adjudicated its lien claim." *Id*. at 1258.  Because final, unappealed

bankruptcy court orders must be respected, the Fourth Circuit upheld the district court's grant of summary judgment to BOA. *Id.* (*citing Celotex*, 514 U.S. at 313).

Like *Celotex* and *Spartan Mills*, Plaintiff's failure to challenge the Rule 68 Judgment in the Bankruptcy Court is fatal to its fraudulent transfer claim against Defendants.  In the interest of finality, judicial economy, preventing repetitive litigation and forum-shopping – principles which underlie the doctrine of res judicata – this litigation must come to an end.  Because Plaintiff's collateral attack on the Bankruptcy Court Judgment in this forum is not permitted under the law, summary judgment must be granted.

### a.  Judgment on the Merits

"Consent judgments [such as Rule 68 judgments] are final judgments on the merits" for purposes of res judicata. *Bd. of Trs. of Trucking Emps. of N.J. Welfare Fund, Inc.-Pension Fund v. Centra,* 983 F.2d 495, 504 (3d Cir.1992); *Wilkes v. Wyoming Dep't of Employment Div. of Labor Standards*, 314 F.3d 501, 504 (10th Cir. 2002) (applying principles of res judicata to a Rule 68 judgment); *Arizona v. California,* 530 U.S. 392, 414 (2000) ("In most circumstances, it is recognized that consent agreements ordinarily are intended to preclude any further litigation on the claim presented…") (citation omitted); *Alvear–Velez v. Mukasey,* 540 F.3d 672, 678 (7th Cir. 2008) ("[U]nder res judicata, consent decrees normally prevent a new lawsuit arising from the same dispute that underlay the litigation in which the decree was entered."); *Mallory v. Eyrich*, 922 F.2d 1273, 1279 (6th Cir. 1991) (finding Rule 68 judgments satisfy the finality requirements of res judicata); *Williams v. Atl. Law Grp., LLC*, 174 F. Supp. 3d 874, 879 (D. Del. 2016) ("Because consent judgments are final judgments on the merits, the Rule 68 judgment that ended the Prior

Civil Action satisfies element 1" of res judicata); *See also Superior Indus., LLC v. Thor Global Enters. Ltd.,* 700 F.3d 1287, 1297 (Fed. Cir. 2012); *Oreck Direct, LLC v. Dyson, Inc.,* 560 F.3d 398, 401 (5th Cir.2009); *Banks v. Int'l Union Elec., Elec., Technical, Salaried and Mach. Workers,* 390 F.3d 1049 (8th Cir. 2004).

Here, there is no dispute that a Rule 68 Judgment was entered against Shirley in the Adversary Proceeding arising out of Maldonado's bankruptcy. (SUF No. 21).  Because Rule 68 judgments are "final judgments on the merits" for purposes of res judicata, this element is met.

### b.  Identity or Privity of Parties

Generally, a bankruptcy trustee is not in privity with the debtor because the trustee is a "representative of all creditors of the bankruptcy estate" and his interest is not aligned with that of the debtor, particularly in the context of avoidance actions. *In re Neal,* 478 B.R. 261, 271–72 (6th Cir. BAP 2012) (reversed on other grounds); *In re Fordu,* 201 F.3d 693, 705 (6th Cir.1999); *Royal v. Sharkey Well Serv.*, 05-2042, 2006 WL 2034582, at *2 (Bankr. D. Wyo. June 12, 2006).  In an avoidance action, the trustee is a successor to certain creditors and "may avoid any transfer of an interest of the debtor in property … that is voidable under applicable law by a creditor holding an unsecured claim" and "may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from the initial transferee…".  11 U.S.C.A. §§ 544(b)(1), 550.  Accordingly, a trustee has "standing to assert a creditor's cause of action [under the Oklahoma Uniform Fraudulent Transfer Act] on behalf of the bankruptcy estate." *In re Arrow Trucking Co. EIN No. xx-xxx4028*, 2011 WL 2173680, at *2 (Bankr. N.D. Okla. May 27, 2011)

19

Plaintiff was a party to the bankruptcy proceeding of Maldonado, and as a creditor, Plaintiff stood in privity with the bankruptcy trustee, particularly with respect to the Adversary Proceeding against Shirley. (SUF No. 19). Therein, the Bankruptcy Trustee sought to avoid the fraudulent transfer of the Zoo Land to increase the bankruptcy estate for the benefit of the creditors, including Maldonado's largest creditor, Plaintiff. (SUF No. 18). Moreover, Plaintiff received *actual notice* of the Rule 28 Judgment entered against Shirley in the Adversary Proceeding. (SUF No. 22). GWDG is also in privity with Shirley, a party to the Adversary Proceeding, as a subsequent transferee of the Zoo Land. (SUF Nos. 27-28). Therefore, identity or privity of parties exists in this case to apply res judicata.

### c. Same Cause of Action

The Tenth Circuit adopts the "transactional approach" of Restatement (Second) of Judgments § 24 in analyzing the "same cause of action" element of res judicata. *Plotner v. AT & T Corp.,* 224 F.3d 1161, 1168-69 (10th Cir. 2000). "Under this approach, a cause of action includes all claims or legal theories of recovery that arise from the same transaction, event, or occurrence. All claims arising out of the transaction must therefore be presented in one suit or be barred from subsequent litigation." *Id.* at 1169.

In the instant action, Plaintiff claims: (1) Shirley failed to disclose an inaccuracy in the Appraiser's assumption regarding yearly payments under the 2013 Lease which formed the basis for the Appraiser's valuation of the Zoo Land, thus allowing Shirley to pay below true market value for the Zoo Land; and (2) Shirley's payment of the Rule 68 Judgment was comprised completely or substantially from fraudulently transferred funds of Garold Wayne Zoo. (SUF Nos. 12-14, 24, 26). These claims clearly arise from the same

transaction involved in the Bankruptcy Court's Adversary Proceeding against Shirley, *i.e.* the fraudulent transfer of the Zoo Land, and have a direct effect on the Maldonado's estate being administered in bankruptcy. (SUF No. 18). *See Celotex,* 514 U.S. at n. 6 (citation omitted); *See e.g. Plotner,* 224 F.3d at 1170 (10th Cir. 2000) (claims that defendant's wrongdoing reduced the price plaintiff received under the sale of her property in bankruptcy proceeding arose from the same transaction at issue before the bankruptcy court). In fact, Plaintiff's counsel admits as much in its correspondence to the Bankruptcy Trustee, wherein counsel asked the Bankruptcy Court to reopen the bankruptcy to address these very issues. (SUF No. 24). Because Plaintiff's claims against GWDG and Shirley related to the Zoo Land arise from the same transaction, event or occurrence in the Bankruptcy Court, the "same cause of action" element is satisfied.

### d. Full and Fair Opportunity to Litigate

A party may challenge a bankruptcy court judgment or order by either seeking relief under Rule 60(b) of the Federal Rules of Civil Procedure or by appealing the bankruptcy court's ruling to the district court or Bankruptcy Appellate Panel, and then to the United States Court of Appeals. Fed .R. Bankr. P. 9024 ("Rule 60 F. R. Civ. P. applies in cases under the Code"); Fed. R. Bankr. P. 8002(a); *See* 28 U.S.C. § 158; *See also Celotex*, 514 U.S. at 313; *Knight v. Mooring Capital Fund, LLC*, 749 F.3d 1180, 1187-88 (10th Cir. 2014); *Plotner,* 224 F.3d at 1171. Under Rule 60, a creditor can seek relief from a final bankruptcy court judgment or order on the following grounds:

> (b) Grounds for Relief from a Final Judgment, Order, or Proceeding. On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:

> (1) mistake, inadvertence, surprise, or excusable neglect;
> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
> (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
> (4) the judgment is void;
> (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
> (6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b).   A party challenging a bankruptcy court judgment or order under Rule 60(b) must file the motion within a "reasonable time", and for reasons (1), (2) and (3), not more than one (1) year after the entry of judgment. Fed. R. Civ. P. 60(c)(1).   A party challenging a bankruptcy judgment or order by appeal must file a notice of appeal with the bankruptcy clerk within 14 days after entry of judgment (unless a timely post-trial motion is filed), subject to an extension for a period not to exceed 21 days. Fed. R.Bankr. P. 8002(a)(1), (d)[1].

Here, the undisputed evidence demonstrates Plaintiff never filed a Rule 60(b) motion or an appeal challenging the bankruptcy court's Rule 68 Judgment. (SUF No. 25). If Plaintiff truly believed the facts alleged in this case could change the outcome of the Rule 68 Judgment previously rendered, it should have preserved its rights in the Bankruptcy Court.   In fact, Plaintiff's counsel admittedly knew Rule 60 was the appropriate avenue of review in its correspondence to the Bankruptcy Trustee, wherein it urged that "time is of the essence in this regard, as any challenge with respect to the Judgment would

---

[1] A Rule 60 motion will only toll the time to appeal if the motion is filed within 14 days. Fed. R. Bankr. P. 8002(b)(1)(D).

likely have to be undertaken prior to January 15, 2016", *i.e.* one year from the date of judgment under Rule 60(c)(1). (SUF No. 24).  Plaintiff instead made a considered decision not to pursue this course of action but to litigate its claim in at another time in another forum. *See Spartan Mills*, 112 F.3d at 1257.  "The case is therefore one where [Plaintiff], having slept on its rights, now asks the [the Court] to do what by orderly procedure it could have done for itself. The case illustrates not the hardship of res judicata but the need for it in providing terminal points for litigation." *U.S. v. Munsingwear, Inc.,* 340 U.S. 36, 40-41 (1950).  Plaintiff's attempt to collaterally attack the bankruptcy court judgment "cannot be permitted ... without seriously undercutting the orderly process of law." *Celotex,* 514 U.S. at 313, 115; *See Crop–Maker Soil Services v. Fairmount State Bank,* 881 F.2d 436, 440 (7th Cir.1989) (holding plaintiff's failure to raise fraud arguments in bankruptcy court, "whether strategic or inadvertent, will not enable [plaintiff] to escape the res judicata net."). *Even if it was in error*, the doctrine of res judicata bars Plaintiff's collateral attack on the Bankruptcy Court's Rule 68 Judgment resolving fraudulent transfer claims relating to the Zoo Land.  Therefore, Defendants' Motion for Summary Judgment must be granted.

**PROPOSITION II: PLAINTIFF HAS NO STANDING TO BRING FRAUDULENT TRANSFER CLAIMS AGAINST DEFENDANTS RELATED TO THE 2016 LEASE**

Oklahoma fraudulent transfer law is embodied within the Oklahoma Uniform Fraudulent Transfer Act ("UFTA"), 24 O.S. § 112 *et seq*.  The purpose of the UFTA is to allow creditors with a claim against the debtor the opportunity to invalidate transfers of assets made by a debtor if such transfers have the effect of placing assets out of the reach of present and future creditors. *Burrows v. Burrows*, 886 P.2d 984 (Okla. 1994). To

23

establish a prima facie claim under the UFTA, there must first be creditor who has a claim against a debtor for a debt.  These terms are defined by the UFTA as follows:

2.  "Claim" means a right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured.
3.  "Creditor" means a person who has a claim.
4.  "Debt" means liability on a claim.
5.  "Debtor" means a person who is liable on a claim.

24 O.S. § 113.

In the instant case, it is undisputed that GW Zoo, Garold Wayne Zoo and Maldonado – the debtors against whom Plaintiff has a right to payment – are not parties to the 2016 Lease, and GW Zoo, Garold Wayne Zoo and Maldonado have no interest in GWEAP or GWDG. (SUF Nos. 29-30).  Moreover, at the time GWDG and GWEAP entered the 2016 Lease, Plaintiff had no judgment against GWDG, its members Lowe or Shirley, or GWEAP, and there were no claims or lawsuits pending against GWDG, its members Lowe or Shirley, or GWEAP. (SUF Nos. 7, 12-14, 31).  Simply, Plaintiff is not a creditor of GWDG or GWEAP, the parties to the 2016 Lease, and has no right payment from GWDG under the 2016 Lease.  Because Plaintiff cannot satisfy the prima facie requirements to impose liability under the UFTA, Plaintiff's claim against GWDG related to the 2016 Lease must fail.  Thus, summary judgment is proper.

## CONCLUSION

WHEREFORE, based on the arguments and authorities set forth above, Defendant Greater Wynnewood Development Group, LLC respectfully requests this Court grant summary judgment in its favor and against Plaintiff Big Cat Rescue Corp.

24

Respectfully submitted,

s/Melanie K. Christians
Justin D. Meek, OBA #21294
Melanie K. Christians, OBA #30846
Andre V. Farinha, OBA #32910
DeWITT PARUOLO MEEK, PLLC
P.O. Box 138800
Oklahoma City, OK  73113
Telephone: (405) 705-3600
Facsimile:  (405) 705-2573
jmeek@ntmdlaw.com
mchristians@ntmdlaw.com
afarinha@ntmdlaw.com
*Attorneys for Defendants*
*Shirley M. Schreibvogel and*
*Greater Wynnewood Development Group, LLC*

## CERTIFICATE OF SERVICE

This is to certify that on the 1st day of June, 2018, the above document was electronically transmitted to the Clerk of the Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

Heather L. Hintz
Melvin R. McVay, Jr.
Juston Givens Phillips Murrah P.C.
Corporate Tower, Thirteenth Floor
101 N. Robinson
Oklahoma City, OK  73102
hlhintz@phillipsmurrah.com
mrmcvay@phillipsmurrah.com
jrgivens@phillipsmurrah.com

s/ Melanie K. Christians