# Business Valuators & Appraisers, L. L.C.

## APPRAISAL REPORT



ASA
American Society of Appraisers
*Providing Value Worldwide* ™

16.439 Acres Located at
25893 N. Country Rd. 3250
Garvin County, Oklahoma

December 15, 2014
Authored by: David R. Payne, ASA/CPA & Marion L. Kordic, FASA

Exhibit
32

 **Business Valuators & Appraisers, L. L.C.**

A Member Firm of Business Advisory Partners

119 N Robinson Suite 440
Oklahoma City, OK  73102
*Telephone:*  (405) 272-0520
*Facsimile:*  (405) 272-0501



David R. Payne, ASA CPA/ABV
Marion L. Kordic, FASA
Accredited Senior Appraisers
American Society of Appraisers

December 30, 2014

L. Win Holbrook, Chapter 7 Trustee
Bankruptcy Estate of Joseph Schreibvogel
c/o Andrews Davis, P.C.
100 N Broadway, Suite 3300
Oklahoma City, OK 73102

RE:    Appraisal of 16.439 acres in the SW/4 of Section 21, T2N, R1E, Garvin County, Oklahoma
Transferred By Bankruptcy Estate of Joseph Schreibvogel, Case No. 13-11430, Western
District of Oklahoma

Gentlemen:

At your request and authorization, Business Valuators & Appraisers, L.L.C. ("BVA") has
prepared an appraisal of the market value of the referenced property and presented our
analysis in the following Appraisal Report.

The appraised property consists of a parcel of land containing 16.49 acres, situated at
25893 N County Road 3250, Garvin County, Oklahoma. The subject property is more fully
described, legally and physically, within the enclosed report.

Data, information, and calculations leading to the value conclusion are incorporated in the
report following this letter. The report, in its entirety, including all assumptions and limiting
conditions, is an integral part of, and inseparable from, this letter.

Based on the analysis contained in the following report, the market value of the subject
leasehold interest on a retrospective basis and the hypothetical fee simple interest on a
current basis is concluded as follows:

### MARKET VALUE CONCLUSION

| Appraisal Premise | Interest Appraised | Exposure | Date of Value | Value Conclusion |
|---|---|---|---|---|
| As Is | Leased Fee Estate | 12 Months | February 25, 2013 | $63,300 |
| Hypothetical | Fee Simple | 12 Months | December 15, 2014 | $102,700 |

(rounded to nearest $100)

**Business Valuators & Appraisers, L. L.C.**                                    Page 1

December 19, 2014
Page 2

The following appraisal sets forth the most pertinent data gathered, the techniques employed, and the reasoning leading to the opinion of value. The analyses, opinions and conclusions were developed based on, and this report has been prepared in conformance with, our interpretation of the guidelines and recommendations set forth in the Uniform Standards of Professional Appraisal Practice (USPAP), the requirements of the Code of Professional Ethics and Standards of Professional Appraisal Practice of the American Society of Appraisers and the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 (FIRREA), Title XI Regulations.

The report is for the sole use of the client; however, client may provide only complete, final copies of the appraisal report in its entirety (but not component parts) to third parties who shall review such reports in connection with financial planning. Appraisers are not required to explain or testify as to appraisal results other than to respond to the client for routine and customary questions.

It has been a pleasure to assist you in this assignment. If you have any questions concerning the analysis, or if we can be of further service, please contact us.

Respectfully submitted,

Business Valuators and Appraisers, L.L.C.

Marion L. Kordic, FASA
Oklahoma Certified General Appraiser #10065CGA

David R. Payne, ASA CPA/ABV

# Table of Contents

Executive Summary.................................................................4
Identification of the Property...................................................5
Legal Description...................................................................5
Standard of Value..................................................................8
Purpose of the Appraisal.........................................................9
Function of the Appraisal........................................................9
Effective Date of Appraisal....................................................10
Property Rights Appraised.....................................................10
Appraisal Report Options......................................................10
Sale History........................................................................11
Scope of the Appraisal..........................................................11
Limiting Conditions and Assumptions......................................13
Zoning...............................................................................18
Tax and Assessment Analysis.................................................18
The Valuation Process..........................................................19
Area Data - Regional Map.....................................................20
Vicinity Aerial Map...............................................................20
Neighborhood Analysis.........................................................21
Site Analysis.......................................................................22
Highest and Best Use Analysis...............................................25
Land Value.......................................................................26-49
Exposure Time....................................................................50
Digital Images....................................................................51
American Society of Appraisers..............................................51
Certification.......................................................................53
Professional Vitae - David R. Payne........................................54
Professional Vitae- Marion L. Kordic.......................................57
Appendices
•     Exhibits and Photographs of the Property..........................59-72

 Overview   • • •

### EXECUTIVE SUMMARY

| | |
|---|---|
| Effective Date of Appraisal | December 15, 2014 |
| Property Appraised | 16.439 acres of land located at 25893 N County Rd 3250 just north of the Northeast corner of S. H. 17A and I.H 35, Garvin County, Oklahoma ("Property") |
| Tax ID | 0000-21-02N-01E-0-018-00<br>0000-21-02N-01E-0-020-00 |
| Property Interest | Leased Fee Simple Interest, Surface only |
| Site Description | An irregular shaped tract of land containing 16.439 acres, MOL, and having 660 feet of frontage on N. Country Rd 3250, Wynnewood, OK 73098-0000. Leased to The Garold Wayne Interactive Zoological Foundation |
| Zoning | Not subject to zoning |
| Final Estimate of Value: | Leased Fee Estate (As Is): $63,300 ($3,850 Acre) as of 2/25/13<br>Fee Simple (Hypothetical): $102,700 ($6,250 Acre) as of 12/15/14 |

 **Premises** • • •

IDENTIFICATION OF THE PROPERTY

The Property consists of two abutting tracts of land containing 16.439 acres located at 25893 N County Rd 3250, North and East of the NE/c S.H. 17A and I.H. 35, Garvin County, Oklahoma. The land is leased for a term of 85 years to and known as **The Garold Wayne Interactive Zoological Foundation ( G W Exotic Animal Park)**, Wynnewood, OK.

LEGAL DESCRIPTION:

The Property is located in Garvin County, Oklahoma, legally described as, to wit:

> NW/4 SW/4 SW/4 of Section 21, Township 2 North, Range 1 East of the I.B.M. & the North 165 feet of the East 500 feet of the West 1460 feet of the N/2 S/2 SW/4 and the West 300 feet of the NE/4 SW/4 SW/4 and the West 300 feet of the NE/4 SW/4 SW/4 all in Section 21, Township 2 North, Range 1 East, containing 16.439 acres more or less (the "Property").





**Aerial Site Maps**





**Location**



Location Map; 25893 N County Rd 3250, North & East of the NE/c of S.H. 17A & I.H. 35, Wynnewood,73098-0000,Garvin County, OK

## Standard of Value

The following definition of market value was taken from regulations published by federal regulatory agencies pursuant to Title XI of the Financial Institutions Reform, Recovery, and Enforcement Act (FIRREA) of 1989.   Federal agencies publishing this definition, between July 5, 1990 and August 24, 1990, include the Federal Reserve System (FRS) as 12 CFR, parts 208 and 225; the National Credit Union Administration (NCUA); the Federal Deposit Insurance Corporation (FDIC); the Office of Thrift Supervision (OTS); and the Office of the Comptroller of the Currency (OCC) as 12 CFR, part 34, subpart C.   This definition is also referenced in regulations jointly published by the OCC, OTS, FRS, and FDIC on June 7, 1994; and in the *"Interagency Appraisal and Evaluation Guidelines"*, dated October 27, 1994.   This same definition is also cited in Advisory Opinion 22 and in the Glossary of the 2003 version of the Uniform Standards of Professional Appraisal Practice (USPAP).

> *"The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller each acting prudently and knowledgeably, and assuming the price is not affected by undue stimulus.   Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby:*
>
> *1.    buyer and seller are both typically motivated;*
>
> *2.    both parties are well informed or well advised and acting in what they consider their own best interests;*
>
> *3.    a reasonable time is allowed for exposure in the open market;*
>
> *4.    payment is made in terms of cash in U.S. dollars or in terms of financial arrangements comparable thereto; and*
>
> *5.    the price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions granted by anyone associated with the sale."*

This definition is also used by many other governmental agencies like Fannie Mae, Freddie Mac, the VA, the FHA, and many legal jurisdictions.

## PURPOSE OF THE APPRAISAL

The purpose of our appraisal assignment is to estimate the market value of both the as is leasehold interest and hypothetical fee simple interest in the subject property, as is, as defined herein.

## FUNCTION OF THE APPRAISAL

It is our understanding that the function of this appraisal is estimate market value of the property for litigation purposes as more fully described on page 10.

# LEASEHOLD INTEREST

The Property is leased to The Gerold Wayne Interactive Zoological Foundation ("Lessee") for $5,000.00 per year.  The lease ("Lease") is for eighty-five (85) years commencing February 25, 2013 and Ending February 25, 2098.  The lease rate includes all real and personal property improvements including buildings, cage and equipment.  The Lessee is also required to pay all utilities.  The lease is dated February 21, 2013 and states that Shirley Schreibvogle is the lessor.  John Finlay executed the lease on behalf of the Lessee.

# FEE SIMPLE INTEREST AND HYPOTHETICAL CONDITION

A hypothetical condition is that which is contrary to what exists, but is supposed for purposes of the analysis.  Hypothetical value represents a value based upon facts and conditions not actually present or in existence.  According to USPAP Standard No. 9, a hypothetical condition may be used in an assignment only if two situations are present.

    I.    Use of the hypothetical condition is clearly required for legal purposes, for purposes of reasonable analysis, or for purposes of comparison; and

    II.    Use of the hypothetical condition results in credible analysis

Our report applies the hypothetical conditions to estimate the Fee Simple Interest assuming that the Property is not subject to the eighty-five year lease.

# BANKRUPTCY PROCEEDING

Joseph Allen Schreibvogel ("Debtor") filed a chapter 7 bankruptcy proceeding on March 29, 2013 ("Petition Date"). On December 10, 2013 Win Holbrook, Chapter 7 Trustee ("Trustee") filed a complaint to avoid fraudulent transfer. The claim relates to a transfer by the Debtor on February 3, 2011 to Shirley Schreibvogle ("Transfer"). Since the Lease was entered into approximately two years after the Transfer, but prior to the Petition Date, the Trustee has requested that BVA value the property as follows: (i) "As Is" Leasehold Interest; and (ii) "Hypothetical" Fee Simple Interest. Our Leasehold Interest value has an effective date of the Lease which is substantially the same as the Petition Date. Our Hypothetical Fee Simple value has an effective date of December 15, 2014, the date of our site visit.

## EFFECTIVE DATE OF APPRAISAL

The effective date of the appraisal is February 25, 2013 for the leasehold interest and December 15, 2014 for the fee simple interest.

## PROPERTY RIGHTS APPRAISED

The property rights appraised are those of a **leased** fee simple estate of the *surface rights* only.

## APPRAISAL REPORT OPTIONS

This report is in compliance with Standard Rule 2-2 of the Uniform Standards of Professional Appraisal Practice (USPAP) of The Appraisal Foundation.

## PROFESSIONAL STANDARDS

All leading professional appraisal organizations, the U.S. Congress, all state legislatures, and numerous legal jurisdictions recognize the Uniform Standards of Professional Appraisal Practice (USPAP), promulgated by the Appraisal Foundation. Revised annually to keep it contemporary, these standards set forth ethical practices and proper procedures for a competent appraisal. This appraisal fully complies with all relevant portions of the USPAP version in effect on the date this report was prepared. It also complies with the Financial Institutions Reform, Recovery, and Enforcement Act (FIRREA), a federal law.

## Competency

One or more of the person(s) signing this report are licensed to appraise real property in the state the subject is located.   We affirm the appraiser(s) have the experience, knowledge, and education to value this type property.  We have previously appraised similar real estate.

## Sale History

On-line public records and/or a private data reporting service were used to search for prior sales of the subject real estate.  This research discovered no recorded conveyance of the subject during the three years preceding this report's effective value date. The current owner and defendant in the Transfer Litigation acquired the property from the Debtor on February 1, 2011 as recorded in Book/Page: 1934/460 of the Garvin County property records.

| Subject's Current Ownership |
| --- |
| Shirley Schreibvogel |

## SCOPE OF THE APPRAISAL

The extent of the process employed to collect and confirm data included; the investigation of city and county records, reliance on public and private data sources such as Market Data Research, Inc., and data collected and maintained in the appraiser's files that would be of general use in such appraisal work.

A physical inspection of the Property was made and an inspection of the comparable sales used in this analysis.   The methods employed in reporting and analyzing this data is explained in each section of this report.

The appraisal process may be applied to any specific property or property type and should emulate the thinking of the most probable class of purchaser or investor.  The appraisal profession recognizes three classic approaches in which indications of property value are developed.   These three approaches are generally known as the Cost Approach, Income Capitalization Approach and Direct Sales Comparison Approach.

Each of these approaches uses various principles of the marketplace, the most universal of which is the principle of substitution. This principle affirms that a prudent purchaser has three alternate courses of action available; specifically, to buy a vacant site and build a near identical or similar property without undue delay (Cost Approach), to find an equally desirable existing property offering comparable utility (Direct Sales Comparison Approach), or to find a substitute income stream of comparable quality, quantity, and durability (Income Capitalization Approach). Besides the principle of substitution, there are other principles to consider, such as supply and demand, opportunity cost, balance, conformity, contribution, surplus productivity, and externalities. Each of these principles is further impacted by anticipation and change in the marketplace.

After defining the specific appraisal problem, market data is collected and analyzed as it may affect the subject property. This includes area and neighborhood analysis, site and improvement analysis, highest and best use analysis, and the application of the three approaches referred to above, and more fully described below.

In this instance, **the subject Property is appraised as both an as is leasehold interest and hypothetically as a fee simple interest**; therefore, the **Income Approach** (discounted cash flow of leased interest method) and **Direct Sales Comparison Approach** are applicable approaches to value and have been developed in the valuation process. [Note: The Income Approach was only applicable to valuing the leasehold interest.]

## Limiting Conditions and Assumptions

### 1. Hypothetical Condition

As described previously a hypothetical condition is contrary to what exists but is supposed purposes of our analysis. Our report applies the hypothetical conditions to estimate the Fee Simple Interest assuming that the Property is not subject to the eighty-five year lease.

### 2. Limits of Liability

The liability of Business Valuators & Appraisers, L.L.C. and employees, contractors and members are limited to the fee collected. There is no accountability, obligation, or liability to any third party. If this report is placed in the hands of anyone other than the client, the client will make such party aware of all limiting conditions and assumptions of the assignment and related discussions. The Appraiser assumes no responsibility for any costs incurred to discover or correct any deficiencies present in the property.

### 3. Copies, Publication, Distribution, Use and Ownership of Report

The Bylaws and Regulations of the American Society of Appraisers require each Member and Candidate to control the use and distribution of each appraisal report signed by such Member or Candidate; except as hereinafter provided, the client may distribute copies of this appraisal report in its entirety to third parties as he may select; however, selected portions of this appraisal report will not be given to third parties without the prior written consent of the signatories of this appraisal report. Neither all nor any part of this appraisal report will be distributed to the public by advertising media, public relations, news, sales or other media for public communication without the prior written consent of BVA and the signers of this report.

### 4. Confidentiality

The Appraiser may not divulge the material (evaluation) contents of the report, analytical findings or conclusions, or give a copy of the report to anyone other than the client or his designee as specified in writing except as may be required by the American Society of Appraisers, as they may request in confidence for ethics enforcement, or by a court of law or body with the power of a subpoena.

This appraisal is to be used only in its entirety and no part is to be used without the whole report. All conclusions and opinions concerning the analysis are set forth in the report prepared by the Appraiser(s) whose signature(s) appears on the appraisal report, unless indicated as "Review Appraiser." No change of any item in the report will be made by anyone other than the Appraiser and/or officer of the firm. The Appraiser and firm will have no responsibility if they make any such unauthorized change.

## 5.  Trade Secrets

This appraisal was obtained from Business Valuators and Appraisers, L.L.C. or related companies and/or its individuals or related independent contractors and consists of "trade secrets and commercial or financial information" which is privileged and confidential and exempted from disclosure under 5 U.S.C. 552 (b) (4). Notify the appraiser(s) signing the report or an officer of Business Valuators and Appraisers, L.L.C. of any request to reproduce this appraisal in whole or part.

## 6.  Information Used

We assume no responsibility for accuracy or furnished information by or from others, the client, his designee, or public records. We are not liable for such information or the work of possible subcontractors. Be advised that some people associated with Business Valuators and Appraisers, L.L.C. and possibly signing the report are independent contractors. The comparable data relied upon in this report has been confirmed with one or more parties familiar with the transaction, or from affidavit or other sources thought to be reasonable; all are considered appropriate for inclusion to the best of our factual judgment and knowledge. An impractical and uneconomic expenditure of time would be required in attempting to furnish unimpeachable verification in all instances, particularly as to engineering and market-related information. We suggest that the client consider independent verification involving sale, lease, or other significant commitment of the subject property, and that such verification be performed by the appropriate specialists.

## 7.  Testimony, Consultation, Completion of Contract for Appraisal Services

The total fee is payable upon fulfillment/completion of the contract for appraisal, consultation or analytical service. If testimony or deposition is required because of any subpoena, the bankruptcy estate will be responsible for any additional charges based upon our standard hourly fee schedule.

## 8. Exhibits

The sketches and maps in this report are included to help the reader in visualizing the property and are not necessarily to scale. Various photos, if any, are included for the same purpose. Site plans are not surveys unless shown from a registered surveyor.

## 9. Legal, Engineering, Financial, Structural, Mechanical, Hidden Components or Soil

We assume no responsibility for matters legal in character or nature, nor matters of survey, nor of any architectural, structural, mechanical, or engineering nature. We render no opinion as to the title, which we presume that was merchantable. The property is appraised as if free and clear, unless otherwise stated in particular parts of the report. We assume that the legal description was correct as used in this report as furnished by the client, his designee, or as derived by the appraiser.

Please note that we give no advice regarding mechanical equipment or structural integrity or adequacy, nor soils and potential for settlement, drainage, and such (seek assistance from a qualified architect and/or engineer) nor matters concerning liens, title status, and legal marketability (seek legal assistance), and such. The lender and owner should inspect the property before any disbursement of funds; further, it is likely that the lender or owner may wish to require mechanical or structural inspections by a qualified and licensed contractor, civil or structural engineer, architect, or other expert.

The Appraiser has inspected as far as possible, by observation, the land and the improvements; however, it was not possible personally to observe conditions beneath the soil, hidden structurally, or other components. We have not critically inspected mechanical components within the improvements and we make no representations herein as to these matters unless specifically stated and considered in the report. The value estimate considers there being no such condition that would cause a loss of value. The land or the soil of the area being appraised appears firm, however, subsidence in the area is unknown. The appraiser(s) does not warrant against this condition or occurrence of problems arising from soil conditions.

The appraisal is based upon there being no hidden, unapparent conditions of the property site, subsoil, or structures or toxic materials that would render it more or less valuable. We assume no responsibility for any such conditions or for any expertise or engineering to discover them. We assume that all mechanical components were in operable condition and status standard for properties of the subject type. Conditions of heating, cooling, ventilating, electrical and plumbing equipment is considered commensurate with the condition of the balance of the improvements unless otherwise stated. No judgment is

made as to adequacy of insulation, type of insulation, or energy efficiency of the improvements or equipment.

If the appraiser has not been supplied with a termite inspection, survey, or occupancy permit, no responsibility or representation is assumed or made for any costs associated with obtaining the same, or for any deficiencies discovered before or after they are obtained.  We make no representation or warranties concerning obtaining these items.
The Appraiser assumes no responsibility for any costs or consequences arising due to the need, or the lack of need for flood hazard insurance.  An Agent for the Federal Flood Insurance Program should be contacted to decide the actual need for flood hazard insurance.

## 10.  Legality of Use

The appraisal is based on the premise that there is full compliance with all applicable federal, state and local environmental regulations and laws unless otherwise stated in the report; further, that all applicable zoning, building, and use regulations and restrictions for all types have been complied with unless otherwise stated in the report; further, we assume that all required licenses, consents, permits, or other legislative or administrative authority (local, state, federal and/or private entity or organization) have been or can be obtained or renewed for any use considered in the value estimate.

## 11.  Component Value

The distribution of the total valuation in this report between land and improvements applies only under the existing program of use.  The separate valuations for land and building must not be used with any other appraisal and are invalid if so used.

## 12.  Auxiliary and Related Studies

No environmental or impact study, special market study or analysis, highest and best use analysis study or feasibility study has been requested or made unless otherwise specified in an agreement for services or in the report.  The appraiser reserves the unlimited right to alter, amend, revise, or rescind any of the statements, findings, opinions, values, estimates, or conclusions upon any subsequent such study, analysis, previous study, information as to market or subject, or analysis subsequently becoming known to him.

**13.   Dollar Value, Purchasing Power**

The market value estimated, and the costs used, are as of the date of the estimate of value.  All dollar amounts are based on the purchasing power and price of the dollar as of the date of the value estimate.

**14.   Inclusions**

We have disregarded furnishings and equipment, personal property, or business operations except as specifically indicated and typically considered as a part of real estate, with only the real estate being considered in the value estimate unless otherwise stated.  In some property types, business and real estate interests and values are combined.

**15.   Value Change, Dynamic Market, Influences**

The estimated market value is subject to change with market changes over time; value is highly related to exposure, time, promotional effort, terms, motivation, and conditions surrounding the offering.  The value estimate considers the productivity and relative attractiveness of the property physically and economically in the marketplace.

We do not base the "Estimate of Value" in the appraisal report in whole or in part upon the race, color, or national origin of the present owners or occupants of the properties near the property appraised.

The Appraiser reserves the right to alter the opinion of value based on any information withheld or not discovered in the original normal course of a diligent investigation.

**16.   Management of the Property**

We assume that the property that is the subject of this report will be under prudent and competent ownership and management, neither inefficient nor super-efficient.

**17.   Professional Fees**

The fee for this appraisal or study is for the analytical services rendered and not for the time spent on the physical report or the physical report itself.  The physical report(s) remains the property of Business Valuators and Appraisers, L.L.C. under all circumstances.

18.  **Insulation and Toxic Materials**

Unless otherwise stated in this report, the appraiser(s) signing this report has no knowledge concerning the presence or absence of toxic materials and/or urea-formaldehyde foam insulation in existing improvements; existence of such may adversely affect the property being appraised and reappraisal at additional cost may be necessary to estimate the effects of such materials.

19.  **Right to Alter Market Value**

The appraisers and/or officers of Business Valuators and Appraisers, L.L.C. reserve the right to alter statements, analysis, conclusion or any value estimate in the appraisal if there becomes known to us facts pertinent to the appraisal process that were unknown to us when the report was finished.

20.  ACCEPTANCE OF, AND/OR USE OF THIS APPRAISAL REPORT CONSTITUTES ACCEPTANCE OF THE ABOVE CONDITIONS EVEN THOUGH UNSIGNED BY THE CLIENT.

ZONING

The Property is not zoned by Garvin County and is not within corporate limits of any City.

Presently no private deed restrictions known to the appraiser which limit usage of the subject site.

TAX AND ASSESSMENT ANALYSIS

The Property is exempt from taxes since it is leased to a non-profit foundation.

The Property is identified on the tax rolls as account # 0000-21-02N-01E=0=018-00 (B001) and 0000-21-02N-01E-0-020-00 (B2).  The property is currently NOT assessed for taxation.

## THE VALUATION PROCESS

Listed below are the primary steps taken in order to estimate the market value of the Property:

❖ General data collection and analysis - This step involved research into national, regional and local economic influences on the property being appraised.

❖ Specific data collection and analysis - While similar to the above, more detailed information was assembled and confirmed with respect to the subject and comparable properties which have recently sold and rented.

❖ Highest and best use analysis - Based on the data gathered, a conclusion was reached concerning the land.

❖ Land value estimate - If comparable vacant land sales are located, they will be adjusted for dissimilarities with the subject site, and utilized to estimate a current land value estimate for the subject site.  If good quality land sales are not available, then other techniques can be used to estimate market value.

 Area Data     • • •

Location within the Wynnewood, Oklahoma Area

Vicinity Aerial Map



## NEIGHBORHOOD ANALYSIS

Real estate is an immobile commodity.  As such, it is influenced by the surrounding neighborhood.  Conditions within the neighborhood can influence buyer/seller opinions concerning real property values within a neighborhood.  Therefore, the neighborhood description is important to the valuation of real estate.  The neighborhood is the general area considered to have the greatest influence on the value of the subject property.

A neighborhood is defined as "a group of complimentary land uses".[1]  It is an area that usually has distinguishing characteristics and may be a section of a community or the neighborhood may constitute an entire community.  Further, the prescribed area may coincide with changes in prevailing land use(s), occupant characteristics, or physical characteristics such as building structures, street patterns or terrains that are common neighborhood boundaries.

For purposes of the subject Property, a neighborhood analysis is not applicable since the Property is a special-use type property as relates to the improvements and agricultural use land.

*Land Availability:*

Currently, there is a substantial amount of vacant land in the subject's immediate area available for future development to a higher and better uses as the conditions of supply-demand dictate.

*Utility Services:*

Generally, many parts of the market area are served by all typical public and quasi-public utility services, including electric, telephone, gas, water and sanitary sewer.

---

[1] The dictionary of Real Estate Appraisal, AIREA, second edition, 1989, pg. 207

## SITE ANALYSIS





| | |
|---|---|
| **Location:** | 25893 N County Road 3250, just N of the Northeast corner of S.H. 17A and I.H. 35, Garvin County, Oklahoma. |
| **Lessee:** | The site is under an 85 year lease to The Garold Wayne Interactive Zoological Foundation - Exotic Animal Park at a rental of $5,000 annually plus all utility costs. |
| **Improvements:** | The improvements are leasehold improvements consisting of buildings, fenced cages w/protective fence guards housing; lions, tigers, bears, monkeys, wolves, hyenas, and other animals in a zoo layout. |
| **Size:** | 16.439-acres. |
| **Shape:** | "L" shaped tract. |
| **School District:** | District #138 Wynnewood District - Public Schools. |
| **Frontage:** | Approximately 660 feet on the East side of N Country Road 3250. |

**Visibility:**                 The site has average visibility.

**Topography:**                 The topography is relatively flat over the West 10 acres and  sloping from Northwest to Southeast over the East 6.44 acres See topographic map below.



USGS TOPOGRAPHIC MAP

**Flood Hazard:**               A review of the flood hazard map shows the site is not located in a designated flood prone zone.

**Utilities:**                  Utilities available to the site are provided:
Electricity     REC
Telephone       AT&T
Water           Rural Water District
Sewer           Private Sewer system

**Easements/
Encroachments:**                No title opinion was available to the appraisers to determine if easements are located within the subject property. Although it is possible that easements encumber the site, our appraised value assumes the easements and other typical easements that may exist would not be detrimental to the site's utility or marketability.

**Soil Analysis:**              The soils appear to be typical of most Oklahoma soils and functional for most industrial and commercial development uses.

Surrounding Uses:          Scattered S/F residential and agricultural use to north and
                           west.

Conclusion:                The subject site is located in a rural residential area. The
                           subject property & area has desirable topographic features
                           including wooded terrain and has close proximity to interstate
                           highway IH-35. This is a major positive influence in this
                           neighborhood.

## HIGHEST AND BEST USE ANALYSIS

In appraisal practice, the concept of highest and best use represents the premise upon
which value is based. Implied within the definition is recognition of the contribution of
that specific use to community environment/development goals in addition to wealth
maximization of individual property owners. Also implied is that the determination of
highest and best use results from the appraiser's judgment and analytical skill, i.e., that
the use determined from analysis represents an opinion, not a fact to be found.

There are four sequential stages of analysis in estimating a property's highest and best
use. These include consideration of uses which are 1) physically possible, 2) legally
permitted, 3) feasible, in that the use provides a net return to the site, and 4)
determination of the single use from among all other feasible uses which provides the
greatest return to the property, and therefore, represents the highest and best use of
the property.

This analysis is applied to the site both as if vacant and available for development, and as
presently improved (if applicable). In this manner, the contributory value of existing
improvements may be contrasted with current development trends to assess any possible
design deficiencies that may impair the efficiency of operation, resulting in diminution in
value. This type of assessment aids not only in the Cost Approach, but also in the selection
of comparables used in both the Income and Sales Comparison Approach.

The first test of highest and best use is physical adaptability considering the subject
property is physically adaptable to a wide range of uses; the test of physical possibilities
does not significantly narrow the range of alternatives. The subject sites are both of
adequate size with good shape and having desirable topographic features for utilization
for most mixed-residential and commercial uses.

**Highest and Best Use, As Vacant**

The subject consists of two abutting tracts of land. Highest and best use is concluded to be for speculative holding with continued agricultural use pending sufficient demand for future development into a rural residential use.

## Land Value

*Introduction*

The best method of valuing vacant land is the sales comparison approach. In an appraisal, the real estate being appraised is referred to as the "subject" or "subject property." Properties possessing characteristics that are physically and locationally similar to the subject are called "comparables" or "comparable sales." This approach compares prices, terms, and features of similar properties that have sold. Differences are noted. Dissimilarities between the subject and comparables are categorized into elements of comparison. To compensate for dissimilarities, adjustments are applied to the sale prices of the comparable sales. Then, a value estimate for the subject is reconciled from the range in adjusted sale prices. The resultant worth estimate is called "Market Value" or "Value in Exchange."

Factors considered most important in arriving at an estimate of land value include:

- Prominence of location
- Date of sale
- Size and usefulness
- Availability of utilities
- Topography
- As well as many other factors

In estimating the value of the subject site, several properties were inspected and compared with the subject property as to size, location, topography, access, utilities, grading and surroundings. Some properties considered were eventually disregarded as not being comparable. In addition, sellers and buyers were contacted where possible, and also local Realtors, brokers, bankers and others. Always, county records were researched for dates, revenue stamps and other supporting evidence.

The following sales are presented in summary form, and briefly described on pages following. Full details of each transaction, complete legal descriptions, etc. are kept in the appraisers files for future reference if required.

## Summary of Comparable Land Sales

| Sale No. | Location | Sale Date | Sale / Price/$ | Land Size/Acres | Land Use/ | Price Per Acre/$ |
|---|---|---|---|---|---|---|
| 1 | 02220 Wynnewood | 4/12/2012 | 95,500 | 40.00 | SF/Res/Blt 1940/1312sf | 2,387.50 |
| 2 | S21,T02N,R01E | 5/06/2014 | 25,000 | 9.87 | Vacant | 2,532.93 |
| 3 | 2402 Box 60, Wynnewood | 9/30/2012 | 126,500 | 9.37 | SF/Res/Blt 1975/1478sf | 13,500.53 |
| 4 | 02033 Wynnewood | 12/13/2013 | 165,,000 | 10.00 | SF Res | 16,500.00 |
| 5 | 28323 Ind. Meridian, Wynnewood | 8/06/2014 | 205,000 | 26.80 | SF/Res/Blt 2011/1796sf | 7,649.25 |
| 6 | DID NOT USE | | | | | |
| 7 | S02,T01N,R01E | 10/30/2012 | 82,500 | 19.53 | Vacant | 4,224.27 |
| 8 | 32907 E County Rd 1650 Wynnewood | 3/06/2012 | 70,000 | 13.00 | SF/Res/Blt 1990/1104sf | 5,384.62 |
| 9 | 02265 Wynnewood | 11/01/2013 | 30,000 | 10.00 | SF/Res/Blt 1999/936sf | 3,000.00 |
| 10 | DID NOT USE | | | | | |
| 11 | 02124 Norman | 1/19/2012 | 91,500 | 40.00 | 2 Stor sheds1152sf | 2,287.50 |
| 12 | 02571 Wynnewood | 7/28/2014 | 13,000 | 10.00 | Shed/Barn/2280sf | 1,300.00 |
| 13 | 02671 Wynnewood | 1/25/2014 | 104,000 | 170.00 | 2 barns/2003sf | 611.76 |
| 14 | 32083 E County Rd 1650 Wynnewood | 7/08/2014 | 155,000 | 10.00 | SF/Res/Blt 1985/1593sf | 15,500.00 |
| 15 | 31185 E County Rd 1650 Elmore City | 12/16/2013 | 188,000 | 20.00 | SF/Res/Blt 2005/1728sf | 9,400.00 |
| 16 | 32638 E County Rd 1650 Wynnewood | 1/14/2014 | 175,000 | 33.35 | SF Res/Blt 2003/1690sf | 5,247.38 |
| 17 | S27,T02N,R01W | 8/26/2014 | 696,000 | 100.00 | Vacant | 6,960.00 |
| 18 | 33599 E Pvt 1625 Dr.,Pauls Valley | 7/23/2014 | 11,0000 | 10.00 | SF Res/Blt 1990/1826sf | 11,000.00 |
| 19 | 16946 N County Rd, Lindsay | 4/26/2012 | 40,000 | 7.30 | Barns-7 | 5,479.45 |
| 20 | 00114 Wynnewood | 9/19/2012 | 100,000 | 43.00 | Barn - 900sf | 2,325.58 |
| | Mean – All Years (rounded nearest dollar) | | | | | $6,405 |
| | Mean – 2014 Transactions Only (rounded nearest dollar) | | | | | $6,250 |

## COMPARABLE LAND SALES MAP



## Comparable Land Sale No. 1

www.countyassessor.info
Garvin County Records [OK]

11/14/2014

Owner Information
DAVIS, DUSTIN A
PO BOX 248
DAVIS, OK 73030-0

Property Address
02228 WYNNEWOOD

Building No. 001
Account Number 0000-20-02N-01E-0-001-00

Sub Name UNPLATTED
Area Name 02N-01E
Section 20 Township 02N Range 01E

| | Taxable Market | Assessed Value |
|---|---|---|
| Land | $3935 | $433 |
| Improved | $75222 | $8274 |
| Mobile | $0 | $0 |
| Total | $81157 | $8927 |
| Exemptions | | $0 |
| Net Assessed | | $8927 |
| Estimated Taxes | | $970.41 |

School District 138 Wynnewood
Sales Information
Sale Date 20120412 Sale Price $65972 Book/Page 1878/803 $/SF 72.79
Grantor W. E. DAVIS DEVELOPMENT
Sale Date 20110922 Sale Price 80000 Book/Page 1856/781 $/SF 88.5
Grantor STATE BANK OF WYNNEWOOD
Sale Date 20101130 Sale Price 0 Book/Page 1828/315 $/SF 0
Grantor POOLE, LORE E.

Land Information
Land Use RURAL AG
Lots 0 Acres 40 SF 0 Width 0 Depth 0
Calculation ACRE

Mobile Home Information
Serial No.
Make
Tax Yes

Miscellaneous Structures

| Description | Year | L X W | Units |
|---|---|---|---|
| SHED OPEN METAL | 0 | 18 X 8 | 144 |
| Shed, Wood | 0 | 15 X 12 | 180 |
| SHED OPEN METAL | 0 | 12 X 8 | 96 |
| Barn Pole | 0 | 60 X 40 | 2400 |
| SKIRTING ROOF | 0 | 24 X 14 | 336 |
| N/A | 0 | | 0 |
| N/A | 0 | | 0 |
| N/A | 0 | | 0 |
| N/A | 0 | | 0 |
| N/A | 0 | | 0 |

Building Elements
Type SINGLE FAMILY
Style One Story
Design TRADITIONAL
Quality AVERAGE Interior Finish AVERAGE
Condition AVERAGE
Roof GABLE COMP SHINGLE
Exterior Wall WOOD N/A
Foundation CONVENTIONAL Fireplace N/A
Heat FLR/WL FURN A/C WINDOW UNIT
Beds 3 Baths 2 Total Rooms 5
Garage N/A Garage SF 0
Porch OPEN Porch SF 218
Basement N/A Basement SF 0
Year Built 1940 Eff Year Built 2010 Year Remodeled 0
Square Footage 1318

Commercial Elements
Stories N/A Story Height 00
Units 0 Frame 000 Perimeter 0000
Class Description N/A

0000-20-02N-01E-0-001-00 04/27/2010
P/ 1 OF 5

Legal Description
NW NW NE & NE NW & NE NW NW NW SD 6/9/13 ...

## Comparable Land Sale No. 2

## Comparable Land Sale No.3



Comparable Land Sale No.4



Case 5:16-cv-00155-SLP Document 91-32 Filed 06/01/18 Page 35 of 73

## Comparable Land Sale No.5

Comparable Land Sale No.7

# Comparable Land Sale No.8

11/14/2014

www.countyassessor.info
**Garvin County Records [OK]**

**Owner Information**
WEST, SHANE & HEATHER
32907 E COUNTY RD 1650

WYNNEWOOD, OK 73098-0000

**Property Address**
32907 E COUNTY ROAD 1650 WYNNEWOOD

| | Taxable Market | Assessed Value |
|---|---|---|
| Land | $20002 | $2200 |
| Improved | $50200 | $5500 |
| Mobile | $0 | $0 |
| Total | $70002 | $7700 |
| | Exemptions | $0 |
| School District 101 Wynnewood | Net Assessed | $7700 |
| School Levy $75.11 | Estimated Taxes | $578.35 |

**Land Information**
Land Use RURAL RES

| Lots | Acres | SF | Width | Depth |
|---|---|---|---|---|
| 0 | 12 | 0 | 0 | 0 |

Description ACRE

**Miscellaneous Structures**

| Description | Year | L/W | Units |
|---|---|---|---|
| STORAGE/METAL/OF | 1955 | 12 X 10 | 120 |
| Barn Pole | 1995 | 36 X 30 | 1080 |
| N/A | 0 | | 0 |
| N/A | 0 | | 0 |
| N/A | 0 | | 0 |
| N/A | 0 | | 0 |
| N/A | 0 | | 0 |
| N/A | 0 | | 0 |
| N/A | 0 | | 0 |
| N/A | 0 | | 0 |

Building No. 001
Account Number 0000-23-02N-01W-0-024-00

Sub Name UNPLATTED
Lot Block
Area Name 02N-01W
Section 23 Township 02N Range 01W

**Sales Information**

| Sale Date | Sale Price | Book/Page | $/SF |
|---|---|---|---|
| 20130208 | 70000 | 1877/258 | 63.40 |
| Grantor YOUNG, JAMES H & HILLARY | | | |
| Sale Date | Sale Price | Book/Page | $/SF |
| 20110913 | 0 | 1956/421 | 0 |
| Grantor WILLIAMSON, DOYNE & MARY | | | |
| Sale Date | Sale Price | Book/Page | $/SF |
| 00000000 | 0 | 0/0 | 0 |
| Grantor | | | |

**Mobile Home Information**
Serial No.
Make
Tag No. Year X

**Building Elements**
Type SINGLE FAMILY
Style One Story
Design TRADITIONAL
Quality FAIR Interior Finish AVERAGE
Condition AVERAGE
Roof GABLE COMP SHINGLE
Exterior Wall WOOD N/A
Foundation CONVENTIONAL Fireplace N/A
Heat FLWL FURN Air WINDOW UNIT
Beds 2 Baths 1 Total Rooms 4
Garage N/A Garage SF 0
Porch OPEN Porch SF 112
Basement N/A Basement SF 0
Year Built 1910 Eff Year Built 2007 Year Remodeled 0
Square Footage 1104

**Commercial Elements**
Stories N/A Story Height 00 Perimeter 0000
Units 0 Part 000
Class Description N/A

**Legal Description**
SE SE SE *CA DOROCON930-487.

## Comparable Land Sale No.9



**Owner Information**
CROSSLIN, CHARLES K
PO BOX 491

MAYSVILLE, OK 73057-0000

**Property Address**
02555 WYNNEWOOD

www.countyassessor.info
**Garvin County Records (OK)**

Building No. 001
Sub Name: UNPLATTED
Area Name: 03N-01W   Loc:   Block:
Section 13   Township 02N   Range 01W

Account Number
0000-12-02N-01W-3-007-00

| Taxable Market | Assessed Value |
|---|---|
| | $974 |
| Land | $8150 |
| Improved | $23870 | $2626 |
| Mobile | $0 | $0 |
| Total | $30000 | $3300 |

School District I38 Wynnewood   Not Assessed   $3300
Stencil Levy   578.11   Estimated Taxes   $247.59

**Sales Information**
| Sale Date | Sale Price | Book/Page | SQF |
|---|---|---|---|
| 20131101 | 30000 | 2007/9535 | 32.05 |
Grantor: FOSTER, CUSTER C. & WILMA

| Sale Date | Sale Price | Book/Page | SQF |
|---|---|---|---|
| 20131101 | 30000 | 2007/9540 | 32.05 |
Owner: FOSTER, CUSTER C. & WILMA

| Sale Date | Sale Price | Book/Page | SQF |
|---|---|---|---|
| 00/00/000 | 0 | 00 | 0 |
Grantor:

**Land Information**
Land Use: RURAL RES

| Lots | Acres | SF | Width | Depth |
|---|---|---|---|---|
| 0 | .10 | 0 | 0 | 0 |

Description: ACRE

Exemptions

**Miscellaneous Structures**
| Description | Yr.Bt | Dim'l | Units |
|---|---|---|---|
| STORAGEWDXDXDCF | I8BD | 24 X 12 | 288 |
| N/A | 0 | | 0 |
| N/A | 0 | | 0 |
| N/A | 0 | | 0 |
| N/A | 0 | | 0 |
| N/A | 0 | | 0 |
| N/A | 0 | | 0 |
| N/A | 0 | | 0 |

VXX 1WV NE NE & RQ NE NW NE GW022227.649;

**Building Elements**
| Type | SINGLE FAMILY |
|---|---|
| Style | One Story |
| Design | TRADITIONAL |
| Quality | FAIR   Interior Finish AVERAGE |
| Condition | FAIR |
| Roof | GABLE   COMP SHINGLE |
| Exterior Wall | WOOD |
| Foundation | CONVENTIONAL |
| Heat | SPACE |
| Beds | 2   Baths  1 |
| Garage | N/A |
| Finish | N/A |
| Basement | N/A |
| Year Built | 1968 |
| Square Footage | 936 |

Exterior Wall N/A
Fireplace N/A
Air WINDOW UNIT
Total Rooms 4
Garage SF 0
Porch SF 0
Basement SF 0
Year Remodeled 0

**Commercial Elements**
| Stories | N/A | Story Height 00 | Perimeter 0000 |
|---|---|---|---|
| Units | 0 | Rent 000 | |
Class Description   N/A

**Mobile Home Information**
| Serial No. | |
|---|---|
| Make | LMW _x |
| Tag No. | |

Legal Description

## Comparable Land Sale No.11

Comparable Land Sale No.12

## Comparable Land Sale No.13

## Comparable Land Sale No.14

## Comparable Land Sale No.15

www.countyassessor.info
**Garvin County Records [OK]**

Owner Information
SHIELDS, DUSTIN J.
31165 ECR 1650

ELMORE CITY, OK 73433-0000

Property Address
31165 E COUNTY ROAD 1650 ELMORE CITY

| | Taxable Market | Assessed Value |
|---|---|---|
| Land | $8232 | $905 |
| Improved | $117653 | $13052 |
| Mobile | $0 | $0 |
| Total | $125885 | $13958 |
| | Exemptions | $1000 |
| School District: D8 Wynnewood | Net Assessed | $12958 |
| School Levy: 573.31 | Estimated Taxes | $973.20 |

Land Information
Land Use: RURAL AG

| Lots | Acres | SF | Width | Depth |
|---|---|---|---|---|
| 0 | 20 | 0 | 0 | 0 |

Description: ACRE

Miscellaneous Structures

| Description | Built | Lx W | Size |
|---|---|---|---|
| Barn Pole | 1993 | 57 X 40 | 2280 |
| SHED OPEN METAL | 1993 | 22 X 12 | 264 |
| SHED OPEN METAL | 2000 | 22 X 12 | 264 |
| SHED OPEN METAL | 1993 | 18 X 12 | 216 |
| STORAGE/METAL/OF | 1993 | 24 X 12 | 288 |
| SHED/ENWOOD FL | 2002 | 28 X 12 | 336 |
| Shed, Metal | 2002 | 57 X 18 | 1026 |
| SHED OPEN METAL | 2002 | 24 X 24 | 576 |
| SHED OPEN METAL | 2006 | 100 X 75 | 7500 |
| N/A | 0 | | 0 |

Building No: 001
Account Number: 0000-22-02N-01W-0-006-00

Sub Name: UNPLATTED
Lot: Block:
Area Name: 02N-01W
Section: 22 Township: 02N Range: 01W

Sales Information

| Sale Date | Sale Price | Book/Page | $SF |
|---|---|---|---|
| 20131218 | 185070 | 2042/256 | 108.5 |
| Grantor: KITSON, DAVID & | | | |
| 20080124 | 0 | 1857/08 | 0 |
| Grantor: PRICHTELL, DEAN S. & CONS | | | |
| 20080124 | 0 | 1857/26 | 0 |
| Grantor: PRICHTELL, DEAN S. & CONS | | | |

Mobile Home Information
Serial No.
Make
Tag No. LxW x

Building Elements
Type: SINGLE FAMILY
Style: One Story
Design: METAL HOME
Quality: FAIR Interior Finish: AVERAGE
Condition: AVERAGE
Roof: GABLE METAL LOW
Exterior Wall: ALUM (MH) N/A
Foundation: SLAB Fireplace: N/A
Heat: FORCED AIR Air: FORCED AIR
Beds: 3 Baths: 2 Total Rooms: 6
Garage: N/A Garage SF: 0
Porch: OPEN Porch SF: 30
Basement: N/A Basement SF: 0
Year Built: 2005 Eff Year Built: 0 Year Remodeled: 0
Square Footage: 1728

Commercial Elements
Stories: N/A Story Height: 00 Perimeter: 0000
Units: 0 Rent: 000
Class Description: N/A

0000-22-02N-01W-0-006-00

Legal Description

# Comparable Land Sale No.16

11/14/2014

www.countyassessor.info
**Garvin County Records [OK]**

Building No 001 | Account Number 0000-26-02N-01W-0-015-00

**Owner Information**
KILE, NOLEN MICHAEL &
MELISSA ANN
32638 E COUNTY ROAD 1650
ELMORE CITY, OK 73433-0030

**Property Address**
32638 E COUNTY ROAD 1650 WYNNEWOOD

| | Taxable Market | Assessed Value |
|---|---|---|
| Land | $7400 | $843 |
| Improvements | $65933 | $7252 |
| Mobile | $0 | $0 |
| Total | $73333 | $8095 |
| Exemptions | | $1000 |
| School District I38 Wynnewood | Net Assessed | $7095 |
| School Levy $75.11 | Estimated Taxes | $532.91 |

**Land Information**
Land Use RURAL AG

| Lots | Acres | SF | Width | depth |
|---|---|---|---|---|
| 0 | 31.34 | 0 | 0 | 0 |

Description ACRE

**Miscellaneous Structures**

| Description | YOC | DIMS | Units |
|---|---|---|---|
| Shed, Metal | 1995 | 30 X 14 | 420 |
| N/A | 0 | | 0 |
| N/A | 0 | | 0 |
| N/A | 0 | | 0 |
| N/A | 0 | | 0 |
| N/A | 0 | | 0 |
| N/A | 0 | | 0 |
| N/A | 0 | | 0 |
| N/A | 0 | | 0 |
| N/A | 0 | | 0 |

Sub Name UNPLATTED
Lot Block
Area Name 02N-01W
Section 26 Township 02N Range 01W

**Sales Information**

| Sale Date | Sale Price | Book/Page | S-SF |
|---|---|---|---|
| 20140114 | 0 | 2045/148 | 0 |

Grantor CAMPBELL, GARY LEE II

| Sale Date | Sale Price | Book/Page | S-SF |
|---|---|---|---|
| 20140114 | 175000 | 2045/154 | 103.16 |

Grantor CAMPBELL, GARY LEE II

| Sale Date | Sale Price | Book/Page | S-SF |
|---|---|---|---|
| 00000000 | 0 | 0/0 | 0 |

Grantor

**Mobile Home Information**
Serial No
Make
Tag No LxW x

**Building Elements**
Type SINGLE FAMILY
Style One Story
Design TRADITIONAL
Quality AVERAGE Interior Finish AVERAGE
Condition AVERAGE
Roof GABLE COMP SHINGLE
Exterior Wall WOOD N/A
Foundation SLAB Fireplace N/A
Heat FORCED AIR Air FORCED AIR
Beds 3 Baths 2 Total Rooms 6
Garage N/A Garage SF 0
Porch OPEN Porch SF 64
Basement N/A Basement SF 0
Year Built 2003 Eff Year Built 0 Year Remodeled 0
Square Footage 1690

**Commercial Elements**
Stories N/A Story Height 00 Perimeter 0000
Units 0 Rent 000
Class Description N/A

0000-26-02N-01W-0-015-00
P/ 1 OF 3

**Legal Description**

COM NW/C NW NE 31.34A [illegible]

## Comparable Land Sale No.17

## Comparable Land Sale No.18

Comparable Land Sale No. 19



Comparable Land Sale No.20



Elements of comparison between the comparables and subject include characteristics like financing terms, conditions of sale, market conditions and physical characteristics. Adjustments to the comparables are made to account for the differences in these characteristics. A general discussion of these adjustments follows:

- Financing Terms account for the impact on value that is produced by favorable financing. Adjustments are not required since all sales are based on cash and cash equivalency basis.

- Conditions of Sale adjustments reflect the motivations of the buyer and the seller.

- Market Conditions (time) account for value changes in area properties between the date of the comparable sale and the effective date of the appraisal report. Sale transaction data have been limited. The sales employed in this appraisal do show appreciation in value since their sale dates. Thus, adjustment for market conditions is applied to the sales.

- Zoning Adjustments are based upon the relative flexibility of a tract's allowable uses compared to the subject.

- Size and Shape adjustments' accounts for differences in a site's physical area, dimensions, street frontage, width and depth. Typically, market data suggests that the size of a tract (all other factors being equal) is inversely proportional to the sale price/unit of comparison, i.e., the larger the tract, the lower the sale price/unit of comparison, and vice versa. Simply, a larger tract with similar characteristics to a smaller tract will typically sell for less on a comparative basis.

- Corner Influence adjustments account for the impact on value that may be produced by properties with frontage on two or more streets.

- Topography adjustments account for the differences in a site's contour, grades, natural drainage, soil conditions, view and general physical usefulness.

- Utility's adjustments account for the availability and adequacy of public utilities and services.

- Location adjustments account for the impact on value of time-distance relationships between a site and common origins and destinations. Forms of access to and from the property and traffic volumes are considered in this analysis.

- Site Improvements adjustments account for the effect on value for the improvements that exist on the site.

A discussion of each comparable and the differences in its salient features in comparison to the subject site follows. If no salient feature is discussed, then the comparable and the subject are sufficiently similar in the feature so that no discussion and adjustment are required. We selected seven (7) 2014 comparable sales as being the most relevant to develop our pinion of value. Our conclusion for the fee simple interest is $6,250 per acre and $3,850 per acre for the leasehold interest as set forth below:

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | \multicolumn{9}{c}{**Sale Transaction Summary**<br>**2014 Sales Located in Wynnewood Area**} |

| | \multicolumn{7}{c}{Comparable Sales} | |
|---|---|---|---|---|---|---|---|---|
| | 1 | 2 | 3 | 4 | 5 | 6 | 7 | Mean |
| Transaction No. | #17 | #5 | #12 | #14 | #5 | #13 | #16 | |
| Date | 8/26/2014 | 8/6/2014 | 7/28/2014 | 7/8/2014 | 5/16/2014 | 1/25/2014 | 1/14/2014 | |
| Size | 100.00 | 26.80 | 10.00 | 10.00 | 9.87 | 170.00 | 33.35 | |
| Proximity | West | West | West | West | East | West | West | |
| Price/Acre with Improvements | 6,960 | 7,649 | 1,300 | 15,500 | 2,533 | 612 | 5,247 | 6,253 |
| Adjusted Price/Acre Removing Improvements | 6,960 | 4,002 | 1,300 | 10,047 | 2,533 | 612 | 2,386 | 3,844 |
| Adjustments to Comparable Compared to Subject (Plus-Minus-Similar) | | | | | | | | |
| 1. Market Conditions/Time | | | | | | | | |
| 2. Location of Sale | – | – | + | + | | + | + | |
| 3. Size-Frontage | – | | + | – | + | – | | |
| 4. Land Improvement | + | + | + | – | + | + | + | |
| 5. Topography | | | | | | | | |
| Overall Conclusion (Higher-Lower-Similar) | | | | | | | | |
| Subject | <6960 | =4002 | >1300 | <10047 | >2533 | >612 | >2386 | |
| Range of Value for Subject | | | 2533 – Subject Price – 6960 | | | | | |
| Conclusion of Value | | | | | | | | |
| Fee Simple | | | 6250 | See Appendix A | | | | |
| Leasehold (8.5% Yield) | | | 3850 | See Appendix B | | | | |

# Income Approach – Discounted Future Returns

We calculated the net present value of the future 85 year lease payment stream of $5,000 per annum at long term risk adjusted rates between 7.5% and 8.5%. These rates represent a premium from long term non- investment grade bonds due to the risk profile of the lessee/obligor. We selected a rate of 8.5% as representing the most probable market rate of return. The net present value of the lease payment stream is $63,761 or $3,878 per acre as of February 25, 2013. This present value correlates with the adjusted price per acre after removing improvements from 2014 comparable land sales of $3,844 as set forth above. A summary of our present value calculations are set forth on Appendix B.

## Analysis and Conclusion of Land Value:

A substantial number of sales have been presented providing a broad range of vacant land values. Therefore, having considered *all* facts available and pertinent to the valuation problems, giving consideration to the traditional Sales Comparison Approach and subject to the contingent and limiting conditions set forth within the this report, it is concluded that an estimated reasonable and creditable market value for the subject property as of February 25, 2013 and December 15, 2014 was:

<div align="center">

As Is Leasehold Interest @ February 25, 2013
16.439 acres at $3,850.00 per Acre = $63,290
Rounded to, Say $63,300

Hypothetical Fee Simple Interest @ December 15, 2014
16.439 acres at $6,250.00 per Acre = $102,744
Rounded to, Say $102,700

</div>

**Exposure Time**

Terminology abounds in the real estate appraisal profession.  Two related but different concepts that are often confused are Exposure Time and Marketing Time.  USPAP specifically addresses the confusion.

| Term | Definition | Explanation |
|---|---|---|
| Exposure Time (Statement 6) | *"... the estimated length of time the property interest being appraised would have been offered on the market prior to the hypothetical consummation of a sale at market value on the effective date of the appraisal".* | Backward looking; ends on the effective value date.  Based on factual, past events. |
| Marketing Time (Advisory Opinion 7) | *"... an opinion of the amount of time it might take to sell a real or personal property interest at the concluded market value during the period immediately after the effective date of the appraisal".* | Forward looking; starts on the effective value date. A forecast based on expectancies of future occurrences. |

USPAP Standard rule 1-2(c)(iv) requires an opinion of **exposure time**, not marketing time, when the purpose of the appraisal is to estimate market value.  In the recent past, the volume of competitive properties offered for sale, sale prices, and vacancy rates have fluctuated little. Sale concessions have not been prevalent.  In light thereof, an estimated exposure time for the subject is 6 to 12 months assuming competitive pricing and prudent marketing efforts.


## Digital Images

Our world is rapidly shifting to a global economy in which technology and e-commerce play major roles.  Digitized signatures and digital photographs are key elements of this shift.  This appraisal may contain digital photographs, which are  true and accurate representations.  These images have not been altered or augmented in any way.

Digital signatures may be affixed to this document.  Statement 8 of USPAP recognizes and addresses the proper use of digitized signatures.  In this document, a digital signature is a reproduction of the appraiser's actual signature.  Software used for the affixation has a password security feature, which controls its usage.

### American Society of Appraisers

The American Society of Appraisers, the professional organization that awards the AM, ASA and FASA appraisal designations, conducts a program of continuing professional education for its designated members.  Associate and Affiliated Members may attend educational courses and seminars, but they do not receive continuing education credit from the American Society of Appraisers.  Only designated American Society of Appraisers members make the following declarations and/or certifications.

|  | As of the date of this report, I have **completed** the continuing education program of the American Society of Appraisers | As of the date of this report, I have **not completed** the continuing education program of the American Society of Appraisers | **Not Applicable.** Not a designated member of the American Society of Appraisers |
|---|---|---|---|
| Marion L. Kordic, FASA | x |  |  |
| David R. Payne, ASA CPA/ABV | x |  |  |

Signatories to this report, who are American Society of Appraisers designated members, associates, or affiliates, incorporate the following Certifications to those listed under the bolded topic named "Certifications" contained later in this report.

➢ The reported analyses, opinions, and conclusions were developed, and this report has been prepared in conformity with the requirements of the Code of Professional Ethics & Standards of Professional Appraisal Practice of the American Society of Appraisers, which includes the Uniform Standards of Professional Appraisal Practice.

➢ Use of this report is subject to the requirements of the American Society of Appraisers relating to review by its duly authorized representatives.

# Certifications:

The appraiser(s) signing this report make the following certifications to the best of his/her/their knowledge and belief.

➤ The statements of fact contained in this report are true and correct.  Reported analyses, opinions, and conclusions are limited only by the assumptions and limiting conditions contained within this report, and are the appraiser(s) personal, impartial, and unbiased professional analyses, opinions, and conclusions.

➤ The appraiser(s) have no present or prospective interest in the property that is the subject of this report, or personal interest with the parties involved.  The appraiser(s) have no bias with respect to the property that is the subject of this report, or to the parties involved with this assignment.

➤ This engagement was not contingent upon developing or reporting predetermined results.  Compensation paid to the appraiser(s) is not contingent upon the development or reporting of a predetermined value, or direction in value that favors the cause of the client, the amount of the value opinion, the attainment of a stipulated result, or the occurrence of a subsequent event directly related to the intended use of the appraisal.

➤ Reported analyses, opinions, and conclusions were developed, and this report has been prepared in conformity with the Uniform Standards of Professional Appraisal Practice (USPAP) as promulgated by the Appraisal Foundation.

No one provided significant real property appraisal assistance to the person(s) signing this certification. Based upon the information contained herein, and upon judgment, education, and experience as real estate appraisers, it is opinion of the appraiser(s) that the following market value is (values are) applicable the subject property as of February 25, 2013 and December 15, 2014:

<div align="center">

**$63,300 -" As Is" Leasehold Interest @ 2/25/15**
**SIXTY-THREE THOUSAND THREE HUNDRED DOLLARS**
**$102,700 – "Hypothetical" Fee Simple Interest @ 12/15/14**
**ONE HUNDRED TWO THOUSAND SEVEN HUNDRED DOLLARS**

</div>

Marion L. Kordic, FASA
Certified General Real Estate Appraiser
Oklahoma License No. 10065CGA
Licence Expiration Date: 12/31/2015

David R. Payne, ASA CPA/ABV

---

Business Valuators & Appraisers L.L.C.                                   Page 53

# DAVID R. PAYNE, CPA/ABV, CIRA/CDBV, CTP, ASA
## Summary Curriculum Vitae

119 N. Robinson, Suite 400
Oklahoma City, OK 73102
Tel: (405) 272-0511
Fax: (405) 272-0501

## Experience

Mr. Payne is President of *D. R. Payne & Associates, Inc.*, with over thirty (30) years of accounting and consulting experience in both public and private industry. The firm maintains an office in Oklahoma City and serves clients throughout the Southwest. Mr. Payne also serves as Managing Directors of *Business Valuators and Appraisers, L.L.C.*, a firm specializing in valuation and appraisal matters and *Renewal & Recovery Professionals, L.L.C.*, a firm providing turnaround, interim and/or court supervised management services to troubled companies. Mr. Payne previously worked in a number of financial positions in industry including serving as Controller and Chief Accounting Officer of a publicly-traded company, in addition to working as a partner in a Big Six Accounting and Consulting Firm.

## Professional Designations
- Certified Public Accountant (CPA)
- Accredited in Business Valuation (ABV)
- Certified Turnaround Professional (CTP)
- Certified Insolvency & Restructuring Advisor (CIRA)
- Certified in Distressed Business Valuation (CDBV)
- Accredited Senior Appraiser (ASA)

## Professional Affiliations
- Member, Oklahoma Society of Certified Public Accountants
- Member, American Institute of Certified Public Accountants
- National Board of Directors – Association of Insolvency and Restructuring Advisors
- Member, American Bankruptcy Institute
- President, Oklahoma Chapter of the American Society of Appraisers
- Member, Association of Certified Fraud Examiners
- Member, Turnaround Management Association
- Member, International Business Brokers Association

## Professional and Expert Witness Assignments
- Damage Assessments - Contract, Torts, Warranty, Anti-Trust, Infringement, Securities, Minority Shareholder, Wrongful Termination/Death – Over 100 cases
- Alter Ego, Fraudulent Conveyance, Badges of Fraud, Concealments, Misstatements, and Breach of Duty, Negligence, Professional Standards – Over 100 cases

- Insolvency and Reorganization Evaluations – Cash Collateral, Conversion, Dismissal, Avoidance Actions, Confirmation, Absolute Priority and Feasibility - Over 500 cases
- Out of Court Restructurings – Over 100 clients
- Valuations and Appraisals – Over 20,000 hours
- Accountings and Forensic Investigations – Reconstructing of Books and Records, Tracing of Funds, Dissolution Accounting, Project Accounting, Transfer Pricing and other Financial/Business Conduct Disputes – Over 100 matters

**Court Appointed Assignments**
- Chapter 11 Trustee
- Chapter 11 Examiner
- Chapter 11 Post Petition Officer
- Court Appointed Expert Witness, F. R. E. 706
- Federal District Court Receiver
- State District Court Receiver

**Management Assignments**
- Interim Chief Executive Officer
- Outsourced Chief Financial Officer
- Chief Restructuring Officer
- Chief Development Officer
- Operating Agent

**Publications, Articles and Presentations**

- "Individual Chapter 11 Proceedings" Association of Insolvency and Restructuring Advisors' 24th Annual Bankruptcy & Restructuring Conference, June 2011
- "Distressed Assets and Companies – Financing Issues" Rocky Mountain Mineral Law Foundation, January 2010 Whitepaper
- "Recent Case Rulings Center Around the Cornerstone General Standards Within the Professions," Association of Insolvency and Restructuring Advisors Journal, February/March 2009
- "Valuation of Small, Troubled Businesses," Association of Insolvency and Restructuring Advisors Conference, June 2008
- "Fraud: A View From The Private Sector," Clifton H. Scott, Oklahoma State Auditor and Inspector - Questioning and Detecting Fraud, December 1998
- "How Structures Affect Valuation and Discounts," Family Law Symposium, Oklahoma Bar Association, November 1998
- "Utilizing Business Appraisals as a Benchmark for Evaluating Contested Single Asset Real Estate Cases," Whitepaper, November 1997
- Energy/Utility Industry Outlook, Association of Insolvency Accountants, May 1997
- "Alternatives to Bankruptcy," North American Petroleum Conference, May 1992
- "Role of the Reorganization and Insolvency Accountant," Oklahoma County Bar, May 1992
- "Post Petition Financing and the Capital Crisis," Oklahoma Bar, Advanced Bankruptcy, December 1991
- "The Farmout Bills, A Closer Look," American Bankruptcy Institute, June 1988

**Education and Certifications**

Mr. Payne is a graduate of Oklahoma Christian University (B.S. in Accounting 1980). He has participated in or instructed continuing education programs in the areas of valuation, bankruptcy accounting, litigation support, and turnaround management. Mr. Payne has attended strategic planning seminars, activity based costing and business valuation courses offered as executive training. Mr. Payne has completed courses, passed examinations and/or achieved direct experience required in public accounting, appraisal, turnaround management and restructuring disciplines to become certified.

# PROFESSIONAL VITA

| | |
|---|---|
| Name: | Marion L. Kordic, FASA |
| Business Address: | 7400 W. Fordson Drive, Oklahoma City, Oklahoma  73127-3238-66 |
| Business Phone: | Voice/Data/Fax: (405) 789-8696 |
| | Mobile: (405) 410-5731 Email: mlkordic@cox.net |

Position: *Fee appraiser:*  Marion Kordic & Associates;  D. R. Payne & Associates; Business Valuation & Appraisers, L.L.C. and Asset Appraisal Corporation

Professional Designations: "ASA" - Accredited Senior Appraiser;
Year ASA awarded:  1982;
Elected to College of Fellows - 1997 designated "FASA" ;
Specialty:  Urban Property/Commercial & Industrial

Professional
Licenses: Oklahoma Certified General Appraiser #10065CGA

Appraiser Regulatory
Board Appointments: Oklahoma: Instructor: "Principles of Real Estate Appraisal" & "USPAP".
Member:   Education & Experience Committee - 1995

University Education: Oklahoma City University:   BS - Business- Finance & Banking
University of Wisconsin:     Graduate School of Banking

Professional
Appraisal Education: Appraisal Institute: All prescribed courses for MAI designation; University of Georgia; University of Indiana; University of Wisconsin; University of Oklahoma.   Have attended & completed numerous seminars; conferences and short courses covering appraisal continuing education including ASA annual conferences for period from 1992 - 2011: Philadelphia; New Orleans; Seattle; Chicago; Denver; Toronto; Houston; Maui, Hawaii; Tampa; Kansas City; New York City; Las Vegas

Appraisal Teaching
Experience: USPAP Instructor - ASA - 8 courses 1993-2000.

Courts Qualified in as an
Appraisal Expert:

| | |
|---|---|
| Oklahoma District Courts: 12 counties | |
| U.S. District Court: | Western District of Oklahoma |
| U.S. Tax Court: | Western District of Oklahoma |
| U.S. Bankruptcy Courts: | Eastern & Western Districts of Oklahoma and Lubbock, Texas |

---

Business Valuators & Appraisers L.L.C.                                                                   Page 57

PROFESSIONAL VITA
MARION KORDIC
PAGE 2

| | |
|---|---|
| Professional Appraisal Experience: | First National Bank & Trust Co. of Oklahoma City [1954-1964]; Chief Appraiser - Vice President |
| | Appraisal Affiliates, Inc.: Partner in appraisal firm with Oscar Monrad, MAI-CRE [1965-1969]; |
| | Fee Appraiser: - Marion Kordic & Associates: 1976\Current; D. R. Payne & Associates; Business Valuation & Appraisers, L.L.C.; Asset Appraisal Corporation |
| Appraisal Related Experience: | Homebuilder & Land Developer\1964-1965; |
| | Corporate Executive of NYSE Oil & Gas Corporation - Texas International Company\1969-1973 - Sr. Vice President & Director, CEO of Real Estate Division - West Aspen Co., developed 1,800 acre "Greenbriar" master planned community in southwest OKC, OK; developed Golf Course-Ski Lodge & Resort Subdivision in Aspen, CO; CEO of subsidiary - Crown Hill Cemetery, Denver, CO. |
| American Society of Appraisers positions held: | Oklahoma City Chapter 59: President \1983-1984; 2004-2005; 2010-2011 |
| | State Director - Oklahoma\1986-1990 |
| | Regional Governor- Region 17\1992-1995; |
| | ASA Education Foundation - Director - Treasurer\1993-1999; |
| | College of Fellows\1997 – Councilman – Chancellor - 2006; |
| | International Committee's: |
| | Education Committee\1992-1994; |
| | Budget & Finance\1994-1995; |
| | Nominating & Awards Committee\1996-1999; 2002-2004 |
| | Real Property Committee - Chairman\1994-1997; |

# APPENDICES

**Comparable Sales Data**

**Properties Sold**

Sort: All Properties by Year Sold

| # | Address | Area | Direction (1) | Sale Date | Sale Price | Acres | Structure(s) | Structure(s) Built | Structure Sq Ft | $ Per Acre | Adjusted $ per Acre (2) |
|---|---------|------|---------------|-----------|-----------|-------|--------------|--------------------|-----------------|------------|--------------------------|
| 17 | S27, T02N, R01W | Wynnewood | West | 8/26/2014 | 696,000 | 100.00 | | | | 6,960.00 | 6,960.00 |
| 21 | 28323 Indian Meridian Rd | Wynnewood | West | 8/6/2014 | 205,000 | 26.80 | Residence | 2011 | 1,796 | 7,649.25 | 4,001.65 |
| 12 | 02571 Wynnewood | Wynnewood | West | 7/28/2014 | 13,000 | 10.00 | 1 Barn/2 Sheds | | 2,280 | 1,300.00 | 1,300.00 |
| 18 | 33569 E Pvt 1625 Dr | Pauls Valley | West (Other) | 7/23/2014 | 110,000 | 10.00 | Residence | 1990 | 1,826 | 11,000.00 | 1,276.00 |
| 14 | 32083 E. County Rd, 1650 | Wynnewood | West | 7/8/2014 | 155,000 | 10.00 | Residence | 1985 | 1,593 | 15,500.00 | 10,046.67 |
| 2 | S21, T02N, R01E | Wynnewood | East | 5/16/2014 | 25,000 | 9.87 | | | | 2,532.93 | 2,532.93 |
| 19 | 16846 N. County Rd 3040 | Lindsay | West (Other) | 4/26/2014 | 40,000 | 7.30 | 8 Barns/Shop/Sheds | | 6,960 | 5,479.45 | 5,479.45 |
| 13 | 02671 Wynnewood | Wynnewood | West | 1/25/2014 | 104,000 | 170.00 | 2 Barns/1 Shed | | 2,707 | 611.76 | 611.76 |
| 16 | 32638 E. County Rd, 1650 | Wynnewood | West | 1/14/2014 | 175,000 | 33.35 | Residence | 2003 | 1,690 | 5,247.38 | 2,385.74 |
| 15 | 31185 E. County Rd, 1650 | Elmore City | West (Other) | 12/16/2013 | 188,000 | 20.00 | Residence | 2005 | 1,728 | 9,400.00 | 4,818.29 |
| 4 | 02033 Wynnewood | Wynnewood | East | 12/13/2013 | 165,000 | 10.00 | Residence | 1970 | 1,611 | 16,500.00 | 11,260.00 |
| 9 | 02585 Wynnewood | Wynnewood | West | 11/1/2013 | 30,000 | 10.00 | Residence | 1999 | 936 | 3,000.00 | (2,864.00) |
| 10 | S03, T02N, R02E | Wynnewood | East | 7/26/2013 | 22,500 | 15.00 | | | | 1,500.00 | 1,500.00 |
| 7 | S02, T01N, R01E | Wynnewood | East | 10/30/2012 | 82,500 | 19.53 | | | | 4,224.27 | 4,224.27 |
| 3 | 2402 Box 60 | Wynnewood | West | 9/30/2012 | 126,500 | 9.37 | Residence | 1975 | 1,478 | 13,500.53 | 7,856.48 |
| 20 | 00114 Wynnewood | Wynnewood | East | 9/19/2012 | 100,000 | 43.00 | Barn | | 900 | 2,325.58 | 2,325.58 |
| 1 | 02220 Wynnewood | Wynnewood | West | 4/12/2012 | 95,500 | 40.00 | Residence | 1940 | 1,312 | 2,387.50 | 797.33 |
| 8 | 32907 E. County Road 1650 | Wynnewood | West | 3/8/2012 | 70,000 | 13.00 | Residence | 1990 | 1,104 | 5,384.62 | 883.81 |
| 11 | 02124 Norman | Wynnewood | West | 1/19/2012 | 91,500 | 40.00 | 2 Storage Sheds | | 1,152 | 2,287.50 | 2,287.50 |
| 6 | Not Utilized | | | | | | | | | | |
| | | | | Mean | | 31.43 | | | | | |

| | | |
|---|---|---|
| All Transactions Mean | 6,146.88 | 3,551.76 |
| All Transactions High | 16,500.00 | 11,260.00 |
| All Transactions Low | 611.76 | (2,864.00) |
| 2014 Transactions Mean | 6,253.42 | 3,843.80 |
| 2014 Transactions High | 15,500.00 | 10,046.67 |
| 2014 Transactions Low | 611.76 | 611.76 |
| 2013-12 Transactions Mean | 6,051.00 | 3,288.93 |
| 2013-12 Transactions High | 16,500.00 | 11,260.00 |
| 2013-12 Transactions Low | 1,500.00 | (2,864.00) |

(1) East or West of I-35
(2) Reduced for estimated value of residential buildings as follows:
2000 and later construction: $60/sq ft
1985-1999 construction: $55/sq ft
Pre-1985 construction $50/sq ft
Residence estimated to contain 2.5 acres

Sorted By: Year Sold

Appendix A-1

| | | | | | | | | Structure(s) | Structure Sq | | Adjusted $ |
| # | Address | Area | Direction (1) | Sale Date | Sale Price | Acres | Structure(s) | Built | Ft | $ Per Acre | per Acre (2) |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 4 | 02033 Wynnewood | Wynnewood | East | 12/13/2013 | 165,000 | 10.00 | Residence | 1970 | 1,611 | 16,500.00 | 11,260.00 |
| 14 | 32083 E. County Rd, 1650 | Wynnewood | West | 7/8/2014 | 155,000 | 10.00 | Residence | 1985 | 1,593 | 15,500.00 | 10,046.67 |
| 3 | 2402 Box 60 | Wynnewood | West | 9/30/2012 | 126,500 | 9.37 | Residence | 1975 | 1,478 | 13,500.53 | 7,656.48 |
| 18 | 33599 E PM 1625 Dr | Pauls Valley | West (Other) | 7/23/2014 | 110,000 | 10.00 | Residence | 1990 | 1,826 | 11,000.00 | 1,276.00 |
| 15 | 31185 E. County Rd, 1650 | Elmore City | West (Other) | 12/16/2013 | 188,000 | 20.00 | Residence | 2005 | 1,728 | 9,400.00 | 4,818.29 |
| 5 | 28323 Indian Meridian Rd | Wynnewood | West | 8/6/2014 | 205,000 | 26.80 | Residence | 1796 | 1,796 | 7,649.25 | 4,001.65 |
| 17 | S27, T02N, R01W | Wynnewood | West | 8/26/2014 | 696,000 | 100.00 | | 2011 | | 6,960.00 | 6,960.00 |
| 19 | 16946 N. County Rd 3040 | Lindsay | West (Other) | 4/26/2014 | 40,000 | 7.30 | 8 Barns/Shop/Sheds | | 6,960 | 5,479.45 | 5,479.45 |
| 8 | 32907 E. County Road 1650 | Wynnewood | West | 3/6/2012 | 70,000 | 13.00 | Residence | 1990 | 1,104 | 5,384.62 | 883.81 |
| 16 | 32638 E. County Rd, 1650 | Wynnewood | West | 1/14/2014 | 175,000 | 33.35 | Residence | 2003 | 1,690 | 5,247.38 | 2,385.74 |
| 7 | S02, T01N, R01E | Wynnewood | East | 10/30/2012 | 82,500 | 19.53 | | | | 4,224.27 | 4,224.27 |
| 9 | 02565 Wynnewood | Wynnewood | West | 11/1/2013 | 30,000 | 10.00 | Residence | 1999 | 936 | 3,000.00 | (2,864.00) |
| 2 | S21, T02N, R01E | Wynnewood | East | 5/16/2014 | 25,000 | 9.87 | | | | 2,532.93 | 2,532.93 |
| 1 | 02220 Wynnewood | Wynnewood | West | 4/12/2012 | 95,500 | 40.00 | Residence | 1940 | 1,312 | 2,387.50 | 797.33 |
| 20 | 00114 Wynnewood | Wynnewood | East | 9/19/2012 | 100,000 | 43.00 | Barn | | 900 | 2,325.58 | 2,325.58 |
| 11 | 02124 Norman | Wynnewood | West | 1/19/2012 | 91,500 | 40.00 | 2 Storage Sheds | | 1,152 | 2,287.50 | 2,287.50 |
| 10 | S03, T02N, R02E | Wynnewood | East | 7/26/2013 | 22,500 | 15.00 | | | | 1,500.00 | 1,500.00 |
| 12 | 02571 Wynnewood | Wynnewood | West | 7/28/2014 | 13,000 | 10.00 | 1 Barn/2 Sheds | | 2,280 | 1,300.00 | 1,300.00 |
| 13 | 02571 Wynnewood | Wynnewood | West | 1/25/2014 | 104,000 | 170.00 | 2 Barns/1 Shed | | 2,707 | 611.76 | 611.76 |
| 6 | Not Utilized | | | | | | | | | | |
| | | | | Mean | | 31.43 | | | Mean | 6,146.88 | 3,551.76 |
| | | | | | | | | | High | 16,500.00 | 11,260.00 |
| | | | | | | | | | Low | 611.76 | (2,864.00) |

(1) East or West of I-35

(2) Reduced for estimated value of residential buildings as follows:

2000 and later construction: $60/sq ft

1985-1999 construction: $55/sq ft

Pre-1985 construction $50/sq ft

Residence estimated to contain 2.5 acres

Sorted By: $ Per Acre

Appendix A-2

## Comparable Sales Data

### Properties Sold

Sort: All Properties by Adjusted $ per Acre

| # | Address | Area | Direction (1) | Sale Date | Sale Price | Acres | Structure(s) | Structure(s) Built | Structure Sq Ft | $ Per Acre | Adjusted $ per Acre (2) |
|---|---------|------|---------------|-----------|------------|-------|--------------|--------------------|-----------------|------------|-------------------------|
| 4 | 02033 Wynnewood | Wynnewood | East | 12/13/2013 | 165,000 | 10.00 | Residence | 1970 | 1,611 | 16,500.00 | 11,260.00 |
| 14 | 32083 E. County Rd, 1650 | Wynnewood | West | 7/8/2014 | 155,000 | 10.00 | Residence | 1985 | 1,593 | 15,500.00 | 10,046.67 |
| 3 | 2402 Box 60 | Wynnewood | West | 9/30/2012 | 126,500 | 9.37 | Residence | 1975 | 1,478 | 13,500.53 | 7,656.48 |
| 17 | S27, T02N, R01W | Wynnewood | West | 8/26/2014 | 696,000 | 100.00 | | | | 6,960.00 | 6,960.00 |
| 19 | 16946 N. County Rd 3040 | Lindsay | West (Other) | 4/26/2014 | 40,000 | 7.30 | 8 Barns/Shop/Sheds | | 6,960 | 5,479.45 | 5,479.45 |
| 15 | 31185 E. County Rd, 1650 | Elmore City | West (Other) | 12/16/2013 | 188,000 | 20.00 | Residence | 2005 | 1,728 | 9,400.00 | 4,818.29 |
| 7 | S02, T01N, R01E | Wynnewood | East | 10/30/2012 | 82,600 | 19.53 | | | | 4,224.27 | 4,224.27 |
| 5 | 28323 Indian Meridian Rd | Wynnewood | West | 8/8/2014 | 205,000 | 26.80 | Residence | 2011 | 1,796 | 7,649.25 | 4,001.65 |
| 2 | S21, T02N, R01E | Wynnewood | East | 5/16/2014 | 25,000 | 9.87 | | | | 2,532.93 | 2,532.93 |
| 16 | 32638 E. County Rd, 1650 | Wynnewood | West | 1/14/2014 | 175,000 | 33.35 | Residence | 2003 | 1,690 | 5,247.38 | 2,385.74 |
| 20 | 00114 Wynnewood | Wynnewood | East | 9/19/2012 | 100,000 | 43.00 | Barn | | 900 | 2,325.58 | 2,325.56 |
| 11 | 02124 Norman | Wynnewood | West | 1/19/2012 | 91,500 | 40.00 | 2 Storage Sheds | | 1,152 | 2,287.50 | 2,287.50 |
| 10 | S03, T02N, R02E | Wynnewood | East | 7/26/2013 | 22,500 | 15.00 | | | | 1,500.00 | 1,500.00 |
| 12 | 02571 Wynnewood | Wynnewood | West | 7/28/2014 | 13,000 | 10.00 | 1 Barn/2 Sheds | | 2,280 | 1,300.00 | 1,300.00 |
| 18 | 33599 E Pvt 1625 Dr | Pauls Valley | West (Other) | 7/23/2014 | 110,000 | 10.00 | Residence | 1990 | 1,826 | 11,000.00 | 1,276.00 |
| 8 | 32907 E. County Road 1650 | Wynnewood | West | 3/6/2012 | 70,000 | 13.00 | Residence | 1990 | 1,104 | 5,384.62 | 883.81 |
| 1 | 02220 Wynnewood | Wynnewood | West | 4/12/2012 | 95,500 | 40.00 | Residence | 1940 | 1,312 | 2,387.50 | 797.33 |
| 13 | 02671 Wynnewood | Wynnewood | West | 1/25/2014 | 104,000 | 170.00 | 2 Barns/1 Shed | | 2,707 | 611.76 | 611.76 |
| 9 | 02565 Wynnewood | Wynnewood | West | 11/1/2013 | 30,000 | 10.00 | Residence | 1999 | 936 | 3,000.00 | (2,864.00) |
| 6 | Not Utilized | | | | | | | | | | |
| | | | | | | Mean 31.43 | | | Mean | 6,146.88 | 3,551.76 |
| | | | | | | | | | High | 16,500.00 | 11,260.00 |
| | | | | | | | | | Low | 611.76 | (2,864.00) |

(1) East or West of I-35
(2) Reduced for estimated value of residential buildings as follows:
2000 and later construction: $60/sq ft
1985-1999 construction: $55/sq ft
Pre-1985 construction $50/sq ft
Residence estimated to contain 2.5 acres

Sorted By: Adjusted $ Per Acre
Appendix A-3

### Present Value of Lease Payments
### Beginning of Year

| Year | Annual Lease Payments | 7.50% | | | 8.00% | | | 8.50% | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | Discount Factor | Present Value | Cumulative | Discount Factor | Present Value | Cumulative | Discount Factor | Present Value | Cumulative |
| 1 | 5,000 | 1.0000 | 5,000 | 5,000 | 1.0000 | 5,000 | 5,000 | 1.0000 | 5,000 | 5,000 |
| 2 | 5,000 | 0.9302 | 4,651 | 9,651 | 0.9259 | 4,630 | 9,630 | 0.9217 | 4,608 | 9,608 |
| 3 | 5,000 | 0.8653 | 4,327 | 13,978 | 0.8573 | 4,287 | 13,916 | 0.8495 | 4,247 | 13,856 |
| 4 | 5,000 | 0.8050 | 4,025 | 18,003 | 0.7938 | 3,969 | 17,885 | 0.7829 | 3,915 | 17,770 |
| 5 | 5,000 | 0.7488 | 3,744 | 21,747 | 0.7350 | 3,675 | 21,561 | 0.7216 | 3,608 | 21,378 |
| 6 | 5,000 | 0.6966 | 3,483 | 25,229 | 0.6806 | 3,403 | 24,964 | 0.6650 | 3,325 | 24,703 |
| 7 | 5,000 | 0.6480 | 3,240 | 28,469 | 0.6302 | 3,151 | 28,114 | 0.6129 | 3,065 | 27,768 |
| 8 | 5,000 | 0.6028 | 3,014 | 31,483 | 0.5835 | 2,917 | 31,032 | 0.5649 | 2,825 | 30,593 |
| 9 | 5,000 | 0.5607 | 2,804 | 34,287 | 0.5403 | 2,701 | 33,733 | 0.5207 | 2,603 | 33,196 |
| 10 | 5,000 | 0.5216 | 2,608 | 36,894 | 0.5002 | 2,501 | 36,234 | 0.4799 | 2,399 | 35,595 |
| 11 | 5,000 | 0.4852 | 2,426 | 39,320 | 0.4632 | 2,316 | 38,550 | 0.4423 | 2,211 | 37,807 |
| 12 | 5,000 | 0.4513 | 2,257 | 41,577 | 0.4289 | 2,144 | 40,695 | 0.4076 | 2,038 | 39,845 |
| 13 | 5,000 | 0.4199 | 2,089 | 43,676 | 0.3971 | 1,986 | 42,680 | 0.3757 | 1,879 | 41,723 |
| 14 | 5,000 | 0.3906 | 1,953 | 45,629 | 0.3677 | 1,838 | 44,519 | 0.3463 | 1,731 | 43,455 |
| 15 | 5,000 | 0.3633 | 1,817 | 47,446 | 0.3405 | 1,702 | 46,221 | 0.3191 | 1,596 | 45,050 |
| 16 | 5,000 | 0.3380 | 1,690 | 49,136 | 0.3152 | 1,576 | 47,797 | 0.2941 | 1,471 | 46,521 |
| 17 | 5,000 | 0.3144 | 1,572 | 50,708 | 0.2919 | 1,459 | 49,257 | 0.2711 | 1,355 | 47,877 |
| 18 | 5,000 | 0.2925 | 1,462 | 52,170 | 0.2703 | 1,351 | 50,608 | 0.2499 | 1,249 | 49,126 |
| 19 | 5,000 | 0.2720 | 1,360 | 53,530 | 0.2502 | 1,251 | 51,859 | 0.2303 | 1,151 | 50,277 |
| 20 | 5,000 | 0.2531 | 1,265 | 54,795 | 0.2317 | 1,159 | 53,018 | 0.2122 | 1,061 | 51,339 |
| 21 | 5,000 | 0.2354 | 1,177 | 55,972 | 0.2145 | 1,073 | 54,091 | 0.1956 | 978 | 52,317 |
| 22 | 5,000 | 0.2190 | 1,095 | 57,067 | 0.1987 | 993 | 55,084 | 0.1803 | 901 | 53,218 |
| 23 | 5,000 | 0.2037 | 1,019 | 58,086 | 0.1839 | 920 | 56,004 | 0.1662 | 831 | 54,049 |
| 24 | 5,000 | 0.1895 | 947 | 59,033 | 0.1703 | 852 | 56,855 | 0.1531 | 766 | 54,815 |
| 25 | 5,000 | 0.1763 | 881 | 59,915 | 0.1577 | 788 | 57,644 | 0.1412 | 706 | 55,520 |
| 26 | 5,000 | 0.1640 | 820 | 60,735 | 0.1460 | 730 | 58,374 | 0.1301 | 650 | 56,171 |
| 27 | 5,000 | 0.1525 | 763 | 61,497 | 0.1352 | 676 | 59,050 | 0.1199 | 600 | 56,770 |
| 28 | 5,000 | 0.1419 | 709 | 62,207 | 0.1252 | 626 | 59,676 | 0.1105 | 553 | 57,323 |
| 29 | 5,000 | 0.1320 | 660 | 62,867 | 0.1159 | 580 | 60,255 | 0.1019 | 509 | 57,832 |
| 30 | 5,000 | 0.1228 | 614 | 63,481 | 0.1073 | 537 | 60,792 | 0.0939 | 469 | 58,302 |
| 31 | 5,000 | 0.1142 | 571 | 64,052 | 0.0994 | 497 | 61,289 | 0.0865 | 433 | 58,734 |
| 32 | 5,000 | 0.1063 | 531 | 64,583 | 0.0920 | 460 | 61,749 | 0.0797 | 399 | 59,133 |

Appendix B

Page 1 of 3

### Present Value of Lease Payments
### Beginning of Year

| | | 7.50% | | | 8.00% | | | 8.50% | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Year | Annual Lease Payments | Discount Factor | Present Value | Cumulative | Discount Factor | Present Value | Cumulative | Discount Factor | Present Value | Cumulative |
| 33 | 5,000 | 0.0988 | 494 | 65,077 | 0.0852 | 426 | 62,175 | 0.0735 | 367 | 59,500 |
| 34 | 5,000 | 0.0919 | 460 | 65,537 | 0.0789 | 394 | 62,569 | 0.0677 | 339 | 59,839 |
| 35 | 5,000 | 0.0855 | 428 | 65,965 | 0.0730 | 365 | 62,935 | 0.0624 | 312 | 60,151 |
| 36 | 5,000 | 0.0796 | 398 | 66,363 | 0.0676 | 338 | 63,273 | 0.0575 | 288 | 60,439 |
| 37 | 5,000 | 0.0740 | 370 | 66,733 | 0.0626 | 313 | 63,586 | 0.0530 | 265 | 60,704 |
| 38 | 5,000 | 0.0688 | 344 | 67,077 | 0.0580 | 290 | 63,876 | 0.0489 | 244 | 60,948 |
| 39 | 5,000 | 0.0640 | 320 | 67,397 | 0.0537 | 268 | 64,144 | 0.0450 | 225 | 61,174 |
| 40 | 5,000 | 0.0596 | 298 | 67,695 | 0.0497 | 249 | 64,393 | 0.0415 | 208 | 61,381 |
| 41 | 5,000 | 0.0554 | 277 | 67,972 | 0.0460 | 230 | 64,623 | 0.0383 | 191 | 61,573 |
| 42 | 5,000 | 0.0516 | 258 | 68,230 | 0.0426 | 213 | 64,836 | 0.0353 | 176 | 61,749 |
| 43 | 5,000 | 0.0480 | 240 | 68,470 | 0.0395 | 197 | 65,033 | 0.0325 | 163 | 61,911 |
| 44 | 5,000 | 0.0446 | 223 | 68,693 | 0.0365 | 183 | 65,216 | 0.0300 | 150 | 62,061 |
| 45 | 5,000 | 0.0415 | 207 | 68,900 | 0.0338 | 169 | 65,385 | 0.0276 | 138 | 62,199 |
| 46 | 5,000 | 0.0386 | 193 | 69,093 | 0.0313 | 157 | 65,542 | 0.0254 | 127 | 62,327 |
| 47 | 5,000 | 0.0359 | 180 | 69,273 | 0.0290 | 145 | 65,687 | 0.0235 | 117 | 62,444 |
| 48 | 5,000 | 0.0334 | 167 | 69,440 | 0.0269 | 134 | 65,821 | 0.0216 | 108 | 62,552 |
| 49 | 5,000 | 0.0311 | 155 | 69,595 | 0.0249 | 124 | 65,946 | 0.0199 | 100 | 62,652 |
| 50 | 5,000 | 0.0289 | 145 | 69,740 | 0.0230 | 115 | 66,061 | 0.0184 | 92 | 62,743 |
| 51 | 5,000 | 0.0269 | 134 | 69,874 | 0.0213 | 107 | 66,167 | 0.0169 | 85 | 62,828 |
| 52 | 5,000 | 0.0250 | 125 | 69,999 | 0.0197 | 99 | 66,266 | 0.0156 | 78 | 62,906 |
| 53 | 5,000 | 0.0233 | 116 | 70,115 | 0.0183 | 91 | 66,358 | 0.0144 | 72 | 62,978 |
| 54 | 5,000 | 0.0216 | 108 | 70,224 | 0.0169 | 85 | 66,442 | 0.0133 | 66 | 63,044 |
| 55 | 5,000 | 0.0201 | 101 | 70,324 | 0.0157 | 78 | 66,521 | 0.0122 | 61 | 63,105 |
| 56 | 5,000 | 0.0187 | 94 | 70,418 | 0.0145 | 73 | 66,593 | 0.0113 | 56 | 63,161 |
| 57 | 5,000 | 0.0174 | 87 | 70,505 | 0.0134 | 67 | 66,660 | 0.0104 | 52 | 63,213 |
| 58 | 5,000 | 0.0162 | 81 | 70,586 | 0.0124 | 62 | 66,722 | 0.0096 | 48 | 63,261 |
| 59 | 5,000 | 0.0151 | 75 | 70,662 | 0.0115 | 58 | 66,780 | 0.0088 | 44 | 63,305 |
| 60 | 5,000 | 0.0140 | 70 | 70,732 | 0.0107 | 53 | 66,833 | 0.0081 | 41 | 63,346 |
| 61 | 5,000 | 0.0130 | 65 | 70,797 | 0.0099 | 49 | 66,883 | 0.0075 | 37 | 63,383 |
| 62 | 5,000 | 0.0121 | 61 | 70,858 | 0.0091 | 46 | 66,928 | 0.0069 | 34 | 63,418 |
| 63 | 5,000 | 0.0113 | 56 | 70,914 | 0.0085 | 42 | 66,971 | 0.0064 | 32 | 63,449 |
| 64 | 5,000 | 0.0105 | 53 | 70,967 | 0.0078 | 39 | 67,010 | 0.0059 | 29 | 63,479 |

Appendix B

Page 2 of 3

**Present Value of Lease Payments**
**Beginning of Year**

| Year | Annual Lease Payments | 7.50% | | | 8.00% | | | 8.50% | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | Discount Factor | Present Value | Cumulative | Discount Factor | Present Value | Cumulative | Discount Factor | Present Value | Cumulative |
| 65 | 5,000 | 0.0098 | 49 | 71,015 | 0.0073 | 36 | 67,046 | 0.0054 | 27 | 63,506 |
| 66 | 5,000 | 0.0091 | 45 | 71,061 | 0.0067 | 34 | 67,080 | 0.0050 | 25 | 63,531 |
| 67 | 5,000 | 0.0085 | 42 | 71,103 | 0.0062 | 31 | 67,111 | 0.0046 | 23 | 63,554 |
| 68 | 5,000 | 0.0079 | 39 | 71,142 | 0.0058 | 29 | 67,140 | 0.0042 | 21 | 63,575 |
| 69 | 5,000 | 0.0073 | 37 | 71,179 | 0.0053 | 27 | 67,167 | 0.0039 | 19 | 63,594 |
| 70 | 5,000 | 0.0068 | 34 | 71,213 | 0.0049 | 25 | 67,191 | 0.0036 | 18 | 63,612 |
| 71 | 5,000 | 0.0063 | 32 | 71,245 | 0.0046 | 23 | 67,214 | 0.0033 | 17 | 63,629 |
| 72 | 5,000 | 0.0059 | 29 | 71,274 | 0.0042 | 21 | 67,235 | 0.0031 | 15 | 63,644 |
| 73 | 5,000 | 0.0055 | 27 | 71,301 | 0.0039 | 20 | 67,255 | 0.0028 | 14 | 63,658 |
| 74 | 5,000 | 0.0051 | 25 | 71,327 | 0.0036 | 18 | 67,273 | 0.0026 | 13 | 63,671 |
| 75 | 5,000 | 0.0047 | 24 | 71,351 | 0.0034 | 17 | 67,290 | 0.0024 | 12 | 63,683 |
| 76 | 5,000 | 0.0044 | 22 | 71,373 | 0.0031 | 16 | 67,305 | 0.0022 | 11 | 63,694 |
| 77 | 5,000 | 0.0041 | 21 | 71,393 | 0.0029 | 14 | 67,320 | 0.0020 | 10 | 63,704 |
| 78 | 5,000 | 0.0038 | 19 | 71,412 | 0.0027 | 13 | 67,333 | 0.0019 | 9 | 63,714 |
| 79 | 5,000 | 0.0035 | 18 | 71,430 | 0.0025 | 12 | 67,346 | 0.0017 | 9 | 63,722 |
| 80 | 5,000 | 0.0033 | 17 | 71,447 | 0.0023 | 11 | 67,357 | 0.0016 | 8 | 63,730 |
| 81 | 5,000 | 0.0031 | 15 | 71,462 | 0.0021 | 11 | 67,368 | 0.0015 | 7 | 63,737 |
| 82 | 5,000 | 0.0029 | 14 | 71,476 | 0.0020 | 10 | 67,377 | 0.0013 | 7 | 63,744 |
| 83 | 5,000 | 0.0027 | 13 | 71,489 | 0.0018 | 9 | 67,386 | 0.0012 | 6 | 63,750 |
| 84 | 5,000 | 0.0025 | 12 | 71,502 | 0.0017 | 8 | 67,395 | 0.0011 | 6 | 63,756 |
| 85 | 5,000 | 0.0023 | 11 | 71,513 | 0.0016 | 8 | 67,403 | 0.0011 | 5 | 63,761 |
| | 425,000 | | 71,513 | | | 67,403 | | | 63,761 | |

|  | Value Per Acre (16.439 Acres) | | 4,350 | | | 4,100 | | | 3,878 | |

Appendix B

Page 3 of 3

PHOTOGRAPHS







Appendix C







Appendix C

Business Valuators & Appraisers L.L.C.







Appendix C







Appendix C

Business Valuators & Appraisers L.L.C.



February 21, 2013

### LAND PROPERTY LEASE

STATE OF __ OKLAHOMA _____

COUNTY OF ___ GARVIN _____


KNOW ALL MEN BY THESE PRESENTS THAT, _ Shirley Schreibvogel _, (herein known as LESSOR) does hereby lease and let unto _ The Garold Wayne Interactive Zoological Foundation _, (herein known as LESSEE) for general agricultural purposes, approximately _ Sixteen _ (16) acres of pasture land located on _ N. County Road 3250 _ in _ Garvin _ County, __ Oklahoma ___ owned by LESSOR.  In consideration of which LESSEE hereby covenants with LESSOR to pay LESSOR  $_ 5.0000 _.oo per year commencing _ February 25, 2013.   The term of this lease shall begin on the date hereof and shall expire on _ February 25, 2098 with the agreement the park on our land can never be sold or mortgaged.

LESSOR and LESSEE agree that the land is to be used for an animal park open to the public and will contain the name in memory of LESSOR's son, Garold Wayne.

In the event of the dissolution of corporation for any reason, LESSEE agrees park must be restored to original state of date of this Agreement or LESSOR or persons willed property by LESSOR assumes all property, equipment and materials to keep or sell.

LESSEE shall have exclusive use of all equipment, buildings, cages, and materials located on the leased property during the term hereof.

The Garold Wayne Interactive Zoological Foundation is also required to pay the electricity bill and water each month as utility companies REC and Rural Water will only allow landowners to hold accounts on said property.


Received Time Aug. 6.  9:31AM

Appendix D

WITNESS our respective signatures, on this the 22nd day of February 20 13 .

*Shirley Schreibvogel*
Shirley Schreibvogel , LESSOR

*John Finlay*
John Finlay , LESSEE

Witnessed by:

Date: 2/22/2013

Bobbi Corona

(Page 2 of Document: LAND PROPERTY LEASE between Shirley Schreibvogel and The Garold Wayne Interactive Zoological Association)

Received Time Aug. 6. 9:31AM

Appendix D