**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| (1) BIG CAT RESCUE CORP., a Florida not-for-profit corporation, ) ) ) | |
| Plaintiff, ) ) | |
| v. ) ) | Case No. CIV-2016-0155-SLP |
| (1) SHIRLEY M. SCHREIBVOGEL, an individual, and (2) GREATER WYNNEWOOD DEVELOPMENT GROUP, LLC, ) ) ) ) ) ) | |
| Defendants. ) | |

**DEFENDANT SHIRLEY M. SCHREIBVOGEL'S**
**MOTION FOR SUMMARY JUDGMENT**

Respectfully submitted,

s/Melanie K. Christians
Justin D. Meek, OBA #21294
Melanie K. Christians, OBA #30846
Andre V. Farinha, OBA #32910
DeWITT PARUOLO MEEK, PLLC
P.O. Box 138800
Oklahoma City, OK  73113
Telephone: (405) 705-3600
Facsimile:  (405) 705-2573
jmeek@ntmdlaw.com
mchristians@ntmdlaw.com
afarinha@ntmdlaw.com
*Attorneys for Defendants*

June 1, 2018

# TABLE OF CONTENTS

SUMMARY OF THE CASE ........................................................................................ 1

STATEMENT OF UNDISPUTED FACTS.................................................................. 3

    General Background................................................................................................ 3

    Zoo Land Ownership............................................................................................. 7

    Zoo Land Leases ................................................................................................... 8

    Vehicles and Portable Buildings Titled and/or Held in Shirley's Name ........ 10

    Cash and/or Third Party Checks to Shirley........................................................ 12

    Tangible Assets .................................................................................................. 14

ARGUMENT AND AUTHORITY ............................................................................ 14

    PROPOSITION I: THE DOCTRINE OF RES JUDICATA BARS PLAINTIFF'S
    COLLATERAL ATTACK ON THE BANKRUPTCY COURT JUDGMENT
    RELATING TO THE ZOO LAND ................................................................... 16

    PROPOSITION II: PLAINTIFF'S FRAUDULENT TRANSFER CLAIMS .................
    AGAINST SHIRLEY FAIL AS A MATTER OF LAW…………............................ 16

        A. Zoo Land Leases ........................................................................................ 16

           i.  2013 and 2015 Leases (First Amended Complaint, ¶ 24(a) and (b))................ 16

          ii. 2016 Lease (First Amended Complaint, ¶ 24(c)) ............................................... 18

        B. Vehicles and Portable Buildings (First Amended Complaint, ¶ 24(f) ................ 18

        C. Cash and/or Third Party Checks to Shirley (First Amended Complaint, ¶ 24(d) and
        (e))............................................................................................................................. 19

        D. Tangible Assets (First Amended Complaint, ¶ 24(g))............................................ 20

CONCLUSION ............................................................................................................ 20

## TABLE OF AUTHORITIES

**Cases**

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ...................................................... 15

*Burrows v. Burrows*, 886 P.2d 984 (Okla. 1994) ............................................................. 16

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ................................................................ 15

*Jenks v. Hill*, 504 F. Supp. 1130 (W.D. Okla. 1981) ........................................................ 14

*Mesa Petroleum Co. v. Cities Serv. Co.*, 1982 WL 1377 (W.D. Okla. 1982) .................. 15

*Palermo v. First Nat'l Bank & Trust Co.*, 894 F.2d 363 (10th Cir. 1990) ........................ 15

*Sec. Nat'l Bank v. Belleville Livestock Comm'n Co., Inc.*, 619 F.2d 840 (10th Cir. 1979)
.............................................................................................................................. 14

**Statutes**

24 O.S. § 112 et seq ......................................................................................................... 16

24 O.S. § 113 .............................................................................................................. 18, 19

24 O.S. § 117 ........................................................................................................ 16, 17, 19

24 O.S. § 113 ..................................................................................................................... 17

24 O.S. § 118 .............................................................................................................. 18, 19

**Rules**

Fed. R. Civ. P. 56 ......................................................................................................... 14, 15

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| (1) BIG CAT RESCUE CORP., a Florida<br>not-for-profit corporation, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-2016-0155-SLP |
| | ) | |
| (1) SHIRLEY M. SCHREIBVOGEL,<br>an individual, and<br>(2) GREATER WYNNEWOOD<br>DEVELOPMENT GROUP, LLC, | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANT SHIRLEY M. SCHREIBVOGEL'S
## MOTION FOR SUMMARY JUDGMENT

Defendant Shirley M. Schreibvogel ("Shirley"), pursuant to Federal Rule of Civil Procedure 56, respectfully requests the Court grant judgment in favor of Shirley as there is no genuine dispute as to any material fact and Shirley is entitled to judgment as a matter of law. In support of her Motion, Shirley provides the following Brief.

## SUMMARY OF THE CASE

This case stems from a long history of litigation which has plagued the prior owners of a zoo in Wynnewood, Oklahoma for years. The zoo was originally opened in 1999 as a not-for-profit corporation and was operated on approximately 16 acres of land purchased by Shirley and her husband Francis. Shirley was actively involved in the original zoo and over the years contributed hundreds of thousands of dollars to keep the zoo afloat so it could care for the approximately 400 exotic wild animals, including tigers, lions, bears, and monkeys, that called the zoo home. Defendant GWDG, of which Shirley

is 50% member, currently owns the Zoo Land and non-party Greater Wynnewood Exotic Animal Park, LLC ("GWEAP"), through its sole member Jeff Lowe, operates the zoo.

The protracted litigation began with lawsuits (wholly unrelated to Defendants herein) filed by Plaintiff in the United States District Court for the Middle District of Florida, Tampa Division against Big Cat Rescue Entertainment Corp, Inc., G.W. Exotic Animal Memorial Foundation ("GW Zoo", the original owner of the zoo) and Joseph Maldonado-Passage f/k/a Joseph Maldonado f/k/a Joseph Schreibvogel a/k/a "Joe Exotic" ("Maldonado", Shirley's son), which resulted in civil consent judgments entered against these parties in in the amount of $1,028,000.00. Thereafter, Maldonado and GW Zoo filed for bankruptcy in the United States Bankruptcy Court for the Western District of Oklahoma.

In 2014, Plaintiff filed a fraudulent transfer action against GW Zoo, The Garold Wayne Interactive Zoological Foundation ("Garold Wayne Zoo", the new owner of the zoo), and other defendants in the United States District Court for the Western District of Oklahoma. In February 2016, Plaintiff obtained an agreed judgment against Garold Wayne Zoo, found to be successor to GW Zoo, in the amount of $1,028,000.00. After the entry of this agreed judgment, Garold Wayne Zoo became unable to carry out its day-to-day operations of running its zoo and caring for its animals due to the financial strain of litigation and the resulting judgment. As such, Garold Wayne Zoo ceased operations and dissolved.

The zoo then obtained new ownership in Jeff Lowe, a businessman from South Carolina who had recently become acquainted with Maldonado and Garold Wayne Zoo.

2

Jeff Lowe created GWGD (owned 50% by Lowe and Shirley, respectively) to own the Zoo Land and GWEAP (owned 100% by Lowe) to operate the zoo.

Because Plaintiff has been unable or unwilling to collect its judgment from GW Zoo, Garold Wayne Zoo and Maldonado, Plaintiff is now using its abundant resources to harass an 85-year-old woman who is not indebted or liable to Plaintiff, and coerce her to surrender property or pay money towards debts she does not owe. As demonstrated herein, Plaintiff's fraudulent transfer claims are too attenuated to establish liability. Because Plaintiff cannot make out a prima facie case against Shirley under the Oklahoma Uniform Fraudulent Transfer Act, Plaintiff's claims must fail.

## STATEMENT OF UNDISPUTED FACTS

### General Background

1.      In February 2013, Plaintiff obtained civil consent judgments totaling $1,028,000.00 against Big Cat Rescue Entertainment Group, Inc., G.W. Exotic Animal Memorial Foundation (hereinafter "GW Zoo"), Joseph Maldonado-Passage f/k/a Joseph Maldonado f/k/a Joseph Schreibvogel a/k/a "Joe Exotic" (hereinafter "Maldonado") in three separate actions in the United States District Court for the Middle District of Florida based on trademark infringement, false designation of origin, unfair competition, misrepresentation, and copyright infringement (the "Florida Judgments"). (Consent Final Judgment and Permanent Injunction, Case No. CIV-11-00209-MSS-MAP, Ex. 1) (Consent Final Judgment and Permanent Injunction, Case No. CIV-12-02381-JSM-MAP, Ex. 2) (Consent Final Judgment and Permanent Injunction, CIV-11-02014-JDW-TBM, Ex. 3).

2.      On February 25, 2013, after entry of the Florida Judgments, GW Zoo

3

dissolved and Garold Wayne Interactive Zoological Foundation ("Garold Wayne Zoo"), an entity purportedly formed by one of the members of GW Zoo's Board of Directors, took over operations of the zoo. (Board of Directors' Resolution Advising Dissolution and Calling Shareholders' Meeting, Ex. 4) (Certificate of Dissolution, Ex. 5) (Memorandum Opinion and Order, Ex. 6).

3.      On March 29, 2013, GW Zoo and Maldonado filed Chapter 7 Bankruptcy in the United States Bankruptcy Court for the Western District of Oklahoma. (Joseph Allen Schreibvogel Voluntary Petition, Ex. 7) (G.W. Exotic Animal Foundation Voluntary Petition, Ex. 8).  Plaintiff moved to dismiss the bankruptcy of GW Zoo, which the Bankruptcy Court deemed confessed due to GW Zoo's failure to respond, and the Bankruptcy Court dismissed the bankruptcy proceedings of GW Zoo on December 11, 2013. (Order Granting Big Cat Rescue Corp.'s Motion to Dismiss, Ex. 9). However, the individual bankruptcy of Maldonado continued to final distribution. (Chapter 7 Trustee's Final Account and Distribution Report, Ex. 10).

4.      In February and March 2013, Plaintiff domesticated the Florida Judgments in Oklahoma (See Case Nos. FJ-13-00001-F, FJ-13-00002-F, FJ-13-00003-F).

5.      On April 15, 2014, Plaintiff filed a successor-liability and fraudulent transfer action in the United States District Court for the Western District of Oklahoma against GW Zoo, Garold Wayne Zoo and the members of GW Zoo's Board of Directors, John Reinke, John Finlay, Bobbi Lynn Corona, Satrina Gayle McNally and Benjamin McNally, asserting GW Zoo fraudulently transferred its assets to Garold Wayne Zoo to avoid the Florida Judgments (hereinafter "*Big Cat I*") (*Big Cat I* Complaint, Ex. 11).

4

6.     On July 28, 2015, Plaintiff amended its Complaint in *Big Cat I* to add Shirley Schreibvogel ("Shirley"), Maldonado's mother, as a party Defendant. (*Big Cat I* First Amended Complaint, Ex. 12).

7.     On January 25, 2016, Plaintiff dismissed its claims against Shirley in *Big Cat I* without prejudice. (Stipulation for Dismissal without Prejudice, Ex. 13).

8.     On February 1, 2016, the Court entered an Agreed Judgment and Permanent Injunction against Defendants GW Zoo and Garold Wayne Zoo in *Big Cat I*. (Agreed Judgment and Injunction, Ex. 14).  Therein, Garold Wayne Zoo was held to be successively liable to Plaintiff for the Florida Judgments entered against GW Zoo, and judgment was entered against Garold Wayne Zoo for $1,028,000.00 (Memorandum Opinion and Order, Ex. 6) (Judgment, Ex. 15).  In addition, the injunction prohibited GW Zoo and Garold Wayne Zoo from transferring, liquidating, encumbering or otherwise disposing of any and all tangible and/or intangible assets, but it did not prevent a cessation of operations (Agreed Judgment and Injunction, Ex. 14).

9.     After the entry of this Agreed Judgment and Permanent Injunction in February 2016, Garold Wayne Zoo became unable to carry out its day-to-day operations of running its zoo and caring for its animals due to the financial strain of litigation and the resulting judgment in *Big Cat I*. (Affidavit of Joseph Schreibvogel "Maldonado", Ex. 16, ¶¶ 3-5) (Deposition of Garold Wayne Corporate Rep, Ex. 17, pp. 48:16-49:13).  As such, Garold Wayne Zoo began the dissolution process on or about February 5, 2016, ceased operations on or about February 11, 2016, and filed a certificate of dissolution on February 18, 2016. *Id.* at ¶ 8 (Affidavit of Joseph Maldonado, Ex. 18, ¶ 5) (Certificate of Dissolution,

5

Ex. 19).

10.     On or about February 15, 2016, Jeff Lowe (hereinafter "Lowe") opened his own zoo in Wynnewood, Oklahoma, called Greater Wynnewood Exotic Animal Park, LLC (hereinafter "GWEAP"). (Affidavit of Lowe, Ex. 20, ¶¶ 1, 8). Lowe formed GWEAP on February 8, 2016 and holds 100% membership interest in this entity. (GWEAP Certificate of Limited Liability Company, Ex. 21) (GWEAP Limited Liability Company Agreement, Ex. 22, ¶ III(A)).

11.     Lowe is not related to Maldonado and was never an owner, officer, director, manager, member or employee of GW Zoo or Garold Wayne Zoo. (Affidavit of Lowe, Ex. 20, ¶ 2). Lowe first became acquainted with Maldonado and the Garold Wayne Zoo in the summer of 2015. (Deposition of Lowe, Ex. 23, pp. 62:1-64:8) (Deposition of Garold Wayne Corporate Rep, Ex. 17, p. 112:1-14).

12.     On February 18, 2016, Plaintiff filed the instant fraudulent transfer action against Shirley (hereinafter "*Big Cat II*") (*Big Cat II* Complaint, Ex. 24). Therein, Plaintiff alleges the following transfers to Shirley constitute fraudulent transfers under the Oklahoma Uniform Fraudulent Transfer Act ("UFTA"), 24 O.S. §§ 112 *et seq*.: (1) title to the Zoo Land obtained from the bankruptcy estate; (2) vehicles and portable buildings titled and/or held in Shirley's name used by Garold Wayne Zoo; (3) the 2013 and 2015 Land Leases between Shirley and Garold Wayne Zoo and payments made thereunder; (4) cash and/or third-party checks of Garold Wayne Zoo; and (5) tangible assets of Garold Wayne Zoo. *See id.* at ¶¶ 21(a)-(f), 42, 47-50.

13.     On August 22, 2016, Plaintiff amended its Complaint in *Big Cat II* to add

6

Greater Wynnewood Development Group, LLC (hereinafter "GWDG"), the current owner

of the land on which GWEAP operates, as a party Defendant. (*Big Cat II* First Amended

Complaint, Ex. 25). Shirley and Lowe formed GWDG on February 8, 2016 and each hold

a 50% membership interest in this entity. (GWDG Certificate of Limited Liability

Company, Ex. 26) (GWDG Limited Liability Company Agreement, Ex. 27).

14.     In addition to the individual claims against Shirley, Plaintiff alleges the

following transfers to GWDG constitute fraudulent transfers under the UFTA: (1) title to

the Zoo Land obtained from Shirley and Lowe; and (2) the 2016 Lease between GWDG

and GWEAP. (*Big Cat II* First Amended Complaint, Ex. 25, ¶¶ 20, 24(c), 46).

### Zoo Land Ownership

15.     In 1998 or 1999, Francis and Shirley Schreibvogel, husband and wife,

purchase approximately 16.49 acres of land in Wynnewood, Oklahoma (hereinafter the

"Zoo Land") and opened GW Zoo (Deposition of Shirley Schreibvogel, Ex. 28, pp. 14:24-

15:2; 18:12-17) (*Big Cat II* First Amended Complaint, Ex. 25, ¶ 8).

16.     On February 12, 2010, Francis and Shirley Schreibvogel deeded the Zoo

Land to Maldonado via Quitclaim Deed. (2010 Quitclaim Deed, Ex. 29).

17.     On February 1, 2011, Maldonado deeded the Zoo Land to Shirley via

Quitclaim Deed. (2011 Quitclaim Deed, Ex. 30).

18.     On September 9, 2015, Shirley deeded the Zoo Land to herself and Lowe as

joint tenants with the right of survivorship. (2015 Joint Tenancy Quit Claim Deed, Ex. 31).

19.     On February 12, 2016, Shirley and Lowe deeded the Zoo Land to GWDG.

(2016 Quitclaim Deed, Ex. 32).

**Zoo Land Leases**

20.     On July 1, 1999, Francis and Shirley Schreibvogel, as owners of the Zoo Land, enter a lease in the amount of $0.00 with GW Zoo to operate an exotic animal park on the Zoo Land. (Land Property Lease (hereinafter the "July 1999 Lease"), Ex. 33). Pursuant to the July 1999 Lease, GW Zoo was required to pay the electric bill held in Shirley's name. *Id.*

21.     On September 15, 1999, the parties revised the lease. (G.W. Exotic Animal Memorial Foundation Land Lease Agreement (hereinafter the "September 1999 Lease"), Ex. 34).

22.     On November 1, 2010, after Francis and Shirley Schreibvogel deeded the Zoo Land to Maldonado, Maldonado as the land owner entered a lease with GW Zoo for the sum of $1.00 per year. (Contract for Lease of Land (hereinafter the "2010 Lease"), Ex. 35).

23.     On February 2, 2013, after Maldonado deeded the Zoo Land back to Shirley and GW Zoo dissolved, Shirley entered a lease with Garold Wayne Zoo to operate an exotic animal park on the Zoo Land. (Land Property Lease (hereinafter the "2013 Lease"), Ex. 36).  Under the 2013 Lease, Garold Wayne Zoo was to pay yearly rent of $50,000.00 to Shirley as Lessor as well as the electricity and water bills held in her name as land owner. *Id.* (Deposition of Shirley, Ex. 28, pp. 124:7-125:14) (Deposition of Garold Wayne Corporate Rep, Ex. 17, p. 150:2-11).

24.     On May 11, 2015, after Shirley purchased the Zoo Land from the Bankruptcy Trustee, Shirley and Garold Wayne Zoo executed another lease for the yearly rental amount

8

of $38,000.00 and payment of the electricity and water bills held in Shirley's name as land

owner. (Land Property Lease (hereinafter the "2015 Lease"), Ex. 37).

25.    Garold Wayne Zoo had an agreement with Shirley that it would make

payments on the trucks and portable buildings financed by Shirley and used by Garold

Wayne Zoo in order to satisfy the 2013 and 2015 Leases. (*See* Vehicles and Portable

Buildings Titled and/or Held in Shirley's Name, *infra*) (Deposition of Lowe, Ex. 23, pp.

200:3-13; 247:4-20) (Deposition of GWGD Corporate Rep, Ex. 38, pp. 118:21-121:6;

136:10-17) (Deposition of Garold Wayne Zoo Corporate Rep, Ex. 17, pp. 74:21-24; 99:12-

100:24; 133:16-18; 152:8-14; 161:18-162:9).

26.    The only lease payments made by Garold Wayne Zoo to Shirley under the

2013 and 2015 Leases were payments in 2015 totaling $45,100.00, leaving over

$100,000.00 owed to Shirley under the 2013 and 2015 Leases. (Shirley's Second Amended

Responses to Plaintiff's Interrogatories, Ex. 39, Nos. 15, 21, 25) (2013 Lease, Ex. 36)

(2015 Lease, Ex. 37) (Deposition of Garold Wayne Corporate Rep, Ex. 17, pp. 158:7-16;

161:18-21).  This amount is comprised of $15,100.00 in installment payments made in

2015 and $30,000.00 donation check to Garold Wayne Zoo which was endorsed to Shirley

in 2015.  (Garold Wayne Zoo Quickbooks Transactions for Shirley Schreibvogel, January

through December 2015, Ex. 40) (Donation Check, Ex. 41) (Shirley's Responses to

Plaintiff's Requests for Admission, Ex. 42, No. 9).

27.    On February 15, 2016, after Shirley and Lowe transferred the Zoo Land to

GWDG and Garold Wayne Zoo dissolved, GWDG as owner of the Zoo Land entered into

a lease with GWEAP, the new owner of the zoo, to operate an exotic animal park on the

9

Zoo Land. (Land Lease Contract (hereinafter the "2016 Lease"), Ex. 43). Under the 2016 Lease, GWEAP was to pay yearly rent of $50,000.00 to GWDG as Lessor, which could be satisfied by "making payments on buildings, motor vehicles or any other such that may be deducted from the yearly lease." *Id.* at ¶¶ 4, 8.

28.     The September 1999, 2010, 2013, 2015 and 2016 Leases provide that in the event the lessee ceases doing business and the Zoo Land is not restored to its original condition, the equipment, buildings and cages located on the Zoo Land belong to the lessor/land owner.  (September 1999 Lease, Ex. 34) (2010 Lease, Ex. 35) (2013 Lease, Ex. 36) (2015 Lease, Ex. 37) (2016 Lease, Ex. 43) (Shirley's Second Amended Responses to Plaintiff's Interrogatories, Ex. 39, No. 24). Thus, all leases since September 1999 have given the land owner/lessor of the Zoo Land an ownership interest in the fixtures and improvements to or on the Zoo Land. *Id.*  Such an interest is given to the land owner because to revert the Zoo Land back to its original state would cost the land owner a significant amount of money. (Garold Wayne Zoo Corporate Rep, Ex. 17, 151:1-152:7; 162:10-163:11).

### Vehicles and Portable Buildings Titled and/or Held in Shirley's Name

29.     On June 7, 2014, Shirley purchased a new 2014 Ram 3500 from Seth Wadley Auto Group and financed $53,713.01 through JP Morgan Chase Bank NA with monthly payments of $878.03 for 72 months. (2014 Ram 3500 Retail Installment Sale Contract, Ex. 44).

30.     On June 9, 2014, Shirley purchased a used 2012 Ram 3500 from Seth Wadley Ford Lincoln and financed $53,991.00 through TD Auto Finance, LLC with monthly

payments of $884.31 for 72 months. (2012 Ram 3500 Retail Installment Sale Contract, Ex. 45).

33. On March 19, 2015, Shirley purchased a used 2008 GMC Sierra from Seth Wadley Auto Group and financed $42,509.00 through Chrysler Capital with monthly payments of $720.22 for 72 months. (2008 GMC Sierra Retail Installment Sale Contract, Ex. 46).

32. On February 28, 2015, Shirley purchased a new 2014 Ford F150 from Seth Wadley Ford Lincoln and financed $56,753.00 through First United Bank & Trust with monthly payments of $854.80 for 83 months. (2014 Ford F150 Retail Installment Sale Contract, Ex. 47).

33. On December 29, 2014, Shirley purchased two lease-to-own portable buildings from Parks Leasing, LLC that are located on the Zoo Land. (Parks Leasing Order Form – Cabin 1, Ex. 48) (Parks Leasing Order Form – Cabin 2, Ex. 49).

34. On January 30, 2015 and March 30, 2015, Shirley purchased two lease-to-own portable buildings from Bradford Leasing, Inc. that are located on the Zoo Land. (Order Form – Utility, Ex. 50) (Order Form – Lofted Porch Cabin, Ex. 51).

35. On April 21, 2015, Shirley purchased one lease-to-own portable building from River Country Rentals, LLC that is located on the Zoo Land. (Payment Slip with Contract Date, Ex. 52).

36. Shirley claims ownership of all vehicles and portable buildings titled and/or held in her name. (Deposition of Shirley Schreibvogel, Ex. 28, pp. 78:5-79:10; 80:14-81:10; 120:18-122:8; 123:9-22) (Shreibvogel's Second Amended Responses to Plaintiff's

11

Interrogatories, Ex. 39, Nos. 6, 24).

37.    Garold Wayne Zoo does not claim any interest in the vehicles or portable buildings titled and/or held in Shirley's name. (Deposition of Garold Wayne Zoo Corporate Rep, Ex. 17, pp. 161:7-16; 163:16-22).

38.    GWDG currently pays for the vehicles and portable buildings titled and/or held in Shirley's name because Shirley allows GWEAP to use the trucks and portable buildings; however, GWDG does not claim ownership of any trucks or portable buildings titled and/or held in Shirley's name.  (Deposition of Lowe, Ex. 23, pp. 247:21-252:8) (Deposition of GWDG Corporate Rep, Ex. 38, pp. 77:19-78:5; 78:23-79:11; 159:2-14; 184:19-22; 204:19; 233:13-25; 235:11-14) (GWDG's Amended Answers to Plaintiff's Interrogatories, Ex. 53, Nos. 11, 13).

39.    The vast majority of the vehicle and portable building payments have been made by Shirley and GWDG. (Deposition of Shirley Schreibvogel, Ex. 28, pp. 120:18-122:8) (Deposition of GWDG Corporate Rep, Ex. 38, pp. 191:14-20; 234:25-235:11-14) (TD Auto Payments, Ex. 54) (Chrysler Capital Payments, Ex. 55) (First United Payments, Ex. 56) (Parks Leasing Payments, Ex. 57) (Bradford Leasing Payments, Ex. 58).

### Cash and/or Third Party Checks to Shirley

40.    On February 1, 2011, Shirley loaned Maldonado $52,341.70 to pay GW Zoo bills in 2009 and $100,662.01 to pay Maldonado's attorneys in the Florida litigation. (Shirley's Second Amended Responses to Plaintiff's Interrogatories, Ex. 39, No. 12) (2011 Promissory Notes, Ex. 59).

41.    On December 27, 2012, Shirley loaned Maldonado and GW Zoo

$215,296.45 to pay GW Zoo bills in 2012. (Shirley's Second Amended Responses to Plaintiff's Interrogatories, Ex. 39, No. 12) (2012 Promissory Note, Ex. 60).

42.    On January 29, 2013, Shirley loaned Maldonado and GW Zoo $62,719.79 to pay GW Zoo bills in January 2013. (Shirley's Second Amended Responses to Plaintiff's Interrogatories, Ex. 39, No. 12) (2013 Promissory Note, Ex. 61).

43.    Shirley occasionally facilitated Garold Wayne Zoo's access to capital by depositing checks on Garold Wayne Zoo's behalf.  Specifically, IBC Bank would put an 11-day hold on any check of $500.00 or more deposited into Garold Wayne Zoo's bank account.  Because Garold Wayne Zoo often needed immediate access to funds in order to feed the animals and pay zoo expenses, and because Pauls Valley National Bank did not put a hold on checks deposited into Shirley's account, Shirley would deposit checks of $500.00 or more made out to Garold Wayne Zoo into her Pauls Valley National Bank account, and then remit those funds to Garold Wayne Zoo for its immediate use.  (Shirley's Second Amended Responses to Plaintiff's Interrogatories, Ex. 39, No. 11) (Shirley's Responses to Plaintiff's Requests for Admission, Ex. 42, Nos. 8, 10, 11) (Shirley's Amended Responses to Plaintiff's Requests for Admission, Ex. 62, Nos. 5, 6) (Deposition of Garold Wayne Zoo Corporate Rep, Ex. 17, pp. 64:10-20) (Deposition of Shirley, Ex. 28, pp. 125:21-126:12).

44.    On other occasions, checks made out to Garold Wayne Zoo were deposited into Shirley's account to pay debts owed to Shirley or to make rent payments on the Zoo Land. (Deposition of Garold Wayne Zoo Corporate Rep, Ex. 17, pp. 74:21-24; 77:1-17; 78:18-79:6; 94:1-7; 159:7-10) (Deposition of Shirley, Ex. 28, pp.105:14-106:16; 109:4-12)

13

(Shirley's Responses to Plaintiff's Requests for Admission, Ex. 42, Nos. 7, 9).

45.     Shirley never deposited checks for Garold Wayne Zoo into her personal account to keep income hidden from creditors. (Deposition of Shirley, Ex. 28, pp.108:23-109:3).

46.     Lowe never witnessed Garold Wayne Zoo providing cash to Shirley. (Deposition of Lowe, Ex. 23, p. 207:11-19).

**Tangible Assets**

47.     Shirley does not claim any interest in Garold Wayne Zoo electronics, computers, video or photo equipment, or the Joe Exotic TV studio. (Deposition of Shirley, Ex. 28, pp. 123:23-124:6).

48.     Lowe has never seen any computers, sound or video equipment, cameras, four wheelers, or other assets of Garold Wayne Zoo being stored at Shirley's property in Pauls Valley, Oklahoma.  (Deposition of Lowe, Ex. 23, pp. 241:15-243:5).

49.     All assets of Garold Wayne Zoo have been disposed. (Deposition of Garold Wayne Corporate Rep, Ex. 17, p. 158:2-5) (Order granting Garold Wayne Zoo's Application for Disbursement of Funds to Receiver, Ex. 63).

## ARGUMENT AND AUTHORITY

Summary judgment is appropriate if the pleadings, affidavits, depositions, and other evidence on file "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment 'as a matter of law.'"  Fed. R. Civ. P. 56; *Jenks v. Hill*, 504 F. Supp. 1130, 1131 (W.D. Okla. 1981).  A party opposing a motion for summary

14

judgment must demonstrate clearly and with specificity that controverted facts exist. *Sec. Nat'l Bank v. Belleville Livestock Comm'n Co., Inc.*, 619 F.2d 840, 848-49 (10th Cir. 1979). When considering a motion for summary judgment, a court must view all facts and inferences in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *See also Mesa Petroleum Co. v. Cities Serv. Co.,* 1982 WL 1377 (W.D. Okla. 1982). However, only genuine disputes over facts that might affect the outcome of the case under the governing substantive law preclude the entry of summary judgment. *Id*. at 248. "[A] trial judge must bear in mind the actual quantum and quality of proof necessary to support liability" and must determine whether the proffered evidence is sufficient to allow a reasonable jury to find liability. *Id*. at 254. If the evidence leads to only one reasonable conclusion, summary judgment is proper. *Id*. at 250.

A party's failure to make a sufficient showing on an essential element of his case renders all other facts immaterial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Palermo v. First Nat'l Bank & Trust Co.*, 894 F.2d 363, 367 (10th Cir. 1990). "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. A movant need only point out that there is an absence of evidence to support an essential element of the non-moving party's case. *Id*. at 325. Then the non-moving party must set forth specific facts demonstrating there is a triable issue. *Id*. at 324; *Anderson*, 477 U.S. at 248; Fed. R. Civ. P. 56(e). As no triable

issue regarding the Zoo Land or the 2016 Lease exist here, Defendants submit summary judgment is proper.

## PROPOSITION I: THE DOCTRINE OF RES JUDICATA BARS PLAINTIFF'S COLLATERAL ATTACK ON THE BANKRUPTCY COURT JUDGMENT RELATING TO THE ZOO LAND

Shirley hereby incorporate by reference all arguments, authority and evidentiary material contained in Proposition I of GWDG's Motion for Summary Judgment, including GWDG's Statement of Undisputed Facts regarding the Zoo Land and Bankruptcy Proceedings, as if fully set forth herein, and respectfully requests the Court grant summary judgment in favor of Shirley and GWDG for the reason that Plaintiff is barred from collaterally attacking the Bankruptcy Court Rule 68 Judgment relating to the Zoo Land.

## PROPOSITION II: PLAINTIFF'S FRAUDULENT TRANSFER CLAIMS AGAINST SHIRLEY FAIL AS A MATTER OF LAW

Oklahoma fraudulent transfer law is embodied within the Oklahoma Uniform Fraudulent Transfer Act ("UFTA"), 24 O.S. § 112 *et seq.* The purpose of the UFTA is to allow creditors with a claim against the debtor the opportunity to invalidate transfers of assets made by a debtor if such transfers have the effect of placing assets out of the reach of present and future creditors. *Burrows v. Burrows*, 886 P.2d 984 (Okla. 1994).

### A. Zoo Land Leases

#### i. 2013 and 2015 Leases (First Amended Complaint, ¶ 24(a) and (b))

Under the UFTA:

A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer

16

or obligation and the debtor was insolvent at that time or the debtor became
insolvent as a result of the transfer or obligation.

24 O.S. § 117(A).

Here, 2013 and 2015 Leases cannot be considered fraudulent because Garold
Wayne Zoo received reasonably equivalent value when it incurred the obligation. *Id.*
Specifically, Garold Wayne Zoo had an agreement with Shirley that it would make
payments on the trucks and portable buildings financed by Shirley and used by Garold
Wayne Zoo to operate the animal park in order to satisfy the 2013 and 2015 Leases. (SUF
Nos. 23-25).   In exchange for making payments on Shirley's vehicles and portable
buildings under the leases, Garold Wayne Zoo received the benefit of using these vehicles
and portable buildings to operate the zoo. (SUF No. 25).

Furthermore, there is no evidence Garold Wayne Zoo was insolvent at the time it
entered the 2013 and 2015 Leases.  In fact, Garold Wayne Zoo continued operations for
several years under the 2013 and 2015 Leases and only became insolvent when the it
became saddled with the million-dollar judgment in February 2016. (SUF No. 9).

Finally, the 2013 and 2015 Leases do not effectuate a fraud by requiring the lessor
to restore the Zoo Land to its original state upon the zoo's dissolution, bankruptcy or
cessation of operations of the lessee. Every Zoo Land lease since September 1999 included
such a provision. (SUF No. 28).  Plaintiff cannot isolate the 2013 and 2015 Leases and
argue they are suddenly fraudulent.  To take Plaintiff's argument as true would mean every
lease since inception is a fraud, even absent a judgment against the lessor or lessee. Further,
such a provision serves a purpose: giving the land owner/lessor of the Zoo Land an

17

ownership interest in the fixtures and improvements to or on the Zoo Land protects the owner/lessor should it be forced to incur the significant cost of reverting the Zoo Land back to its original state. (SUF No. 28).   Because the 2013 and 2015 cannot be considered fraudulent, summary judgment on this claim should be granted.

### ii.   2016 Lease (First Amended Complaint, ¶ 24(c))

Shirley hereby incorporate by reference all arguments, authority and evidentiary support contained in Proposition II of GWDG's Motion for Summary Judgment, as well as GWDG's Statement of Undisputed Fact regarding the 2016 Zoo Land Lease, as if fully set forth herein, and respectfully requests the Court grant summary judgment in favor of Shirley and GWDG for the reason that Plaintiff cannot make a prima facie claim under the UFTA relating to the 2016 Lease.

### B.  Vehicles and Portable Buildings (First Amended Complaint, ¶ 24(f)

The UFTA defines "asset" as "property of a debtor", and "[a] transfer is not made until the debtor has acquired rights in the asset transferred." 24 O.S. §§ 113(2), 118.

In this case, the evidence demonstrates that the vehicles and portable buildings were – and still are – titled and/or held in Shirley's name alone, and therefore they are assets of Shirley.  (SUF Nos. 29-36).  Garold Wayne Zoo does not claim any interest in the vehicles or portable buildings titled and/or held in Shirley's name – nor can it. (SUF No. 37). Shirley is the sole owner and is personally obligated on the finance contracts for the vehicles and portable buildings. (SUF Nos. 29-36).   Moreover, Garold Wayne Zoo no longer uses the vehicles or portable buildings and has not made any payments on same since its dissolution. (SUF No. 26).  Rather, GWEAP, the current owner of the zoo, uses

the vehicles and portable buildings, which are paid by GWDG from rent payments received

from GWEAP under the 2016 Lease. (SUF No. 38).   The evidence demonstrates the vast

majority of payments were made by Francis and Shirley Schreibvogel, Shirley

Schreibvogel or GWDG.  (SUF No. 39).  To claim the vehicles and portable buildings titled

and/or held in Shirley's name are assets of Garold Wayne Zoo completely ignores reality.

Because Garold Wayne Zoo has no rights in the vehicles or portable buildings titled and/or

held in Shirley's name, they cannot be an asset of Garold Wayne Zoo that can be transferred

under the UFTA.  24 O.S. § 118.  Therefore, summary judgment on Plaintiff's claim related

to vehicles and portable buildings must be granted.

### C. Cash and/or Third Party Checks to Shirley (First Amended Complaint, ¶ 24(d) and (e))

Here, there is no evidence a "transfer" occurred, or if it did, that Garold Wayne Zoo

was insolvent at the time it was made.  Under the UFTA, "transfer" means "every mode,

direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or

parting with an asset or an interest in an asset, and includes payment of money, release,

lease, and creation of a lien or other encumbrance." 24 O.S. § 113(12).  A transfer by a

debtor made to an insider for an antecedent debt will not be considered fraudulent unless

"the debtor was insolvent at that time, and the insider had reasonable cause to believe the

debtor was insolvent." 24 O.S. § 117(B).

Here, the evidence demonstrates that, due to an 11-day hold placed on Garold

Wayne Zoo's bank account for check over $500.00, Shirley deposited Garold Wayne Zoo

checks into her account and remitted the funds to Garold Wayne Zoo so it could have

immediate access to the money it needed to run the zoo. (SUF No. 43).   Shirley never deposited checks for Garold Wayne Zoo into her personal account to keep income hidden from creditors.  (SUF No. 45).  Because the money went straight back to Garold Wayne Zoo, there was no "transfer" under the UFTA.

To the extent Shirley received cash or money from third party checks to Garold Wayne Zoo, the evidence demonstrates such payments were to satisfy prior loans issued by Shirley to GW Zoo. (SUF Nos. 40-42, 44). Under the UFTA, such payments would only be considered fraudulent if Garold Wayne Zoo was insolvent at the time the transfer was made. 24 O.S. § 117(B).  As set forth above, there is no evidence Garold Wayne Zoo was insolvent at the time Shirley received cash and/or money from third party checks to satisfy antecedent loans (most of which occurred in 2015).  (SUF Nos. 9, 26).  In fact, Garold Wayne Zoo continued operations from 2013 to 2015 and only became insolvent when judgment was rendered against it in February 2016. (SUF No. 9).

**D.  Tangible Assets (First Amended Complaint, ¶ 24(g))**

Plaintiff can present no evidence Shirley is concealing tangible assets at her home. (SUF Nos. 47-49).  Because no evidence exists that tangible assets of Garold Wayne Zoo were transferred to Shirley, Plaintiff's UFTA claim related to tangible assets must fail.

## CONCLUSION

WHEREFORE, based on the arguments and authorities set forth above, Defendant Shirley M. Schreibvogel respectfully requests this Court grant summary judgment in her favor and against Plaintiff Big Cat Rescue Corp.

Respectfully submitted,

s/Melanie K. Christians
Justin D. Meek, OBA #21294
Melanie K. Christians, OBA #30846
Andre V. Farinha, OBA #32910
DeWITT PARUOLO MEEK, PLLC
P.O. Box 138800
Oklahoma City, OK  73113
Telephone: (405) 705-3600
Facsimile:  (405) 705-2573
jmeek@ntmdlaw.com
mchristians@ntmdlaw.com
afarinha@ntmdlaw.com
*Attorneys for Defendants*
*Shirley M. Schreibvogel and*
*Greater Wynnewood Development Group, LLC*

## CERTIFICATE OF SERVICE

This is to certify that on the 1st day of June, 2018, the above document was electronically transmitted to the Clerk of the Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

Heather L. Hintz
Melvin R. McVay, Jr.
Juston Givens Phillips Murrah P.C.
Corporate Tower, Thirteenth Floor
101 N. Robinson
Oklahoma City, OK  73102
hlhintz@phillipsmurrah.com
mrmcvay@phillipsmurrah.com
jrgivens@phillipsmurrah.com

s/ Melanie K. Christians