**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| Big Cat Rescue Corp., a Florida not-for-profit corporation, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. CIV-2016-0155-SLP |
| Shirley M. Schreibvogel, an individual, and Greater Wynnewood Development Group, LLC, | ) ) ) ) ) | |
| Defendants. | ) ) ) | |

---

**SECOND APPLICATION OF PLAINTIFF BIG CAT RESCUE CORP.
AND PARTY IN INTEREST 25803 NORTH COUNTRY ROAD 3250 LLC
FOR AN ORDER TO SHOW CAUSE WHY JUDGMENT DEFENDANT
GREATER WYNNEWOOD DEVELOPMENT GROUP LLC,
AND NONPARTIES JEFFREY LOWE, LAUREN LOWE,
GREATER WYNNEWOOD EXOTIC ANIMAL PARK, LLC
AND BIG CAT INSTITUTE, SHOULD NOT BE FOUND
IN CONTEMPT FOR VIOLATING THIS COURT'S ORDER
AND INJUNCTION, AND BRIEF IN SUPPORT**

---

DATED:     February 16, 2021          Melvin R. McVay, Jr., OBA No. 6090
                                      Heather L. Hintz, OBA No. 14253
                                      Hilary H. Clifton, OBA No. 32805
                                      PHILLIPS MURRAH P.C.
                                      Corporate Tower, Thirteenth Floor
                                      101 N. Robinson Avenue
                                      Oklahoma City, Oklahoma 73102

                                      **ATTORNEYS FOR PLAINTIFF
                                      BIG CAT RESCUE CORP. AND
                                      PARTY IN INTEREST 25803 NORTH
                                      COUNTRY ROAD 3250 LLC**

# TABLE OF CONTENTS

I.  INTRODUCTION ................................................................. 1

II.  PERTINENT FACTS AND HISTORY ................................................. 2

III.  ARGUMENT AND AUTHORITIES .................................................. 5

    A.  THE LOWES ARE IN CONTEMPT OF THE ORDER AND INJUNCTION ........... 5

        1.  The Lowes and entities have violated the Injunction and Order by encumbering and destroying the Property and its fixtures, failing to remove all personal property, and failing to comply with the business records requirements ......................................... 7

            a.  The Property and its fixtures were encumbered and destroyed in violation of the Injunction ..................... 7

            b.  The Lowes and GWDG violated the Judgment, Injunction, and Order concerning the business records . 10

        2.  Movants are Entitled to Contempt Damages ............................. 12

IV.  CONCLUSION ................................................................. 20

i

# TABLE OF AUTHORITIES

## <u>Cases</u>

*Acosta v. Paragon Contractors Corp.*, 844 F.3d 1225 (10th Cir. 2018).........................19

*Allied Materials Corp. v. Superior Prod. Co.*, 620 F.2d 224 (10th Cir. 1980)...........13, 18

*Bad Ass Coffee Co. of Haw., Inc. v. Bad Ass Coffee Ltd. P'ship*,
    95 F. Supp. 2d 1252 (D. Utah 2000) ........................................................13

*Calif. Artificial Stone Paving Co. v. Molitor*, 113 U.S. 609 (1885).................................12

*Craft v. Memphis Light, Gas & Water Div.*, 534 F.2d 684 (6th Cir. 1976) .......................8

*Davis v. Weir*, 497 F.2d 139 (5th Cir. 1995) ......................................................................8

*Feit v. Donahue*, 826 P.2d 407 (Colo. App. 1992)..............................................................7

*In re Expert S. Tulsa, LLC*, 506 B.R. 298 (Bankr. D. Kan. 2011) ....................................15

*Knudson v. Weeks*, 394 F. Supp. 963 (W.D. Okla. 1975) ...............................................7, 8

*Matter of Estate of Rahill*, 1991 OK CIV APP 83, 827 P.2d 896.....................................16

*Mundy v. Casualty Claims Serv., Inc.*, 1974 OK CIV APP 29, 527 P.2d 614 ...................7

*O'Neal v. City of Seattle*, 66 F.3d 1064 (9th Cir. 1995).....................................................8

*Parkhurst v. U.S. Dep't of Educ.*, 9 F. App'x 900 (10th Cir. 2001)...................................5

*Reliance Ins. Co. v. Mast Const. Co.*, 159 F.3d 1311 (10th Cir. 1998)...............5, 6, 13, 18

*Robertson v. Roy L. Morgan Prod. Co.*, 411 F.2d 1041 (10th Cir. 1969)........................16

*Schmidt v. Lessard*, 414 U.S. 473 (1974) .........................................................................12

*Thomas v. Vertigo*, 1995 OK CIV APP 45, 900 P.2d 458 ...............................................17

*U.S. v. Andrews*, 530 F.3d 1232 (10th Cir. 2008) ...........................................................18

*United States v. Lowe*, No. 20-cv-0423-JFH, 2021 WL 149838
(E.D. OKLA. JANUARY 15, 2021) ......................................................................... 4, 9

*United States v. Riewe*, 676 F.2d 418 (10th Cir. 1982) ......................................................... 5

*United States v. Vernon*, 814 F.3d 1091 (10th Cir. 2016) ................................................. 15

## **Treatise**

11A C. Wright, A. Miller, & M. Kane,
FEDERAL PRACTICE AND PROCEDURE § 2960 (2013) ............................................. 13

Plaintiff Big Cat Rescue Corp. ("BCR") and party-in-interest 25803 North Country Road 3250 LLC ("25803 LLC") (together, "Movants") respectfully submit their Second Application for an Order to Show Cause why Judgment Defendant Greater Wynnewood Development Group, LLC ("GWDG"), and nonparties Jeffrey Lowe, Lauren Lowe, Greater Wynnewood Exotic Animal Park, LLC ("GWEAP") and Big Cat Institute ("BCI")[1] (sometimes together "the Lowes") should not be found in contempt for violating this Court's Order [Doc. 152] (the "Order") and the Judgment/Injunction entered June 1, 2020 [Doc. 153] (the "Judgment" or "Injunction"). In support, Movants state:

## I.    INTRODUCTION

The relief sought herein concerns, first, encumbrances on, damage to and destruction of the approximately 16-acre Wynnewood, Oklahoma property formerly occupied by the Lowes to run an exotic animal exhibition business from February 2016 through October 4, 2020.[2] Additionally, Movants seek relief for the related failure of GWDG and the Lowes to comply with the business records production requirements of the Order and Judgment. BCR and 25803 LLC attempted unsuccessfully to resolve these issues without resort to judicial assistance.

---

[1] In 2016, Mr. Lowe created GWEAP, GWDG and BCI, which together operated the Wynnewood animal exhibition park. *See Big Cat Rescue v. G.W. Exotic Animal Mem. Found., et al.*; Case No. CIV-14-377-SLP (W.D. Okla.)*,* Intervenor's Response and Objection to Second Interim Application of Receiver for Compensation, Jan. 9, 2017 [Doc. 285] at 9. Movants respectfully request the Court take judicial notice of this and other court records noted in this Application. *See Tal v. Hogan*, 453 F.3d 1244, 1264 n. 24 (10th Cir. 2006). All these entities are named here, so that BCR and 25803 LLC can get complete relief.

[2] The Movants refer to the land and fixtures at issue as the "Zoo Land" (per the Order and Judgment) or the "Property."

1

## II.    PERTINENT FACTS AND HISTORY

1.    On June 1, 2020, in conjunction with entering judgment in favor of Movants, the Court ordered GWDG to, among other things, "vacate the premises of the [Property]" on or about October 1, 2020. *See* Order [Doc. 152] at 9, ¶ (1) and Judgment [Doc. 153].

2.    Moreover, the Order[3] and Judgment:

- Enjoined GWDG, "and any and all persons acting by and under GWDG's authority or in concert with it[,]…from concealing, transferring, encumbering, liquidating, destroying or disposing of" the Property, its fixtures, and any real or personal property addressed in the Judgment. *See* Judgment [Doc. 153] at 5, ¶ (10).[4]

- Imposed a constructive trust on the Property and its improvements in favor of BCR. *Id.* at 1, ¶ (2).

- Awarded BCR a money judgment against GWDG equal to the "amount of the gain resulting to GWDG from its use of the [Property]," equal to $4,166 per month from February 15, 2016 through June 1, 2020, for a total money judgment in the principal amount of $214,549, with prejudgment and post-judgment interest until paid (the "Money Judgment"). *Id.* at 3, ¶ (5).

- Required GWDG to provide BCR an accounting of all GWDG's business records, including receipts for expenses and QuickBooks (or similar) reports, from inception of GWDG's business in February 2016 to June 1, 2020, with a further accounting to be provided thereafter on the 15th of every month from July 2020 through the date BCR is paid in full. *Id.* at 4, ¶ (7).

3.    In the weeks approaching the move-out deadline, Movants' counsel contacted the Lowes' counsel to ensure timely compliance with the Order and Judgment.

---

[3] The Order required GWDG to "take all actions required by the Judgment." *See* Order [Doc. 152] at 11.

[4] The Injunction applies broadly, defining GWDG as "its servants, agents, employees, interns, attorneys, parents, subsidiaries, predecessors, affiliates, officers, directors, shareholders, members, managers, principals, and assigns—past, present, and future—and any and all persons acting by and under GWDG's authority or in concert with it…." *Id.*

*See* Declaration of Heather L. Hintz ("Hintz Dec."), Ex.1 at ¶ 14. Movants' counsel asked specifically that all utility bills be paid. Opposing counsel said his clients planned to timely vacate the Property, but was silent as to utility bills. *Id.* at ¶¶ 14-15. Perhaps not surprisingly, because the Lowes failed to pay an outstanding $2,000 August 2020 water bill, Rural Water District No. 6 of Garvin County ("RWD6") terminated water service to the Property on September 28, 2020. *Id.* at ¶ 15. Since the animals immediately needed water, 25803 LLC was required to pay the unpaid balance plus a $50 reconnection fee and a $56 "credit card convenience" fee to restore water service. 25803 LLC was later required to pay the Lowes' September 2020 RWD6 $1,764.77 water bill, in order to keep water utility service.[5] *Id.* at ¶¶ 15-16, & Ex.1-7. Total expenses incurred attributable to water used by the Lowes and entities is $3,871.15. *Id.*

4. On September 30, 2020, Movants' counsel agreed to a request for an additional day to remove certain animals from and fully vacate the Property, and, later, allowed the Lowes part of another extra day. *Id.* at ¶ 17.

5. At some point on October 4, 2020, the Lowes had removed their business operations, residence, employees, and most of the animals from the Property.[6] Of the approximately 20 exhibited animals left behind, BCR relocated 16 to accredited

---

[5] Although request was made by counsel, neither the Lowes nor the entities have reimbursed 25803 LLC the total of $3,814.77 in water utility bills for service they used. *Id.* at ¶¶ 15-16, 24.

[6] The Court ordered GWDG to "notify the Court within fourteen days of the date that the Zoo Land has been completely vacated by GWDG and Greater Wynnewood Exotic Animal Park, L.L.C., including removal of all zoo animals." Order [Doc. 152] at 11 (6). To BCR's knowledge, no compliant report or notification has been filed.

sanctuaries. [7] *Id*. No relief is sought in connection with the animals left behind.  However, many of the buildings were not fully vacated, and both the buildings and grounds were left littered with large amounts of trash and personal and business property of all kinds, including business implements, clothing, furniture, business records (some scattered, some in files), and personnel files. *Id*. at ¶ 21, and Ex. 1-15. Movants incurred expenses of $4,918.44 for (non-meat) trash cleanup and removal. Ex.1 at ¶ 21, and Ex.1-11.

6.      Additionally, the exterior of many buildings on the Property was spray painted with permanent graffiti primarily directed at BCR's founder, Carole Baskin, much of it containing foul language and/or sexual messaging. *Id*. at ¶ 19, and Ex.1-13. Movants have obtained a $2,000 quote for professional removal and remediation. *Id*. at ¶ 19, and Ex.1-12. Some building interiors were also defaced. Ex.1 at ¶ 19.

7.      Rotting garbage and decaying meat including mounds of chicken meat packages were left in the buildings and throughout the Property, requiring expenditure of $3,500 for professional services to remove the waste. *Id*. at ¶ 20, and Exs. 1-11, 1-14.

8.      An inoperable box truck bearing the logo 'G.W.E.A.P.' was abandoned in deep brush at the very rear of the Property. Not only was the vehicle abandoned in a remote spot inaccessible by a passenger vehicle, it contained what appeared to be several large, decaying animal carcasses, and was likely contaminated by dried blood. Ex.1 at ¶ 18, and

---

[7] In total, two grizzly bears, three tigers, and eleven wolves were left on the Property, together with several domestic animals. Ex.1 at ¶ 17. *See, e.g., United States v. Lowe*, No. 20-cv-0423-JFH, 2021 WL 149838, *6 (E.D. Okla. January 15, 2021) (noting that when the Lowes vacated the Wynnewood Property, a grizzly bear left behind was ultimately relocated by BCR to a Colorado sanctuary).

Ex. 1-8. BCR incurred attorney fees in addition to expenses of $235.05 in gaining title to, tagging and registering the truck so that it could be disposed of, and further costs of $450.00 to dispose of its rotting contents. Ex. 1 at ¶¶ 18, 21, and Exs. 1-9, 1-10, and 1-11.

9.     GWDG also failed to comply with the Court's requirement to provide BCR both a comprehensive past and an ongoing financial accounting, causing further harm as set out below. Judgment [Doc. 153] at 4, ¶ (7); *see* Ex. 1 at ¶¶ 9-10, 12, 22-23.

The foregoing constitute encumbrances, damage to and destruction of the Property and its fixtures, in violation of the Injunction, or otherwise violate the Order and Judgment. The Lowes and their entities should be found in contempt, and BCR and 25803 LLC awarded contempt damages, as established below.

### III.     ARGUMENT AND AUTHORITIES

#### A.     THE LOWES ARE IN CONTEMPT OF THE ORDER AND INJUNCTION.

"A district court has broad discretion in using its contempt power to require adherence to court orders." *United States v. Riewe*, 676 F.2d 418, 421 (10th Cir. 1982). "[C]ivil contempt consists of contumacious conduct which results in detriment to another party in a civil proceeding. The paradigmatic civil contempt sanction is coercive, designed to exact compliance with a prior court order in which correction usually takes the form of granting appropriate relief to the injured party." *Parkhurst v. U.S. Dep't of Educ.*, 9 F. App'x 900, 905 (10th Cir. 2001) (internal citation and quotation marks omitted). "Civil contempt may be used to 'compensate the contemnor's adversary for injuries resulting from the contemnor's noncompliance' with a court order." *Reliance Ins. Co. v. Mast Const. Co.*, 159 F.3d 1311, 1318 (10th Cir. 1998) (quoting *O'Connor v. Midwest Pipe*

*Fabrications, Inc.* 972 F.2d 1204, 1211 (10th Cir. 1992)). The elements of civil contempt, which must be proved by clear and convincing evidence, are 1) existence of a valid court order; 2) knowledge of the order; and 3) failure to obey the order. *Reliance Ins. Co.*, 159 F.3d at 1315. Each of those elements is present here.

As to the Order and Judgment, the Court has previously determined, "[t]here is no doubt that a valid court order and a judgment exist, [and] that GWDG and Mr. Lowe had knowledge of their requirements," and that Mr. Lowe may be found in contempt of their terms "by virtue of his status as the sole member and controller of GWDG." *See* Contempt Order [Doc. 179] at 3. Mrs. Lowe operated the animal facility, and lived on the Property grounds with her husband, and they together operated GWDG and had control over its finances.[8] The Court required GWDG to provide a copy of the Judgment and Order to a broadly defined group including its agents, servants, managers and affiliates – which would include Mrs. Lowe – within forty-eight hours of service.   [Doc. 153] at 6, ¶ (11). Accordingly, the Lowes have requisite knowledge of the Order, Judgment and Injunction, as further evidenced by the removal of their business operations, employees and lodging from the Property. *Reliance Ins. Co.*, 159 F.3d at 1315. Further, given the Injunction's

---

[8] As GWDG's Rule 30(b)(6) corporate representative in this action, Mr. Lowe testified that Mrs. Lowe has authority to conduct business on behalf of GWDG, and that he and Mrs. Lowe are the sole signatories on GWDG's lone bank account. *See* Ex. 2 (excerpt of May 7, 2018 deposition testimony of Jeffrey Lowe) at p. 7, ll. 12-19, p. 13, ll. 17-23, p.63, ll. 9-15, and p.75, ll. 1-18. Further, Mrs. Lowe was one of three incorporators of BCI. *See* Ex.1 at ¶ 25, and Ex. 1-19. *See also* Ex. 3 (Partial Motion to Dismiss of Defs. Jeffrey Lowe, Lauren Lowe, Tiger King, LLC and Greater Wynnewood Exotic Animal Park, LLC, Case No. 20-cv-423-JFH (E.D. Okla) [Doc. 69], filed Feb. 8, 2021) (states Mr. and Mrs. Lowe *together* "operated as a zoo" and "invited the general public to come to *their* facility to view the animals for a fee") (emphasis added).

breadth, there is no question Mrs. Lowe and GWDG's sister entities, GWEAP and BCI, are bound by its terms. [Doc. 153] at 5, ¶ (10). Consequently, all that remains is for Movants to demonstrate how Mr. and Mrs. Lowe and the entities violated the Injunction and Order.

1. **The Lowes and entities have violated the Injunction and Order by encumbering and destroying the Property and its fixtures, failing to remove all personal property, and failing to comply with the business records requirements.**

The Injunction permanently enjoined those covered "from concealing, transferring, encumbering, liquidating, destroying, or disposing of (a) the Zoo Land, including its fixtures, (b) any real or personal property addressed herein, (c) any and all business records of or related to GWDG (including those of its affiliates), (d) any right or claim GWDG has, or claims to have, with regard to Greater Wynnewood Exotic Animal Park, LLC and/or Shirley M. Schreibvogel (and/or her heirs, executors or assigns), whether such right is claimed by or through GWDG's operating agreement, or otherwise, and (e) any assets or business operations of GWDG addressed herein." *Id.*

a. **The Property and its fixtures were encumbered and destroyed in violation of the Injunction.**

An encumbrance is a burden or charge on property that diminishes its value. *Knudson v. Weeks*, 394 F. Supp. 963, 978 (W.D. Okla. 1975) (citation omitted); *Mundy v. Casualty Claims Serv., Inc*., 1974 OK CIV APP 29, 527 P.2d 614, 616 (citation omitted). An encumbrance need not impact title to real property.  Rather, the term includes "'any burden … on the real estate itself which tends to lessen the value or interfere with it free enjoyment.'" *Feit v. Donahue*, 826 P.2d 407, 410 (Colo. App. 1992) (quoting *G. Thompson, Real Property* § 3183 at 272 (1962)).

7

The Lowes encumbered and/or destroyed the Property and its fixtures in violation of the Injunction in several ways. <u>First</u>, the unpaid water bills encumbered the Property. *See* Facts ¶ 3. While an unpaid utility bills do not always result in a lien against the property, utility providers commonly require, as they did in this instance, payment of past unpaid bills, even those of a previous landowner or tenant, prior to resuming service to that property; consequently, courts have considered unpaid utility bills an encumbrance. *See O'Neal v. City of Seattle*, 66 F.3d 1064, 1067 (9th Cir. 1995); *see also Davis v. Weir*, 497 F.2d 139, 144 (5th Cir. 1995); *Craft v. Memphis Light, Gas & Water Div.*, 534 F.2d 684, 689-90 (6th Cir. 1976).

<u>Second</u>, the extensive permanent graffiti encumbered the Property and its fixtures, diminishing their value, and resulting in a removal cost quoted at $2,000.00. *See* Facts ¶ 6; *Knudson*, 394 F. Supp. at 978. Though the Lowes have claimed through counsel they were unaware of the graffiti prior to vacating the Property, photographs unequivocally show them standing in front of a heavily defaced building. *See* Facts ¶ 6.

<u>Third</u>, the packages of rotting meat (both piled and strewn throughout the Property) and carcasses are encumbrances that also reduced the Property value. *Knudson*, 394 F. Supp. at 978. The Lowes had ample time to clear the meat and carcasses prior to leaving the Property, but chose instead to leave them burdening 25803 LLC and BCR with the cost of $3,500 to remove and dispose of the rotting meat. *See* Facts ¶ 7. This decaying detritus also violated the requirement that all business operations property be removed. Order [Doc. 152] at 9, ¶ ¶ (1)-(2), and 10, ¶ (5).

8

Fourth, the abandoned, inoperable box truck containing decaying animal carcasses was both an encumbrance in violation of the Injunction, and failed to comply with the Court's requirement that all personal property be removed. *Id.* Notably, government inspectors, in July 2020, reported the inoperable truck contained boxes of decaying chicken meat. *See United States v. Lowe*, No. 20-cv-423-JFH, 2021 WL 149838, *5 (E.D. Okla. Jan. 15, 2021). However, as abandoned, the truck contained what appeared to be large, rotting, animal carcasses. *See* Ex. 1 at ¶ 18, and Ex. 1-8. Further, the truck was found in heavy brush at the back of the Property. It is difficult to imagine any reason for the truck's contents and location other than to intentionally leave rotting animal carcasses in a vehicle which the new land owner would find difficult to remove.  Regardless, the Lowes chose to leave it behind as an encumbrance to further damage and destroy the Property's value. The presence of the rotting meat destroyed any value the truck may have had, as the smell appears to have permanently permeated the walls and engine compartment. BCR incurred attorney fees, plus expenses of $253.05, in gaining title to, and then tagging and registering, the Truck so that it could be removed from the Property and be disposed of, and costs of $450.00 to dispose of the rotting meat. *See* Facts ¶ 8.

Fifth, the Lowes violated the Court's requirement to "completely vacate the Zoo Land premises … and remove all personal property," and take all steps reasonably necessary to require the same of GWEAP. Order [Doc. 152] at 9, ¶¶ (1)-(2), and 10, ¶ (5). As noted above, the Property and buildings were littered with personal property, furniture, business records, and trash, for which Movants have incurred significant cleanup costs that presently total $4,918.44, exclusive of meat removal and disposal costs. *See* Facts ¶ 5.

The foregoing conduct violated the Order and Judgment, and violated the Injunction by encumbering and destroying the Property and its fixtures.

b.    **The Lowes and GWDG violated the Judgment, Injunction, and Order concerning the business records**.

As noted, the Court required GWDG to (1) produce the entirety of its business records, including receipts for expenses and QuickBooks (or similar) reports, from its inception in February 2016 through June 1, 2020, to BCR by June 18, 2020, and to (2) continue to provide its ongoing operational records to BCR on the 15th of each month until the BCR is paid in full, including the $214,549 Money Judgment. *See* Judgment [Doc. 153] at 7, ¶ (7).

The historical and ongoing business records provisions are a significant and meaningful part of the relief afforded BCR and the failure to comply has caused concomitant harm. They were an outgrowth of the Court's other findings, namely that although GWDG lacked valid title to the Property and could not lease it to GWEAP (or anyone else), its participation in a fraudulent transfer scheme allowed the Lowes to use the Property and other personal property to deprive BCR *both* of its opportunity to obtain satisfaction of its judgments *and* to permit the Lowes to leverage the transferred real and personal property to provide a lucrative income stream.[9] The Court awarded BCR damages in the principal amount of $214,549 against GWDG based on the fair market value of the

_____

[9] In a companion case, it was determined BCR has shown the entities were transferred the goodwill and going concern value of the prior judgment debtors. *See* Case No. CIV-14-377-SLP (W.D. Okla. July 11, 2018) (Order reappointing receiver) [Doc. 387] at 6-7.

rent GWEAP should have paid the proper land owner. Judgment [Doc. 153] at 3, ¶ (5). Due to GWDG's genesis and participation in, and profit from, the fraudulent transfer scheme, the historical and business records showing its income stream, asset acquisition and management, and other financial resources are crucial to BCR's ability to obtain satisfaction of the damage award.

Yet, after numerous demands, GWDG has wholly failed to comply – it produced an incomplete set of its historical business operations documents and no ongoing one.[10] The small amount of historical records provided fell far short in both type and time frame. For instance, GWDG produced QuickBooks reports printed April 13, 2016, June 20, 2017, and May 17, 2018; none showed activity after May 17, 2018, a date *two years* before the June 1, 2020 Order and Judgment, and months prior to the October 2018 closure of GWDG's sole identified operating account at Pauls Valley National Bank ("PVNB").[11] *See* Ex. 1 at ¶¶ 9-10. Not surprisingly, the PVNB records also end with the account's October 2018 closure. *Id.* at ¶¶ 9-11, and Ex. 1-4.[12] Although GWDG remained an active entity putatively leasing the Property to GWEAP for two more years, GWDG did not provide a single business record reflecting its activities after October 2018.

---

[10] At the outset, GWDG and Mr. Lowe outright ignored the Order and Judgment, and only began to comply with some of their pre-move out requirements after BCR filed an Emergency Contempt Application. *See* [Docs. 158, 179, and 180-181].

[11] Mr. Lowe testified in this action that GWDG maintained only one bank account, the PVNB checking account, and that he and Mrs. Lowe are the sole signatories. *See* Ex. 2 at p.75, ll. 1-18.

[12] The PVNB records show Amazon, PayPal and WePay account activity, *see e.g.* Ex.1 at ¶ 12, and Ex. 1-5-C, -D, -F, -H, -I, and -K. However, no Amazon, PayPal or WePay records were provided. Ex.1 at ¶ 12.

Compounding the harm of these deficiencies, GWDG failed to produce more than a handful of receipts to document expenses. There is no excuse for this lack of compliance – among the detritus left on the Property, GWDG abandoned business records, including receipts and invoices together with proof of GWDG's payment of same, in plainly marked trade creditor folders. *Id.* at ¶ 23, and Ex. 1-17.[13] It is truly astounding that the Lowes have so little regard for the Court-imposed requirements that they cavalierly left behind evidence, some of it scattered across the floor, proving their contempt. Plainly, GWDG and the Lowes had access to more documents than provided, but simply chose to ignore the Court's Order.

The foregoing establishes, by clear and convincing evidence, that the Lowes and entities failed to comply with the Order and Judgment, and violated the Injunction, causing Movants to suffer harm.

**2.      Movants are Entitled to Contempt Damages.**

Because civil contempt is a severe remedy, courts should not resort to it "where there is [a] fair ground of doubt as to the wrongfulness of the defendant's conduct." *Calif. Artificial Stone Paving Co. v. Molitor*, 113 U.S. 609, 618 (1885). "[F]airness require[s] that those enjoined receive explicit notice" of "what conduct is outlawed." *Schmidt v. Lessard*, 414 U.S. 473, 476 (1974). Civil contempt may be improper where a party's efforts to

---

[13] Included in the GWDG documents not provided but later found on the Property is a Discount Guns receipt totaling $1,771.38 and corresponding GWDG check stub. This is but one example of the benefit judgment creditor BCR would have received (to aid in identifying GWDG assets) had the receipts and other back up documents for expenses the Court required been provided, and demonstrates the corresponding harm of that contempt. *See* Ex.1 at ¶ 23, and Ex.1-17-L-M.

comply were "reasonable." 11A C. Wright, A. Miller, & M. Kane, FEDERAL PRACTICE AND PROCEDURE § 2960, pp. 430-31 (2013). However, a violation need not be willful; a court may hold a party in civil contempt "for failure to be reasonably diligent and energetic in attempting to accomplish what was ordered." *Bad Ass Coffee Co. of Haw., Inc. v. Bad Ass Coffee Ltd. P'ship*, 95 F. Supp. 2d 1252, 1256 (D. Utah 2000) (citation omitted). Once contempt is shown, any damage award must be based on evidence of the amount of actual loss, which need only be shown by a preponderance of the evidence. *Allied Materials Corp. v. Superior Prod. Co.*, 620 F.2d 224, 227 (10th Cir. 1980) (citation omitted); *Reliance Ins. Co.*, 159 F.3d at 1315, 1319.

Here, there is no doubt that the conduct is 'wrongful' in that it violates the Order and Judgment, and falls squarely within the ambit of the clear and unambiguous language of the Injunction. The Court determined GWDG had "no right to occupy or use the Zoo Land; not [did] it have the right to lease the Zoo Land to a third party" such as GWEAP. Order [Doc. 152] at 5. Accordingly, the Court crafted the Order and Judgment to require GWDG to pay BCR money damages equal to GWEAP's use of the Property to produce the animal park income. The Order also provided other safeguards for Movants including requiring GWDG to provide complete business records and enjoining conduct that would encumber or destroy the Property value, while giving the Lowes sufficient time – 120 days – to comply.

While the Lowes failed to comply fully with the Court's Order and Judgment, they have taken ample care to ensure that GWDG would be without, or appear to be without, funds sufficient to pay the Judgment by draining, then closing, GWDG's bank account,

and plunging its business operations into the shadows after October 2018. On November 16, 2018, Mr. Lowe posted on social media that he planned to let BCR take a default judgment and gain possession of the Property, but that he had "one huge final surprise for [BCR] to try and overcome," and planned "House of Cards style sh*t" to "play out to the end." *See* <u>Ex.1</u> at ¶¶ 6-7, and Ex.1-1. These statements were made in the same time frame as BCR's mediation with Mrs. Schreibvogel where she confessed the fraudulent scheme,[14] BCR's motion for judgment as to the Property and related items, and the closing and draining of the PVNB bank account. *See* <u>Ex.1</u> at ¶ 11, and Ex.1-4. Temporal proximity alone permits the inference that the Lowes' activity was part of a plan to avoid meaningful compliance with the Court's ultimate Order and Judgment.[15]

The failure to comply fully with the GWDG business records requirement provides an avenue to partially redress the contempt. The PVNB bank account records show that shortly before the account was closed, the Lowes personally withdrew the account's balance of $85,000. *Id*. at ¶ 11, and Ex.1-4. As no accounting was produced reflecting

---

[14] *See* Amended ADR Report by Mediator Lyle Clemons [Doc. 136], BCR's motion for default judgment with regard to the Property, *see* Motion for Default [Doc. 137].

[15] The Lowes control GWDG, GWEAP and BCI, and may have simply shifted the revenue and expenses handled by the former to the latter. Had they complied with the Court's July 11, 2018 Order reappointing a receiver over the revenue and receipts of the entities in the companion case, and complied with requirement here of comprehensive business records production, then both Movants and the Court would have the information necessary to know what GWDG did after October 2018, and what happened to its functions. However, the Lowes refused to allow the receiver access, and also ignored the Court's Orders to pay the Receiver's compensation and obtain new counsel so that case could proceed. *See* Case No. CIV-14-377-SLP (W.D. Okla.), Order reappointing receiver [Doc. 387], Orders setting accelerated briefing schedule on Receiver's Second and Third Motions for Contempt, and setting hearing [Docs. 389, 400], and Order striking hearing to be reset after GWEAP obtains new counsel [Doc. 407].

GWDG's financial or other activities after October 2018, there is nothing to even hint the $85,000 was used for a legitimate business purpose – its disposition trail ends with the Lowes. *Id.*[16]

In draining then closing GWDG's bank account (and apparently ceasing to produce paperwork that would substantiate its operations), but continuing to allow their other businesses to generate revenue using the Property nominally still held by GWDG, the Lowes became GWDG's functional alter egos. A finding of 'alter ego' is not a cause of action. Rather, "[i]t merely imposes liability against a second corporation or individual upon an underlying cause of action, such as fraud or breach of contract, brought against the first corporation." *In re Expert S. Tulsa, LLC*, 506 B.R. 298, 301 (Bankr. D. Kan. 2011) (footnote omitted) (applying Oklahoma law).[17]

---

[16] The PVNB records show that GWDG's role in the facility's operations was somewhat capricious. Although created to hold the Property and act as GWEAP's putative landlord, *see* Ex.1 at ¶ 13, and Ex.1-6, GWDG, has also, for example, paid for western wear, Life Alert systems, restaurant charges (Rib Crib, Snak Shak, Applebees, Burger King), hotel lodging (Econolodge, Nacogdoches, Texas) and "FunJet Vacations" charges, billboard and other advertising expenses, Constant Contact account charges, Las Vegas charges, purchases at Tri Lake Exotics and Travel Stops, iTunes/apple charges, airline fees, and hospital/clinic charges, but no supporting documents were provided to support their legitimacy as business expenses. *See* Ex.1 at ¶ 11, and Ex.1-5. The Lowes clearly used the GWDG for personal purposes. GWDG's failure to provide tax records, meaningful receipts or other accounting documents that would allow the Court to determine the account was used for legitimate, business purposes, allows the Court to conclude it was used as their personal account. *See, e.g., United States v. Vernon*, 814 F.3d 1091, 1101-1102 (10th Cir. 2016) (applying federal common law to affirm finding that wife of corporation's owner was entity's alter ego when she had use of its bank account and applied funds to personal expenses).

[17] However, a finding of fraud is not necessary to reach this result. *Id.*

Oklahoma law allows treating an entity created to limit liability as an "association of persons" if it is used to defeat public convenience, justify wrong, perpetuate actual or implied fraud, or defend crime. *Matter of Estate of Rahill*, 1991 OK CIV APP 83, 827 P.2d 896, 897 (citation omitted). All the facts necessary to justify a finding that GWDG was used to justify wrong and perpetuate implied or actual fraud appear in the record, *Robertson v. Roy L. Morgan Prod. Co.*, 411 F.2d 1041 (10th Cir. 1969):

- From February 2016 the Lowes and GWEAP used GWDG to justify the wrong of holding the Property and using it to produce an income stream from the business goodwill and going concern value they took from BCR's judgment debtor, The Garold Wayne Interactive Zoological Foundation (and in which BCR has a property interest). *See* Case No. CIV-14-377-SLP (W.D. Okla. July 11, 2018) (Order reappointing receiver) [Doc. 387] at 6-7.

- GWDG's only bank account reflects it paid for a variety of expenses including some that were apparently personal. *See* n. 16, *supra*.

- At a time they knew Mrs. Schreibvogel had admitted the fraudulent transfer scheme, and had concluded the Court might award the Property to BCR based on BCR's motion (Mr. Lowe posted he had decided to let BCR take a default),[18] the Lowes closed GWDG's only bank account, having removed $85,000 in remaining funds, allowing the entity to remain operational for two more years in the dark.

---

[18] *See* <u>Ex.1</u> at ¶¶ 6-7, and Ex.1-1.

- Although required to provide comprehensive business records, GWDG and the Lowes failed to provide any financial records past October 2018, omitting records that documented the disposition of the $85,000 drained from GWDG's PVNB account, complete records documenting its previous business history, including treatment of its income and expenses, such as tax records, or any documentation of GWDG's provision for its creditors.

For the purposes of their contempt and at a minimum with regard to the $85,000 of GWDG's funds, the Court should treat the Lowes as GWDG's alter egos, an association of persons carrying on GWDG's business and responsible for its debts. This result, squarely within the Court's contempt powers, is also supported by the public policy underlying veil piercing (although it would be exercise of contempt power, not a veil piercing).[19] "The goal in piercing the corporate veil (i.e. disregarding the corporate entity) is to impute liability for the acts of the corporation to the responsible persons." *Thomas v. Vertigo*, 1995 OK CIV APP 45, 900 P.2d 458, 460 (citation and quotation marks omitted).

GWDG is an extant entity,[20] but one that has functioned after August/October 2018 as an "association of persons" comprised of the Lowes. Finding the Lowes responsible for

---

[19] This result also accords with GWDG's Operating Agreement, para. VI (D), which provides that the existence of GWDG shall be terminated only when (i) all its assets, "after payment of or due provision for all debts, liabilities and obligations … shall have been distributed to the Members … *and* (ii) its "registration with the state of Oklahoma shall have been cancelled in the manner required by Oklahoma law." Ex.1 at ¶ 13, and Ex.1-6. In that regard, the Oklahoma Secretary of State's records shows GWDG remains in existence. Ex.1 at ¶ 25, and Ex.1-18.

[20] Despite the requirement that it provide BCR all business records, GWDG has not provided documents indicating provision for creditors or that other dissolution steps have been taken. *See* n. 19, *supra.*

$85,000 of the Money Judgment awarded BCR would also be just and equitable in that the accumulated rental payments in the months following the Lowes' withdrawal of GWDG's remaining $85,000 equals $87,486.[21] Requiring the Lowes to pay $85,000 (with interest) of the Monetary Damages award is supported by the fact that they withdrew that amount from GWDG in October 2018 and failed to provide BCR the business records supporting its application to a valid business purpose. In the alternative, the Lowes should be required to disgorge the funds so that they may be applied to the Judgment. Disgorgement is consistent with the constructive trust placed on the Property; constructive trusts are an equitable remedy intended to prevent unjust enrichment. *See* Facts ¶ 2; *U.S. v. Andrews*, 530 F.3d 1232, 1238 (10th Cir. 2008) (citations omitted).

The Court should likewise award Movants their reasonable attorney fees incurred in seeking contempt, as the ongoing need to seek the Court's assistance in gaining compliance would otherwise dilute the relief initially awarded in the underlying Order, Judgment and Injunction. *Allied Materials Corp.*, 620 F.2d 224 (attorney fees incurred in seeking attempt a proper part of contempt damages).

Movants have established contempt by clear and convincing evidence and their damages by a preponderance of the evidence. *Reliance Ins. Co.*, 159 F.3d at 1315, 1319.

---

[21] The Money Judgment was calculated by multiplying the $4,1666 monthly rental payments the court found to be fair market value, by the number of months [51.5] that GWDG was in operation prior to the Judgment [51.5 mos. x $4,166 = $214,549]. The Lowes removed $85,000 from GWDG's bank account in August 2018. Starting with the next month, September 2018, there were 21 months prior to the June 1, 2020 Judgment, and 21 x $4,166 = $87,486, roughly the amount the Lowes took from GWDG's bank account.

The contempt sanctions sought have a direct causal relationship to the acts or contempt and violation of the Injunction. *Acosta v. Paragon Contractors Corp.*, 844 F.3d 1225, 1240-41 (10th Cir. 2018) (citations omitted). Accordingly, Movants are entitled to contempt relief and damages as follows:

(1)     Greater Wynnewood Development Group, LLC, Jeff Lowe, Lauren Lowe, Greater Wynnewood Exotic Animal Park, LLC, and Big Cat Institute should be found in contempt as to the Order, Judgment and Injunction;

(2)     Greater Wynnewood Development Group, LLC, Jeff Lowe, Lauren Lowe, Greater Wynnewood Exotic Animal Park, LLC, and Big Cat Institute should be ordered, jointly and severally, to pay BCR and 25803 LLC an amount in contempt damages equal to the out-of-pocket costs incurred to remove the meat, personal property and trash from the Property, in the amount of $8,418.44;

(3)     Greater Wynnewood Development Group, LLC, Jeff Lowe, Lauren Lowe, Greater Wynnewood Exotic Animal Park, LLC, and Big Cat Institute should be ordered, jointly and severally, to pay 25803 LLC an amount in contempt damages  equal to the cost of restoring water service to the Property, and paying the animal park's delinquent water utility bills, in the amount of $3,871.15;

(4) Greater Wynnewood Development Group, LLC, Jeff Lowe, Lauren Lowe, Greater Wynnewood Exotic Animal Park, LLC, and Big Cat Institute should be ordered, jointly and severally, to pay BCR and 25803 LLC an amount in contempt damages equal to the out-of-pocket cost incurred to obtain title to and licensing and registration for the box truck so that it could be removed from the Property, in the amount of $253.05, meat

removal and disposal costs (from truck) of $450, plus the reasonable attorney fees incurred in obtaining title;

(5)    Greater Wynnewood Development Group, LLC, Jeff Lowe, Lauren Lowe, Greater Wynnewood Exotic Animal Park, LLC, and Big Cat Institute should be ordered to pay BCR and 25803 LLC the cost that will be incurred to remove the graffiti from the Property, in the amount of $2,000;

(6)    Jeff Lowe and Lauren Lowe should be found in contempt and determined jointly and severally liable to BCR for at least $85,000 of the money damages awarded BCR in the Judgment, with prejudgment interest and post-judgment interest from June 1, 2020 [Doc. 153];

(7)    The award should carry prejudgment and post-judgment interest as allowed by law; and

(8) Greater Wynnewood Development Group, LLC, Jeff Lowe, Lauren Lowe, Greater Wynnewood Exotic Animal Park, LLC, and Big Cat Institute should be ordered to pay the reasonable attorney fees and costs incurred by BCR and 25803 LLC in filing this Application as contempt damages, to be proved at a later date.

## IV.    CONCLUSION

Given the foregoing, Movants therefore apply for an order setting a hearing to show cause why Greater Wynnewood Development Group, LLC, Jeff Lowe, Lauren Lowe, Greater Wynnewood Exotic Animal Park, LLC, and Big Cat Institute, should not be held in contempt. If contempt is found, Movants also seek an order containing all measures necessary to obtain compliance with the Order, to compensate BCR and 25803 LLC for

their damages in the amount of $14, 992.64, plus attorney fees of this Application and of obtaining transfer of title to the box truck. Further, Mr. and Mrs. Lowe should be required to pay the Money Judgment, at least in the amount of the $85,000. Movants will serve this Application on all non-parties and file notice once completed.

WHEREFORE, Plaintiff Big Cat Rescue Corp. and party in interest 25803 North Country Road LLC respectfully request the Court enter an order awarding contempt damages, jointly and severally against GWDG, GWEAP, BCI, Jeff Lowe and Lauren Lowe, in the form of costs incurred as a result of GWDG's violation of the Court's June 1, 2020 Order, Judgment and Injunction as set out above, and for such other and further relief, whether legal or equitable, as would be just and proper.

Respectfully submitted,

*/s/ Heather L. Hintz*
Heather L. Hintz, OBA No. 14253
Melvin R. McVay, Jr., OBA No.  6096
Hilary H. Clifton, OBA No. 32805
PHILLIPS MURRAH P.C.
Corporate Tower, Thirteenth Floor
101 N. Robinson Avenue
Oklahoma City, Oklahoma 73102
Telephone: (405) 235-4100
Facsimile: (405) 235-4133
hlhintz@phillipsmurrah.com
mrmcvay@phillipsmurrah.com
hhclifton@phillipsmurrah.com

**ATTORNEYS FOR PLAINTIFF
AND PARTY IN INTEREST**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 16, 2021, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing.  Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to the following ECF registrants:

Daniel J. Card – dan@cardlawok.com
Walter Mosley – wm@waltermosleyesq.com

***Attorney for Defendant Greater Wynnewood Development Group, LLC***
***and non-parties Jeffrey Lowe and Lauren Lowe***


*/s/ Heather L. Hintz*
Heather L. Hintz